David P. Enzminger (SBN: 137065)
denzminger@winston.com
Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213-615-1700
Facsimile: 213-615-1750

Attorneys for Plaintiffs
KRAFTON, INC. and
PUBG SANTA MONICA, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRAFTON, INC. and PUBG SANTA MONICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., GOOGLE, LLC, YOUTUBE LLC, SEA LIMITED, MOCO STUDIOS PRIVATE LIMITED (F/K/A GARENA INTERNATIONAL \| PRIVATE LIMITED), and GARENA ONLINE PRIVATE LIMITED,<br><br>Defendants. | Case No. 2:22-cv-00209<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiffs Krafton, Inc. ("Krafton") and PUBG Santa Monica, Inc. ("PUBG SM" and, collectively with Krafton, "Plaintiffs"), by and through their counsel, hereby file this Complaint against Defendants Apple Inc. ("Apple"), Google LLC ("Google"), YouTube LLC ("YouTube"), Sea Limited ("Sea Ltd."), Moco Studios Private Limited (f/k/a Garena International | Private Limited) ("Moco Studios"), and Garena Online

1

Private Limited ("Garena Online" and, collectively with Sea Ltd. and Moco Studios, "Garena"), and allege as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiffs seek redress for Defendants' rampant, willful copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act").

2.      Plaintiff Krafton is the developer and publisher of an award-winning and highly popular copyrighted video game called PlayerUnknown's Battlegrounds ("Battlegrounds" and now also referred to as "PUBG: Battlegrounds"), which is available to play on personal computers ("PCs") and game consoles such as the Sony PlayStation and the Microsoft Xbox. Krafton has also licensed the game as a mobile "app."

3.      Plaintiff PUBG SM, a wholly owned subsidiary of Krafton, is involved in the development of Battlegrounds, including in its periodic updates of added features, the promotion of Battlegrounds through advertising, product development, e-sport events, and other interactive engagements, and the design and distribution of Battlegrounds-related products, all of which add to the value and success of Battlegrounds among its millions of users worldwide.

4.      Shortly after Krafton launched Battlegrounds in 2017, Garena started selling a game in Singapore that copied Krafton's game.  Krafton's predecessor, PUBG, and Garena settled the Singapore related claims.  The parties did not enter into a license agreement, nor did Krafton's predecessor, PUBG, authorize Defendants to sell or distribute games infringing its copyrights in the United States.

5.      Also in 2017, Defendants Apple and Google began selling this blatantly infringing mobile version of Battlegrounds developed by Defendant Garena. This infringing app was originally called Free Fire: Battlegrounds and is now called Free Fire.

6.     On or about September 28, 2021, Garena released another app that also blatantly copies Battlegrounds, which is called Free Fire MAX ("Free Fire Max"). Free Fire Max is an entirely distinct app, which Garena requires players to separately download from the Apple App store and Google Play Store. However, Free Fire Max was purportedly intended to provide the same user experience as Free Fire and, accordingly, infringes numerous aspects of Battlegrounds, both individually and in their combination, as alleged herein.

7.     As set forth in detail below, Free Fire and Free Fire Max extensively copy numerous aspects of Battlegrounds, both individually and in combination, including Battlegrounds' copyrighted unique game opening "air drop" feature, the game structure and play, the combination and selection of weapons, armor, and unique objects, locations, and the overall choice of color schemes, materials, and textures.

8.     Since the initial release, Garena has wrongfully authorized Apple and Google to distribute hundreds of millions of copies of the Free Fire app through their respective online "app" stores—the Apple App Store and the Google Play store. Indeed, upon information and belief, Garena has earned hundreds of millions of dollars from its global sales of the infringing apps, and many of the infringing acts have occurred in the United States. Upon information and belief, Apple and Google have similarly earned a substantial amount of revenue from their distribution of Free Fire, as both platforms retain a significant portion of what users spend within the infringing game. Upon information and belief, Apple and Google have also collected highly valuable user and purchase data through requirements that their customers utilize their online payment systems. The level of infringement has increased since the recent launch and distribution of Free Fire Max.

9.     Further, on November 11, 2021, Krafton released its much-anticipated Battlegrounds follow up, called PUBG: New State ("New State"). While New State contains many new and different elements, such as maps, buildings and infrastructure, vehicles, weapons, and other game elements, it also features numerous protectible

elements from Battlegrounds. Krafton has expended significant time, money, and other resources integrating protectible elements from Battlegrounds into New State and developing newly protectible elements as well.

10.    Defendant YouTube, which is owned by Google, is also engaged in the infringement of Battlegrounds. Currently, it is hosting countless posts of Free Fire and Free Fire Max gameplay, many of which have been viewed hundreds of thousands of times, and in some cases more than a million times. These videos feature numerous elements from Free Fire and Free Fire Max that infringe Battlegrounds, as alleged herein. In addition, YouTube is hosting numerous posts containing a feature-length Chinese film that is nothing more than a blatantly infringing live-action dramatization of Battlegrounds.

11.    On or about December 21, 2021, Krafton demanded that Garena immediately stop its exploitation of Free Fire and Free Fire Max, including by revoking its apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max through their respective platforms. Garena has refused.

12.    On or about December 21, 2021, Krafton also requested that Apple and Google, in turn, each cease distributing and exploiting Free Fire and Free Fire Max through their respective platforms. To date, they continue to exploit Free Fire and Free Fire Max through their respective platforms. Indeed, as set forth below, upon information and belief, Apple and Google fail to address legitimate claims of copyright infringement on their networks where they are indemnified by deep-pocketed co-infringers, like Garena. This selective enforcement of copyright law renders Apple and Google liable for willful infringement.

13.    On or about December 21, 2021, Krafton requested that YouTube take down numerous posts that feature Free Fire and Free Fire Max gameplay that include elements that blatantly infringe Battlegrounds and, separately, the infringing feature-length film. To date, YouTube has failed to remove these posts.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

14.    Despite these requests and warnings, Defendants have failed to comply with their obligations under the law. As set forth herein, Krafton seeks redress for Defendants' blatant and willful infringement of its copyrights in Battlegrounds.

**PARTIES**

15.    Plaintiff Krafton is a corporation organized and existing under the laws of the Republic of Korea, having its principal place of business at 231, Teheran-ro, Gangnamg-gu, Seoul 06142, South Korea. Krafton, including through its studios and subsidiaries, has offices in San Ramon, California; Madison, Wisconsin; and Saratoga Springs, New York.

16.    Plaintiff PUBG SM is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1601 Cloverfield Boulevard, Suite 5000N, Santa Monica, California 90404. PUBG SM is a wholly owned subsidiary of Krafton.

17.    Upon information and belief, Defendant Apple is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Cupertino, California. Apple is the owner and operator of the Apple App Store, and in that role has distributed (and is continuing to distribute) iOS versions of the infringing Free Fire apps to the public in the United States, including California, and abroad. Upon information and belief, Apple has collected revenue through its exploitation of the infringing Free Fire apps and, pursuant to an agreement with Garena, retains a portion of that revenue for its own benefit while remitting the remainder to Garena. Apple continues to distribute Free Fire and Free Fire Max despite being notified by Krafton that Free Fire and Free Fire Max infringe Krafton's copyrights in Battlegrounds and that Krafton demands Apple remove the apps from its store.

18.    Upon information and belief, Defendant Google is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business in Mountain View, California. Google is the owner and operator of the Google Play store, and in that role has distributed (and is continuing to

distribute) Android versions of the infringing Free Fire apps to the public, in the United States, including in California, and abroad. Upon information and belief, Google has collected revenue through its exploitation of the infringing Free Fire apps and, pursuant to an agreement with Garena, retains a portion of that revenue for its own benefit while remitting the remainder to Garena. Google continues to distribute Free Fire and Free Fire Max despite being notified by Krafton that Free Fire and Free Fire Max infringe Krafton's copyrights in Battlegrounds, that Krafton demands Google remove the apps from its store.

19.   Upon information and belief, Defendant YouTube, owned by Google, is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in San Bruno, California. YouTube is the owner and operator of YouTube.com and mobile applications available under the name YouTube, and in that role has hosted (and is continuing to host) video posts that contain content that infringes Krafton's copyrights in Battlegrounds, which are made available to view to the public in the United States, including in California, and abroad. Upon information and belief, YouTube has collected revenue through its exploitation of video posts that infringe Krafton's copyrights in Battlegrounds. YouTube continues to host videos that infringe Krafton's copyrights in Battlegrounds despite notification by Krafton.

20.   Upon information and belief, Sea Ltd. is a corporation organized and existing under the laws of the Cayman Islands, having its principal place of business located at 1 Fusionopolis Place, #17-10, Galaxis, Singapore 138522 and/or PO Box 309 Ugland House, Grand Cayman, KY11104, Cayman Islands.

21.   Upon information and belief, Moco Studios is organized and existing under the laws of Singapore, having its principal place of business located at 1Fusionopolis Place, #17-10, Galaxis, Singapore 138522.

22.   Upon information and belief, Garena Online is organized and existing under the laws of Singapore, having its principal place of business located at 1Fusionopolis Place, #17-10, Galaxis, Singapore 138522. Upon information and belief,

6

Garena Online operates Sea Ltd.'s digital entertainment business. Upon information and belief, Garena Online is a wholly owned subsidiary of Sea Ltd.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over Krafton's claims for copyright infringement under the Copyright Act pursuant to 17 U.S.C. §§ 101, 501 *et seq.* and 28 U.S.C. §§ 1331, 1338(a).

24. This Court has personal jurisdiction over Defendant Apple. Upon information and belief, Apple maintains its headquarters in the State of California, is registered to do business in the State of California and has continuously and systematically availed itself of the benefits of the State of California. In addition, upon information and belief, Apple maintains substantial operations in Culver City, California. Further, this Court has personal jurisdiction over Apple because Apple has directed its infringing activities as alleged herein at the State of California.

25. This Court has personal jurisdiction over Defendant Google. Upon information and belief, Google maintains its headquarters in the State of California, is registered to do business in the State of California and has continuously and systematically availed itself of the benefits of the State of California. In addition, upon information and belief, Google maintains substantial operations in Santa Monica, California. Further, this Court has personal jurisdiction over Google because Google has directed its infringing activities as alleged herein at the State of California.

26. This Court has personal jurisdiction over Defendant YouTube. Upon information and belief, YouTube maintains its headquarters in the State of California, is registered to do business in the State of California and has continuously and systematically availed itself of the benefits of the State of California. In addition, upon information and belief, YouTube maintains substantial operations in Los Angeles, California. Further, this Court has personal jurisdiction over YouTube because YouTube has directed its infringing activities as alleged herein at the State of California.

27.     This Court has personal jurisdiction over Defendant Sea Ltd. On information and belief, Sea Ltd. or its respective agents are doing or have been doing business in the State of California and the United States, including distributing Free Fire and Free Fire Max or causing Free Fire and Free Fire Max to be distributed in the United States on platforms such as the Apple App Store and Google Play, which are operated, at least in part, out of the State of California; selling or helping to sell "virtual" items or currency to customers located in the United States, including in the State of California; collecting money from United States users, including in the State of California; marketing Free Fire and Free Fire Max to customers located in the United States, including in the State of California; and adverting Free Fire and Free Fire Max directly to United States users, including in the State of California. Further, Sea Ltd. has directed its infringing activities as alleged herein at the State of California. In addition, Defendant Sea Ltd. is registered with the United States Securities and Exchange Commission ("SEC") and its shares trade on the New York Stock Exchange under the ticker symbol "SE." As a result, since at least 2018, Sea Ltd. has made regular filings with the SEC. To the extent Defendant Sea Ltd. is found not to be subject to jurisdiction in any state's courts of general jurisdiction, this Court has personal jurisdiction over Defendant Sea Ltd. pursuant to Fed. R. Civ. P. 4(k)(2) because of its extensive contacts with the United States, including the acts giving rise to this action.

28.     This Court has personal jurisdiction over Defendant Moco Studios. On information and belief, Moco Studios or its respective agents are doing or have been doing business in the State of California and the United States, including distributing Free Fire and Free Fire Max or causing Free Fire and Free Fire Max to be distributed in the United States, including in the State of California, on platforms such as the Apple App Store and Google Play, which are operated, at least in part, out of the State of California; selling or helping to sell "virtual" items or currency to customers located in the United States, including in the State of California; collecting money from users in the United States, including in the State of California; marketing Free Fire and Free Fire

Max to customers located in the United States, including in the State of California; and adverting Free Fire and Free Fire Max directly to United States users, including in the State of California. Further, Moco Studios has directed its infringing activities as alleged herein at the State of California. To the extent Defendant Moco Studios is found not to be subject to jurisdiction in any state's courts of general jurisdiction, this Court has personal jurisdiction over Defendant Moco Sutudios pursuant to Fed. R. Civ. P. 4(k)(2) because of its extensive contacts with the United States, including the acts giving rise to this action.

29.    This Court has personal jurisdiction over Defendant Garena Online. On information and belief, Garena Online or its respective agents are doing or have been doing business in the State of California and the United States, including distributing Free Fire and Free Fire Max or causing Free Fire and Free Fire Max to be distributed in the United States, including in the State of California, on platforms such as the Apple App Store and Google Play, which are operated, at least in part, out of the State of California; selling or helping to sell "virtual" items or currency to customers located in the United States, including in the State of California; collecting money from users in the United States, including in the State of California; marketing Free Fire and Free Fire Max to customers located in the United States, including in the State of California; and adverting Free Fire and Free Fire Max directly to United States users, including in the State of California. Further, Garena Online has directed its infringing activities as alleged herein at the State of California. To the extent Defendant Garena Online is found not to be subject to jurisdiction in any state's courts of general jurisdiction, this Court has personal jurisdiction over Defendant Garena Online pursuant to Fed. R. Civ. P. 4(k)(2) because of its extensive contacts with the United States, including the acts giving rise to this action.

30.    Venue in this Court is proper under 28 U.S.C. § 1400(a) and 28 U.S.C. §§ 1391(b)(1), (c)(2), and (d). Each Defendant is a resident of and/or may be found in the Central District of California, as each Defendant is subject to personal jurisdiction

9

in the Central District of California with respect to this action. Further, in the alternative, if the Court finds that any Defendant is not a resident of the United States, venue is proper under 28 U.S.C. § 1391(c)(3).

## FACTUAL ALLEGATIONS

### The Battlegrounds Game

31.     In or about March 2016, Bluehole Ginno Games, Inc. ("Bluehole Ginno") created Battlegrounds. Bluehole Ginno later changed its name to PUBG Corporation ("PUBG"), which merged with Krafton, Inc., its then-parent company. Accordingly, Krafton, Inc. is the successor-in-interest to Bluehole Ginno's and PUBG's rights with respect to Battlegrounds. For ease of reference, the use of "Krafton" herein shall include any and all of Bluehole Ginno, PUBG, and/or Krafton, Inc.

32.     On or about March 23, 2017, Krafton had made an early-access beta version of Battlegrounds publicly available through Steam, an online computer game distribution site.

33.     At the same time, Krafton began developing versions of Battlegrounds for platforms other than PCs running the Windows operating system. For example, a licensed version of Battlegrounds for the Microsoft Xbox gaming system was released on or about December 12, 2017.

34.     By March 2018, Krafton authorized the release of a mobile version of Battlegrounds for the iOS and Android platforms called PUBG Mobile. In July 2019, Krafton authorized the release of an alternate version of PUBG Mobile for lower-end mobile devices, called PUBG Mobile Lite.

35.     Currently, versions of Battlegrounds are available on the online video game platforms Steam and Stadia, through Sony's PlayStation and Microsoft's Xbox One, and as an app through the Apple App Store and the Google Play store.

36.     Upon its launch, Battlegrounds became an instant hit. When the early-access public beta version of Battlegrounds was released in March 2017, it sold a million copies in less than a month and reached the million-copies mark faster than any

other game ever sold on the Steam distribution platform. By July 2021, more than 75 million copies of Battlegrounds had been sold.

37.   Over the past five-plus years, Krafton and PUBG SM have expended significant time, money, and other resources to develop and promote Battlegrounds. Krafton and PUBG SM have also expended significant time, money, and other resources to support the extensive Battlegrounds player community, including by hosting or supporting player forums and e-sports events that attract millions of participants. These efforts have contributed to Battlegrounds' continued success.

## COPYRIGHTABLE AUDIOVISUAL SUBJECT MATTER IN BATTLEGROUNDS

38.   Battlegrounds is an original work of creative expression that provides interactive audiovisual entertainment to players. Battlegrounds contains numerous unique, creative audio and visual elements, including numerous individual works of creative expression that each individually constitute copyrightable subject matter. Further, the selection and arrangement of individual audio and visual elements in Battlegrounds constitutes copyrightable subject matter. In addition, the total look and feel of Battlegrounds constitute copyrightable subject matter. Battlegrounds is an original work of authorship, and its audio-visual aspects constitute copyrightable subject matter under United States copyright laws.

39.   Krafton owns, and at all relevant times, including through its predecessors Bluehole Ginno and PUBG, has owned, the copyrights in Battlegrounds. Krafton has complied with all statutory requirements in securing a federal copyright registration for these works.

40.   On April 4, 2018, Krafton obtained registrations for its copyrights in Battlegrounds from the U.S. Copyright Office: Registration Nos. PA0002097453 and TX0008524041for Battlegrounds (Version 2.6) and Registration Nos. PA0002097065 and TX0008524047for Battlegrounds (Version 2.1).

41.     As alleged herein, these U.S. copyright registrations cover copyrightable audiovisual aspects of Battlegrounds that Defendants have infringed and continue to infringe.

42.     In particular, the copyrightable audiovisual aspects of Battlegrounds include both individual and collective creative and artistic expressions within the game, including but not limited to, the following audio/visual/audiovisual/gameplay arrangement and look and feel:

43.     **Pre-Game Lobby and Waiting Area**. Each game of Battlegrounds begins with the players entering from a "lobby" to a designated waiting area. Battlegrounds provides this waiting area to allow the players to interact with each other, try out different weapons and gear, and roam around the scene. Weapons such as hand-held melee weapons (e.g., machete, crowbar, and the iconic frying pan), grenades, handguns, shot guns, and various types of rifles and machine guns are available for players to explore and experience without inflicting damage.



The players remain in this interactive pre-game waiting area until enough players have connected to the game for competitive gameplay to begin.

1
2
3
4
5
6
7
8
9



10  The pre-game waiting area creatively provides the players with an interactive
11  audiovisual experience, allowing them to engage with each other and explore the
12  environment and weapons of the game before competitive gameplay begins. This lower-
13  pressure, slower-paced illustration of objects, scenes, and actions is an artistic
14  presentation that allows players to experience and appreciate these aspects of the
15  animated fantasy world differently than they do during tense competitive gameplay.
16  The creative expression of a pre-game lobby and interactive waiting area in
17  Battlegrounds is a copyrightable audiovisual work individually and/or in combination
18  with other elements of Battlegrounds, including in Krafton's overall selection and use
19  of this and other elements in Battlegrounds. Additionally, this creative expression of the
20  pre-game lobby and interactive waiting area has taken on secondary meaning as an
21  emblem of Battlegrounds and of Krafton. For example, it has been the subject of a live-
22  action Battlegrounds parody skit.[1]

23       44.    **Air Jump**. When a sufficient number of players have joined the pre-game
24  waiting area, the players are transported to the gameplay map. In other shooter games,
25  players "spawn" or just appear on the gameplay map in either a pre-designated or

26  _____

27  [1] *See* https://www.youtube.com/watch?v=cPGLLZu5lz4&list=
28  PLSMETuURtTXCngmWf_wUWfnzTjn0 4XF-B&index=10.

random location. Rather than the typical spawning mechanism, Battlegrounds has created an interactive approach that allows the player to choose where to begin play on the gameplay map.





45.    In particular, the players are flown to the gameplay map in a military transport aircraft. As the aircraft flies over the gameplay map, each player can watch the aircraft and the gameplay map terrain underneath. The route of the aircraft is randomized for each game. The route of the aircraft can be seen on a mini-map embedded within a corner of the gameplay screen as well as a map screen showing the entire island in which the plane is indicated by a ◎ and/or an airplane symbol.

46.     Each player can choose to jump out of the aircraft anywhere along the route of the aircraft. The time at which a player chooses to jump affects the player's experience in dropping down to ground level, which, in turn, affects the location where the player will land.

47.     During the jump, the player can choose to free-fall and guide him/herself towards different areas of the play map. During free fall, the player has a bird's-eye panoramic view of the play map and can view other players as they also descend to the ground. Further, players are able to control their descent through the way in which the player positions the game character's body, as if skydiving. For example, if the player points the game character's body forward, in an aerodynamic position, the speed of the game character's descent rapidly increases. Conversely, if the player pulls back from that position, the speed of the game character's descent markedly decreases.



At any time before reaching a critical low altitude, the player can open his/her parachute and glide down to a landing. As with the free fall, once a player's parachute has been deployed, players are able to control their descent through the way in which a player positions the game character's body, again as if actually skydiving. Once a player descends past a critically low altitude, the parachute is auto-deployed.



48.     The air jump experience in Battlegrounds is a creative artistic experience employed by Krafton. This aspect of the game artistically presents the fantasy world of Battlegrounds through unusual and varied angles of perspective and movement. It provides the player with a dynamic and interactive game-starting and location-selecting experience, in contrast to conventional shooter games in which game characters spawn

16

in pre-determined or random locations. Additionally, the player experiences an audiovisual representation of free-falling to the ground while surveying the gameplay terrain and other players in free fall and while parachuting to the ground—an unprecedented experience in shooter games. This creative and interactive expression of the introduction to a gameplay map expresses a narrative fantasy through creative images and sounds. The air jump is a copyrightable audiovisual work, individually and/or in combination with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds. Additionally, this creative expression of the air jump has taken on secondary meaning as an emblem of Battlegrounds and of Krafton. For example, it has been featured in live-action Battlegrounds parody skits.[2]

49.   **Play Map**. Krafton created a unique gameplay map, as shown below, which is much larger than the navigable area available in previous shooter games. Below is one of Battlegrounds' gameplay maps titled "Erangel."



50.   As shown, above, the Erangel gameplay map consists of two islands—a large island and a smaller, secondary island—connected by two main bridges. The islands feature many different types of gameplay areas and terrains, such as towns, a

---

[2] *See, e.g.*, https://www.youtube.com/watch?v=4hqqFqcr1K8.

port, a power plant, a shooting range, a cemetery, farms and open fields, a beach village, bridges, an interior river or canal, various buildings, roads, and thousands of other unique features. Krafton created Erangel, including the types and locations of gameplay areas, and the designs of the terrain and buildings, to give players a unique visual gameplay experience, as well as a diversity of areas for gameplay. To aid in the collaborative nature of the gameplay, Krafton has overlaid a lettered grid on the play map, which enables players to easily reference specific cells to plan missions (e.g., "let's meet in cell CJ" or "land at power plant"). The play map, a unique and creative expression of a gameplay map, is a copyrightable visual and/or audiovisual work, individually and/or in combination with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

51. **Health Repair**. A player can repair a game character's health by utilizing a medical kit to apply bandages to a wound. As in real life, and unlike in other prior games, the application of bandages is not an immediate click of the button. Rather, it takes several moments to apply bandages and for their effects to be felt (i.e., removing from packaging, wrapping, etc.). These and other creative expressions of the unique attributes are copyrightable audiovisual works, individually and/or in combination with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

52. **Equipment Acquisition**. In Battlegrounds, each game character lands with nothing except clothing and a belt. After landing, the player must seek out weapons, modifications to weapons, ammunition, armor, equipment, clothing, and consumables, such as medical kits. The player can also find and use vehicles located throughout the map. Starting with nothing is a key creative and artistic component of Battlegrounds. The requirement of scavenging results in the players being forced to compete for resources and necessitates interaction.

1

2

3

4

5

6

7

8

9

10



11      53.    Battlegrounds' unique expression of equipment acquisition is a

copyrightable audiovisual work, individually and/or in combination with other elements

of Battlegrounds, including in Krafton's overall selection and use of this and other

elements in Battlegrounds. Additionally, this creative expression of equipment

acquisition has taken on secondary meaning as an emblem of Battlegrounds and of

Krafton. For example, it has been featured in live-action Battlegrounds parody skits.[3]

17      54.    **Weapons, Modifications, and Ammunition**. Battlegrounds includes

realistic weapons to simulate real-life combat. Krafton created a realistic combat

environment, including realistic weapon actions (e.g., recoil) and sounds. These unique

expressions of specific weapon audio elements as used in Battlegrounds are protectable

works as a combination of the audio synced to the visual operation of the weapons,

including in Krafton's overall selection and use of this and other elements in

Battlegrounds. The types of weapons include melee weapons (e.g., crowbar, machete,

24

25

_____

26  [3] *See, e.g.,*

27  https://www.youtube.com/watch?v=kM8Cws9tiTQ&list=PLSMETuURtTXCngmWf

28  _wUWfnzTjn04XF-B&index=5; https://www.youtube.com/watch?v=4hqqFqcr1K8.

sickle, and a frying pan), bows, handguns, rifles, shot guns, assault rifles, sniper rifles, and machine guns.



The visual appearances of the weapons are realistic, but each weapon has been stylized to make it distinct from actual real-life weapons. For example, the grain pattern on wooden pieces, configurations of the rifles and machine guns, and the wear on melee weapons all provide unique details and styling to each weapon, as seen in the examples below:







Different types of ammunition for the various firearms can also be found. And to add further realism, items that modify the operation of the firearms can be found too, including different types of optical scopes, stocks, and magazines of varying capacities. The variety of modifications provides thousands of combinations of available weapons, leading to diverse gameplay. Additionally, specific characteristics are assigned to each weapon, such as the amount of damage per hit it inflicts, recoil, reload time, number of rounds per magazine, range, and blast radius (e.g., shotgun and grenades).

55. Further, the amount of damage inflicted by a particular weapon depends upon where on their body the opposing game character is hit. The amount of armor worn by the opposing game character also affects the degree of damage received by the

1   opposing game character.

2       56.   These combined expressions of specific characteristics of weapons,
3  weapon modifications, and ammunition provide players with realism during gameplay
4  as well as a balanced game experience. The combination of these characteristics and
5  their expression in Battleground gameplay, including in combination with other
6  elements of Battlegrounds and Krafton's overall selection and use of these and other
7  elements in Battlegrounds, are protectable copyrightable audio, visual, and/or
8  audiovisual works.

9       57.   **Armor**. In addition to weapons, the player can find and use various types
10  of armor. In particular, the types of armor in Battlegrounds include helmets and vests.
11  Helmets provide armor protection to the game character's head, while the vests provide
12  armor protection to the game character's body. There are three levels of armor
13  protection for both helmets and vests. Vests also increase carrying capacity, as
14  explained further below with regard to belts and backpacks. There are specific metrics
15  for the amount of armor protection and corresponding reduction in damage received
16  from a hit. Additionally, each piece of armor can only absorb a specific amount of
17  damage (i.e., hit points) before the armor is rendered ineffective. Shown below are
18  images of the various armor and helmets.



27  The helmet with the visor, in particular, has achieved secondary meaning, becoming
28  intricately identified with Battlegrounds, which is based on a Russian special forces or

COMPLAINT FOR COPYRIGHT INFRINGEMENT

"spetsnaz"-style helmet. For example, an internet search for "PUBG helmet" or "Battlegrounds helmet" results in hits that for the most part include the image of the helmet with the visor. Krafton's selection of these helmet styles and unique use and rendering of them are copyrightable, individually and/or in combination with each other or with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.



Further, Krafton created unique realistic-appearing expressions of armor such as helmets and vests, while adding flair and artistry to these expressions to make them copyrightable visual and/or audiovisual works, individually and/or in combination with each other or with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

58. **Clothing**. The player also can pick up clothing, such as jackets, pants, hats, goggles, glasses, gloves, masks, shoes, and shirts. These pieces of clothing do not affect gameplay but are an artistic expression that provides the player with a visually diverse gameplay experience as well as allowing each player to express him/herself. The use of mixed streetwear and military equipment reinforces the imaginative experience for players by furthering the game's premise in which everyday citizens from different

backgrounds are forced into an environment in which only one player will be left alive.



59.   The clothing is expressive for the additional reason that, unlike other shooter games, Battlegrounds does not display designators above opposing game characters. Players must visually detect one another without any aid other than equipment found in gameplay, such as an optical scope. Thus, the colors and stylings of the clothing found in Battlegrounds add to the rich tapestry of the gameplay experience while permitting artistic expression. The appearances and styles of clothing found in Battlegrounds are protectable visual and/or audiovisual works, individually and/or in combination with each other or with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

60.   **Equipment**. The player can also find equipment, such as belts and backpacks. Belts and backpacks not only have unique visual appearances, but they are also functional. Each player starts with a belt, which permits the player to hold a certain number of items (up to a capacity). Additionally, the belt allows the player to attach two weapons to the game character's waist, such as a melee weapon or grenade. The backpack provides additional carrying capacity. The belts and the different types of

24

backpacks can carry different amounts of equipment and supplies, as developed by Krafton. As noted, Krafton also created uniquely creative appearances for each belt and backpack, making them copyrightable visual and/or audiovisual works, individually and/or in combination with each other or with other Battlegrounds elements, including in Krafton's overall selection and use of this and other elements in Battlegrounds.



61.    **Configuration**. The player has the freedom to determine how to equip his or her game character during gameplay. Krafton designed slots for easily accessible weapons. In particular, two slots are designated for rifles or shotguns, each carried around one of the game character's shoulders. A third slot is designated for a handgun. Fourth and fifth slots are designated for melee weapons or grenades, to be carried along the game character's waist.

62.    Additionally, clothing, equipment, and armor are equipped as appropriate on the game character's body. The particular setup of the configurable slots is a unique expression created by Krafton, and the slots are copyrightable visual and/or audiovisual works, individually and/or in combination with each other or with other Battlegrounds elements, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

63.    **The "Frying Pan."** One very beloved aspect of creative expression in Battlegrounds is the game's iconic frying pan. Previous shooter games did not include the use of a frying pan. In Battlegrounds, a player who obtains a frying pan may use it as a handheld melee weapon. Additionally, and unlike other shooter games, a player may elect to use the frying pan as armor by equipping it on his or her game character's waist. When so equipped, as a purely artistic and creative expression injecting humor into the game, the frying pan is depicted as covering the game character's buttocks and becomes the only indestructible and complete armor in the game. This means that the frying pan can absorb infinite hit points without deteriorating and can also provide complete protection against projectiles aimed at a game character's buttocks. Thus, the imaginative treatment of a frying pan as a melee weapon is made even more remarkable

COMPLAINT FOR COPYRIGHT INFRINGEMENT

by its further treatment as indestructible armor against shots to the buttocks of a game character (or other parts of the game character as positioned by the player in hand). The frying pan element thus creatively adds humor and whimsy to the audiovisual presentation of the game. Moreover, the indestructibility of the frying pan was originally due to a software coding error. However, it became such an enormously popular unique aspect of the game that Krafton elected maintain it. Krafton's use of a frying pan as both weapon and indestructible armor is a copyrightable visual and/or audiovisual work, individually and/or in combination with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

**Game Character Holding Frying Pan as Melee Weapon**



COMPLAINT FOR COPYRIGHT INFRINGEMENT

1

**Ricochet Off Frying Pan Worn as Armor**

2

3

4

5

6

7

8

9

10

11



12   Furthermore, the frying pan has taken on secondary meaning as an emblem of the

13   Battlegrounds game and of Krafton. For example, it has been the subject of a live-action

14   Battlegrounds parody skit[4] and has been featured in other Battlegrounds parodies and

15   memes, as shown below.[5]

16

17

18

19

20

21

22

23

_____

24   [4] *See*

25   https://www.youtube.com/watch?v=jfQGY8xaxO0&list=PLSMETuURtTXCngmWf_

26   wUWfnzTjn0 4XF-B&index=12.

27   [5] *See, e.g.*, https://www.youtube.com/watch?v=bywZTWzkuQM;

28   https://9gag.com/gag/aVM1Aby/best-pubg-armor.

64.     **Weapon, Equipment, and Vehicle Spawning**. While many of the weapons, consumables, and vehicles are located randomly throughout the gameplay map, they may also spawn at certain set locations. Fixed spawn locations allow experienced players to focus on certain areas of the gameplay map to obtain items and vehicles. Fixed spawn locations of highly desired items further promote players to interact in Battlegrounds. The mix of randomness and fixed spawn locations provides unlimited possibilities for gameplay strategy. These expressions of weapons, equipment, and vehicle spawning are copyrightable visual and/or audiovisual works, individually and/or in combination with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

**Equipment Spawning in a House**



**Vehicle Spawning in a Building**



65.    **Game Areas and Buildings**. The Battlegrounds gameplay map includes a number of areas, such as towns, a port, a power plant, a shooting range, a cemetery, farms and open fields, a beach village, a bridge, an interior river, roadways, and thousands of other unique features. The artistic renderings and locations of these areas provide an entertaining backdrop to gameplay in Battlegrounds.

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27



28

66.     Krafton has also created artistic renderings of various types of buildings throughout the immersive gameplay map. Buildings include warehouses, condominium buildings, outhouses, garages, village dwellings, and numerous other types of buildings. Again, the variety and types of buildings create a realistic environment, as well as providing strategic locations for gameplay.





COMPLAINT FOR COPYRIGHT INFRINGEMENT

1

2

3

4

5

6

7

8

9



10   Thus, these expressions of landscapes and buildings within Battlegrounds are

11   copyrightable visual and/or audiovisual works, individually and/or in combination with

12   each other or with other elements of Battlegrounds, including in Krafton's overall

13   selection and use of this and other elements in Battlegrounds.

14        67.    **Movement**. Game characters can move around in many different ways.

15   They can stand, walk, run, jump, take a prone position, crawl in a prone position, or

16   take a kneeling position. The various positions provide benefits and disadvantages. For

17   example, a game character can shoot a rifle most accurately in a prone position, but that

18   position leaves the game character vulnerable if detected. Shooting from a standing

19   position is less accurate, but the game character can readily walk or run to cover after

20   taking a shot. However, walking and running creates more noise than crawling. These

21   expressions of game character movements and the accompanying sounds in

22   Battlegrounds are copyrightable audio, visual, and/or audiovisual works, individually

23   and/or in combination with each other or with other elements of Battlegrounds,

24   including in Krafton's overall selection and use of this and other elements in

25   Battlegrounds.

26        68.    **Sounds and Noise**. The audiovisual experience of Battlegrounds includes

27   numerous expressive sounds that contribute to the audiovisual depiction of the

28

imaginary spaces, objects, and actions. Unlike most other computer games, there is no music during gameplay. The player must listen to his/her environment to obtain a competitive edge. For example, the player can hear an opposing game characters' footsteps, a supply drop aircraft flying overhead, and the distinctive gunshots of the various firearms. Krafton created each unique sound to augment the realism of the audiovisual presentation; they allow the player to react to the sounds and, with a trained ear, distinguish the type of firearm being used. As another example, each vehicle sounds different. A player can discern the approach of a vehicle, and potentially determine the vehicle type, from sounds. These distinctive audiovisual expressions add richness to the gameplay created by Krafton. In fact, many commentators have identified the relationship between success in the game and the ability to identify and discern these game character, weapon, and vehicle sounds.[6] The game also includes other distinctive sounds, such as parachuting through the wind, male and female game characters being attacked, tires destroying objects, and item acquisition. These unique sounds are copyrightable in combination with each other or with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.

69.    **Air Drops**. Another artistic aspect of Battlegrounds are air drops of supply boxes from a flying aircraft. As the aircraft approaches, the players can hear the sound of the aircraft, alerting them to a potential air drop.

---

[6] *See, e.g.*, https://www.turtlebeach.com/blog/how-audio-helps-you-get-your-chicken-dinner-in-pubg/.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1
2
3
4
5
6
7
8
9



10  The supply boxes are designed as large boxes, or crates, as opposed to simply a cluster
11  of items that players can collect. In addition, the supply boxes are covered by a distinct
12  tarp held down by straps and are dropped by parachute from a specific supply-drop
13  aircraft.

14
15
16
17
18
19
20
21

22  When the supply box lands, a visual indicator of red smoke wafts up from the landing
23  site, drawing the attention of players to the location of the supply box and creating a
24  dramatic visual impression.

25
26
27
28

COMPLAINT FOR COPYRIGHT INFRINGEMENT





The supply box provides the first player to reach it with either weapons, modifications to weapons (e.g., a scope), ammunition, clothing (e.g., camouflaged clothing), or medical supplies. Players can either speed towards the supply box to obtain the supplies or lurk around the supply box to snipe other players who approach it. These expressions of air drops in Battlegrounds are copyrightable, individually and/or in combination with each other or with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds. The supply boxes also have also taken on secondary meaning as an emblem of Battlegrounds and of Krafton.

Fans have created skits evoking the identifiable visual indicator and tarp covered supply boxes.[7]

70.    **Bombardment Zone (Red Zones)**. Krafton inserted into its game an artistic periodic event where a circular zone, marked in red on the game map, is targeted for bombardment. Prior to bombardment, the players are warned of the impending barrage. This creative event conveys fear, danger, and urgency, which causes players to either seek shelter or evade the bombardment, potentially running into other players. However, merely obtaining shelter may not completely protect the player if he/she is too near an opening (e.g., door or window). The bombardment is an artistic catalyst to create further interaction between the players. This expression of a bombardment zone is a copyrightable visual and/or audiovisual work, individually and/or in combination with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds.



---

[7] *See* https://www.youtube.com/watch?v=0dG6HliC9OI;

https://www.youtube.com/watch?v=YDp87dUytd8.

37

1
2
3
4
5
6
7
8
9



10  The bombardment zone has also taken on secondary meaning as an emblem of
11  Battlegrounds and of Krafton. For example, it has been featured as a punchline in
12  multiple live-action Battlegrounds parody skits.[8]

13      71.  **Shrinking Gameplay Area**. The conclusion of each game is creatively
14  precipitated by the shrinking of the gameplay area within the map. A timer is provided
15  to the players, notifying them when the viable play area will shrink to a circle within
16  the gameplay map. The first large circle is displayed in white on the game map,
17  indicating where the players will be confined after the timer expires. A large blue circle
18  covering the entire map appears and slowly shrinks down to the first white circle.
19  Players' game characters caught outside of the closing blue circle will begin losing
20  health until they either reach the interior of the first white circle or their health falls to
21  zero. A new timer begins and a smaller circle within the first circle appears on the map.
22  After the expiration of the second timer, the first circle is displayed in blue, which
23  begins shrinking down to the smaller white. The process repeats four times, until the
24  gameplay is restricted to a final circle of area representing a relatively small area within
25  the gameplay map.

26
27
─────────────────
28  [8] *See, e.g.*, https://www.youtube.com/watch?v=pqSN7lsPs2k.





The rate of loss of health outside the circles also increases until, in the end, game characters caught outside the final circle instantly lose all health points. This creative aspect of Battlegrounds forces the players to converge on a single location and to confront other players to resolve who will be the last player standing. Players witness the edges of the shrinking play zone through a blue forcefield-like wave, which appears electrified or otherwise kinetic as it moves across the play area.



The timing, size, progression, and appearance of the shrinking gameplay area results in a unique experience in each game, paces gameplay to reduce lulls in the action, and provides ever-increasing tension in the game. Krafton's expression of the shrinking gameplay area is a copyrightable visual and/or audiovisual work, individually and/or in combination with other elements of Battlegrounds, including in Krafton's overall selection and use of this and other elements in Battlegrounds. The shrinking gameplay area has also taken on secondary meaning as an emblem of Battlegrounds and of Krafton. For example, it has been the subject of various live-action Battlegrounds parody skits.[9]

---

[9] *See*

https://www.youtube.com/watch?v=RPFZgk_O8Ok&list=PLSMETuURtTXCngmWf_wUWfnzTjn 04XF-B&index=3;

https://www.youtube.com/watch?v=V_vUrY1MczI&index=9&list=PLSMETuURtTCngmWf_wU WfnzTjn04XF-B&index=9;

https://www.youtube.com/watch?v=pqSN7lsPs2k;

https://www.youtube.com/watch?v=YDp87dUytd8;

https://www.youtube.com/watch?v=4hqqFqcr1K8; *see also*

72.     **Play Modes**. Battlegrounds features three play modes: (1) "solo" (in which each player fights alone against the field); (2) "duo" (in which players are teamed into groups of two and fight to be the last duo remaining); and (3) "squad" (in which players are grouped into squads of four and fight to be the last squad remaining). In "duo" and "squad" modes, every member of a team must die in order for the team to be considered defeated. However, in both modes, a player whose game character's health/hit points have been depleted does not die instantaneously and instead survives for a short time after, albeit immobilized in a crouching position. During this time, another player from the team may revive the immobilized game character.

73.     **"Winner Winner Chicken Dinner."** Should a player be the last one standing at the end of the game, he/she is rewarded with a salutary "Winner Winner Chicken Dinner!" announcement.

**Victory Screen from Battlegrounds**



---

https://www.youtube.com/watch?v=sQ6s6ujf6kY&list=PLSMETuURtTXCngmWf_
wUWfnzTjn04XF-B&index=2;

https://www.youtube.com/watch?v=5FW7xb8jWew&list=PLSMETuURtTXCngmWf
_wUWfnzTjn 04XF-B&index=25.

The juxtaposition of this lighthearted expression of victory with the survival narrative of the game adds elements of surprise and humor to the work, and the artistic inclusion of this emphatic expression has become particularly beloved by the gaming community. "Winner Winner Chicken Dinner" in the context of a shooter game is a copyrightable work in combination with other elements of Battlegrounds. Furthermore, this catchphrase has taken on secondary meaning within the gaming community as an emblem of Battlegrounds and of Krafton; it has become nearly synonymous with Battlegrounds to gamers. This phrase also has been featured in memes, live-action parody videos, and other responsive content created by fans. For example, it has been featured in live-action Battlegrounds parody skits and it has also been featured in other Battlegrounds parodies and memes.[10]

## FREE FIRE AND FREE FIRE MAX INFRINGE KRAFTON'S COPYRIGHTS IN BATTLEGROUNDS

74.     Free Fire and Free Fire Max are mobile video games that were made and released by Garena, and, upon information and belief, first released in the United States through the Apple App Store and the Google Play store.

75.     Garena released Free Fire through the Apple App Store and the Google Play store as a thinly veiled, unauthorized mobile version of Battlegrounds. Tellingly, upon information and belief, Garena rushed the launch of Free Fire to occur before the release of PUBG Mobile, the authorized mobile version of Battlegrounds. Garena subsequently released Free Fire Max to further capitalize on the success it experienced from infringing Battlegrounds through Free Fire.

---

[10] *See, e.g.*, https://www.youtube.com/watch?v=_iysbdJOkyM; https://www.youtube.com/watch?v=jfQGY8xaxO0&list=PLSMETuURtTXCngmWf_wUWfnzTjn04XF-B&index=12; https://www.youtube.com/watch?v=4hqqFqcr1K8.

76. Garena's actions in continuing to infringe and exploit Free Fire and Free Fire Max is causing substantial harm to Krafton through lost sales of both Battlegrounds and New State, which it recently released.

77. As set forth below, Free Fire and/or Free Fire Max contains numerous elements that are both individually, and/or in combination with one another—including through the selection of elements—virtually identical and/or substantially similar to copyrightable elements of creative audiovisual expression in Battlegrounds, including at least the following:

78. **Total Look and Feel**. The overall look, feel, and audiovisual style of Free Fire closely mimics the stylized realism of Battlegrounds. On information and belief, Garena copied Krafton's expressive depiction of these elements where other depictions could have been used.

| BATTLEGROUNDS TOTAL LOOK AND FEEL | FREE FIRE TOTAL LOOK AND FEEL |
|---|---|

 

 

1
2
3
4
5

 

6
7
8
9
10
11

 

12
13
14
15
16
17

 

18
19
20
21
22
23

 

24
25
26
27
28

79.    **Overall Gameplay**. The overall look and feel of gameplay in Free Fire very closely matches that of Battlegrounds. For example, the narrative arc or plot of the game, which includes gathering in a pre-game waiting lobby area and experimenting with weapons and objects but without consequence; jumping from a plane; parachuting to a desired location within the gameplay map; scavenging for weapons, armor, and

other items; the continued constricting of the active play area, which forces players to converge and interact with each other with increasing frequency over the duration of the match; the lack of any background music, which accentuates the natural sounds of gameplay; the audio and visual representations of movement and shooting; and the battle formats presented (e.g., player versus everyone and small teams versus everyone) all directly correspond to those of Battlegrounds and, as set forth below, are sufficiently similar to constitute actionable copyright infringement. On information and belief, Garena copied the depiction of these elements where another depiction could have been used.

80. **Play Maps**. Like Battlegrounds, Free Fire provides a map defining the area of play, and the map is substantially similar to the Battlegrounds map.

81. Both maps feature towns, farms, buildings, fields, trees, roads, and mountainous topography that are depicted as if photographed using a reconnaissance satellite, as well as featured location indicators and white lettered descriptions of those featured areas. Although maps have been used in prior games, the depiction of the map in Free Fire is strikingly similar to the depiction of the map in Battlegrounds. Further, Garena copied in Free Fire Battlegrounds' use of a letter grid overlay on the map to aide players in locating one another. Moreover, Garena copied in Free Fire Battlegrounds' use of only letters—as opposed to letters and numbers, which is more common—and also copied the exact configuration of the letters on the grid, as shown below. On information and belief, Garena copied in Free Fire Krafton's expressive depiction of the map elements where another depiction could have been used.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| BATTLEGROUNDS PLAY MAP | FREE FIRE PLAY MAP |
|---|---|




82.    Indeed, over time, Garena has added features to the Free Fire map that are substantially similar to those that already existed in the Battlegrounds play map in order to make the game more similar to Battlegrounds and mimic the game play of Battlegrounds. Garena further copied Battlegrounds' play map by adding a river that flows from an interior town to the surrounding sea, and a large secondary island connected by two primary bridges. These two primary bridges are in turn connected by a main roadway that traverses the secondary island. Both maps also share a coastal village reminiscent of Southeast Asia, a nuclear power plant, a graveyard, a lookout tower, a shooting range, and various other features. On information and belief, Garena copied Krafton's expressive depiction of these map elements where another depiction could have been used. A selection of these additions is shown below.

### Battlegrounds Play Map – Detail of River



### Free Fire Play Map 2017–2018 – No River



COMPLAINT FOR COPYRIGHT INFRINGEMENT

**Free Fire Play Map – River Added in 2018**



**Battlegrounds Play Map – Detail of Large Secondary Island**

**Conneted by Two Bridges**



**Free Fire Play Map 2018 – No Large Secondary Island**



COMPLAINT FOR COPYRIGHT INFRINGEMENT

**Free Fire Play Map 2018–Present – Large Secondary Island**



83.     In addition, Garena named the small village on its map as Pochinok, which is a Russian word for a rural settlement. Another variant of the Russian word is Pochinki, which Battlegrounds **first** used to label its own small village. On information and belief, Garena copied in Free Fire Krafton's expressive depiction of a small village with a Russian name where another depiction could have been used.

| BATTLEGROUNDS POCHINKI VILLAGE | FREE FIRE POCHINOK VILLAGE |
| --- | --- |





84.     **Scenes and Locations**. Many of the locations, structures, landscapes, and other features within the Free Fire play area closely correspond to those within the Battlegrounds play area. For example, the Battlegrounds play area and the Free Fire play area each feature a graveyard, a port with shipping containers and a crane, a Southeast Asia coastal village, a shooting range, a small village, a farm, an airstrip, and a trestle bridge leading to a large adjacent island, among others. These areas in Free Fire are strikingly similar to those in Battlegrounds. Moreover, Garena has copied a large

49

number of the specific types of buildings used by Krafton in Battlegrounds. On information and belief, Garena copied Krafton's expressive depictions of the scenes and locations identified below where other depictions could have been used.

| BATTLEGROUNDS GRAVEYARD | FREE FIRE GRAVEYARD |
|---|---|







| BATTLEGROUNDS PORT WITH SHIPPING CONTAINERS | FREE FIRE PORT WITH SHIPPING CONTAINERS |
|---|---|










| BATTLEGROUNDS SOUTHEAST ASIA COASTAL VILLAGE | FREE FIRE SOUTHEAST ASIA COASTAL VILLAGE |
|---|---|







51
COMPLAINT FOR COPYRIGHT INFRINGEMENT





**BATTLEGROUNDS
SHOOTING RANGE**

**FREE FIRE
SHOOTING RANGE**





**BATTLEGROUNDS FARM**

**FREE FIRE FARM**





COMPLAINT FOR COPYRIGHT INFRINGEMENT

| BATTLEGROUNDS TRESTLE BRIDGE TO ADJACENT ISLAND | FREE FIRE TRESTLE BRIDGE TO ADJACENT ISLAND |
|---|---|

 

85.   **Buildings**. The Free Fire play area contains numerous buildings that are substantially similar to buildings in Battlegrounds. Although buildings have been used in prior games, the façades and layouts of the buildings in Free Fire are strikingly similar to those in Battlegrounds. Moreover, Garena has copied in Free Fire a large number of the specific types of buildings used by Krafton in Battlegrounds. For example, each game contains a condominium with balcony, a power plant cooling tower, one- and two-port garages, an outhouse, a variety of strikingly similar warehouses, a storage building, gas storage tanks, a factory, a radio tower, and a watchtower. On information and belief, Garena copied in Free Fire Krafton's expressive depictions of the buildings identified below where other depictions could have been used for the purpose of evoking the same gameplay experience depicted in Battlegrounds.

| BATTLEGROUNDS CONDOMINIUM WITH BALCONY | FREE FIRE CONDOMINIUM WITH BALCONY |
|---|---|

 

 

| BATTLEGROUNDS POWER PLANT AND COOLING TOWERS | FREE FIRE POWER PLANT AND COOLING TOWERS |
|---|---|

 

COMPLAINT FOR COPYRIGHT INFRINGEMENT







| BATTLEGROUNDS<br>ONE-PORT GARAGE | FREE FIRE<br>ONE-PORT GARAGE |







COMPLAINT FOR COPYRIGHT INFRINGEMENT

| **BATTLEGROUNDS TWO-PORT GARAGE** | **FREE FIRE TWO-PORT GARAGE** |







| **BATTLEGROUNDS WAREHOUSE** | **FREE FIRE WAREHOUSE** |







COMPLAINT FOR COPYRIGHT INFRINGEMENT

| BATTLEGROUNDS THREE-STORY BUILDING | FREE FIRE THREE-STORY BUILDING |
|---|---|

 

 

| BATTLEGROUNDS OUTHOUSE | FREE FIRE OUTHOUSE |
|---|---|

 

COMPLAINT FOR COPYRIGHT INFRINGEMENT

| **BATTLEGROUNDS GAS STORAGE TANKS** | **FREE FIRE GAS STORAGE TANKS** |
|---|---|

 

 

| **BATTLEGROUNDS RADIO TOWER** | **FREE FIRE RADIO TOWER** |
|---|---|

 

COMPLAINT FOR COPYRIGHT INFRINGEMENT

| BATTLEGROUNDS WATCHTOWER | FREE FIRE WATCHTOWER |
|---|---|





86. The foregoing examples were selected as representative sample and not an exhaustive catalogue of the large number of similarities in the Battlegrounds and Free Fire gameplay areas.

87. **Air Jump**. Play begins in Fire and/or Free Fire Max with a transport airplane from which players jump, free fall, and parachute into the play area. As in Battlegrounds, the route of the plane is shown in a mini-map within the play screen, and players can choose to jump at any point. Fire and/or Free Fire Max has used a similar type of airplane as that in Battlegrounds, similar expressions of a satellite-view map depicting various locations and their names, and similar expressions to indicate the user's location on the map. On information and belief, Garena copied in Fire and/or Free Fire Max Krafton's expressive depictions of an air jump where other depictions could have been used for the purpose of evoking the same introductory experience felt by players of Battlegrounds.

| **BATTLEGROUNDS TRANSPORT PLANE** | **FREE FIRE TRANSPORT PLANE** |
|---|---|




88. **Free Fall and Parachuting**. As in Battlegrounds, following the jump from the airplane, in Fire and/or Free Fire Max a player can choose to free fall or parachute toward the ground. The depiction of free fall in Fire and/or Free Fire Max is similar to the depiction of free fall in Battlegrounds. As in Battlegrounds, a player can control his or her game character's direction and speed while free falling or parachuting depending on the position and movement of the game character's body, as with actual skydiving. For example, if a player points the game character's body forward, the game charter's descent will markedly speed up. In contrast, if a player pulls his or her game character back, the game character's speed will decrease. Fire and/or Free Fire Max also uses the same depiction of a parachute as in Battlegrounds—a parafoil type. Further, as in Battlegrounds, Fire and/or Free Fire Max automatically deploys a user's parachute at a certain point before hitting the ground. In addition, as in Battlegrounds, a player's parachute in Fire and/or Free Fire Max disappears from the player's body just before touching ground. On information and belief, Garena copied in Fire and/or Free Fire Max Krafton's expressive depictions of free fall and parachuting, where other depictions could have been used, solely for the purpose of evoking the same introductory experience felt by players of Battlegrounds.

1
2
3
4
5
6
7
8

| BATTLEGROUNDS PARACHUTE | FREE FIRE PARACHUTE |
|---|---|

 

9   89.   **Frying Pan**. Fire and/or Free Fire Max also provides a frying pan that can
10  be used both as a melee weapon and as armor, as in Battlegrounds. The frying pan in
11  Fire and/or Free Fire Max is designed with the same shape and characteristics as the
12  frying pan in Battlegrounds, such as the double pour spouts and handles. Further, both
13  frying pans also feature a sewing-needle like eyehole in the handle. Garena could have
14  used in Fire and/or Free Fire Max many other depictions of a frying pan, but it copied
15  the elements Krafton used to depict its frying pan.

16      90.   As with the Battlegrounds frying pan, the Fire and/or Free Fire Max frying
17  pan provides medium damage output when used as a melee weapon and, as armor, can
18  deflect bullet shots when in a character's hand or on a character's back. Indeed, upon
19  information and belief, as in Battlegrounds, the frying pan in Fire and/or Free Fire Max
20  is indestructible and also completely protects a player from projectile damage to his/her
21  posterior when used as armor. The use of a frying pan to illustrate this item of weaponry
22  and indestructible armor is unnecessary to the game because other objects could have
23  been used to illustrate the same functions.

24      91.   On information and belief, Garena's decision to include in Fire and/or Free
25  Fire Max a frying pan that serves a dual purpose as a melee weapon and a complete and
26  indestructible armor item in Fire and/or Free Fire Max was made for the sole purpose
27  of evoking and infringing the iconic frying pan emblem of Battlegrounds.

28

| BATTLEGROUNDS FRYING PAN | FREE FIRE FRYING PAN |
|---|---|
|  |  |
| BATTLEGROUNDS FRYING PAN BEING USED AS A MELEE WEAPON | FREE FIRE FRYING PAN BEING USED AS A MELEE WEAPON |
|  |  |
| BATTLEGROUNDS FRYING PAN BEING USED AS INDESTRUCTIBLE ARMOR | FREE FIRE FRYING PAN BEING USED AS INDESTRUCTIBLE ARMOR |
|  |  |

1

2

3

4

5

6

7    Indeed, as demonstrated below, the frying pan entry on a Free Fire wiki website notes

8    that it is "[t]he ultimate shield that protects the wearer from everything your enemy can

9    throw at you."[11]

10



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    [11] *See* https://ff.garena.com/weapons/index/en/.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

Moreover, Garena has also copied a feature in Battlegrounds that permits users to add "skins" or personalizations to the frying pan. Garena has gone so far as to also copy Battlegrounds' chicken theme, as discussed above.

**Free Fire Frying Pan "Skins"**









92. **Attachments and Modifications for Firearms**. The attachments and modifications for firearms in versions of Free Fire are substantially similar to those used in Battlegrounds, having the same or similar type, appearance, and, on information and belief, performance statistics. Moreover, Garena has copied in Free Fire a large number of the specific types of attachments and modifications Krafton uses in Battlegrounds.

For example, both games offer similar assortments of magazines and stocks. Further, as in Battlegrounds, versions of Free Fire features two levels of scopes that can be added to certain firearms—a 2X and 4X scope. And, just as in Battlegrounds, versions of Free Fire also feature three standard-size magazines. On information and belief, Garena copied in versions of Free Fire Krafton's choice to utilize two levels of scopes and three base levels of magazines, individually and in combination with other elements, where innumerable other choices could have been made.

93.   **Armor**. The armor in versions of Free Fire is substantially similar to the armor in Battlegrounds. Versions of Free Fire have three levels of helmets and three levels of body armor, as with Battlegrounds, and these items are depicted similarly, operate similarly, and, on information and belief, provide the same levels of damage reduction.

94.   For example, the "Level 1" helmet in both games is a motorcycle or scooter-style helmet that covers the top, back and sides of the wearer's head. The "Level 2" helmet in both games is a camouflaged military helmet and covers the same areas of the wearer's head as the "Level 1" helmet. Finally, the "Level 3" helmet in both games resembles a special forces helmet covering all sides of the wearer's head including the front, has a shiny black appearance, and includes a visor. Further, the relative strength of Free Fire's and/or Free Fire Max's three levels of helmets is proportionally similar to those in Battlegrounds.[12] On information and belief, Garena copied in Free Fire

---

[12] *See* https://guides.gamepressure.com/garena-free-fire/guide.asp?ID=52560#:~:text=There%20are%204%20levels%20of,and%2057%25%20bonus%20to%20defense; https://gamingonphone.com/guides/free-fire-list-of-all-the-available-utility-items/; https://guides.gamepressure.com/playerunknowns_battlegrounds/guide.asp?ID=43328#:~:text=Remember%20that%20helmets%20level%201,before%20it%20goes%20to%20hell.

Krafton's expressive depictions, individually and/or in combination with other elements, of the helmets identified above where other depictions could have been used.

### Comparative Strength of Helmets

| Level | Battlegrounds Damage Reduction | Free Fire Damage Reduction |
|-------|-------------------------------|----------------------------|
| 1 | 30% | 33% |
| 2 | 40% | 45% |
| 3 | 55% | 57% |

**BATTLEGROUNDS LEVEL 1 HELMET**

**FREE FIRE LEVEL 1 HELMET**





COMPLAINT FOR COPYRIGHT INFRINGEMENT

| BATTLEGROUNDS LEVEL 2 HELMET | FREE FIRE LEVEL 2 HELMET |
|---|---|
|  |  |

| BATTLEGROUNDS LEVEL 3 HELMET | FREE FIRE LEVEL 3 HELMET |
|---|---|
|  |  |

95.     In addition to copying Battlegrounds' use of three levels of body armor, as depicted below, the relative strength of Free Fire's and/or Free Fire Max's three levels of body armor is proportionally similar to those in Battlegrounds.[13] On information and

---

[13] https://gamingonphone.com/guides/free-fire-list-of-all-the-available-utility-items/; https://guides.gamepressure.com/playerunknowns_battlegrounds/guide.asp?ID=43328 #:~:text=Remember%20that%20helmets%20level%201,before%20it%20goes%20to %20hell.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

belief, Garena copied in Free Fire Krafton's expressive depictions of the body armor where other depictions could have been used.

### Comparative Strength of Body Armor

| Level | Battlegrounds Durability | Free Fire Durability | Battlegrounds Damage Reduction | Free Fire Damage Reduction |
|-------|--------------------------|----------------------|--------------------------------|----------------------------|
| 1 | 200 | 190 | 30% | 33% |
| 2 | 220 | 235 | 40% | 50% |
| 3 | 250 | 260 | 55% | 66% |

**BATTLEGROUNDS
LEVEL 1 BODY ARMOR**

**FREE FIRE
LEVEL 1 BODY ARMOR**





COMPLAINT FOR COPYRIGHT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| BATTLEGROUNDS LEVEL 2 BODY ARMOR | FREE FIRE LEVEL 2 BODY ARMOR |
|---|---|

 

| BATTLEGROUNDS LEVEL 3 BODY ARMOR | FREE FIRE LEVEL 3 BODY ARMOR |
|---|---|

 

96. **Backpacks**. The availability of different size or levels of backpacks in versions of Free Fire is substantially similar to the availability and use of armor in Battlegrounds. Each game has three levels of backpacks, and these items are depicted similarly, operate similarly, and, on information and belief, have similar capacities. On information and belief, Garena copied in Free Fire Krafton's expressive use and/or depictions of backpacks where other depictions could have been used.

69

97.    **Air-Dropped Supply Boxes**. Free Fire features air-dropped supply boxes that are substantially similar to those in Battlegrounds. As in Battlegrounds, in versions of Free Fire, the supply boxes are dropped from a military-style transport aircraft, which can be heard by the players before the supply boxes drop. The supply boxes in versions of Free Fire are depicted in a different color combination than those in Battlegrounds, but the Free Fire supply boxes mimic their Battlegrounds counterparts in many other respects. For example, the supply boxes in both games are covered in tarps and let out a dramatic visual indicator after landing. On information and belief, Garena copied in Free Fire Krafton's expressive depictions of the air-drop area where other depictions could have been used for the purpose of evoking the same iconic air-drop experience depicted in Battlegrounds.

| BATTLEGROUNDS SUPPLY DROP | FREE FIRE SUPPLY DROP |
|---|---|
|  |  |
|  |  |






98.     Further, on information and belief, as in Battlegrounds, only certain types of weapons are available in supply drops in Free Fire. For example, in both games, only the Groza, M249, AWM, and other high-powered firearms are available in supply drops as opposed to randomly spawning in the gameplay area, as with other weapons. On information and belief, Garena copied in Free Fire Krafton's expressive use of supply drops to distribute certain weapons where other depictions could have been used.

99.     **Bombardment Zone**. Free Fire includes a bombardment zone feature that is substantially similar to the bombardment zone feature in Battlegrounds. As in Battlegrounds, the bombardment zone in Free Fire periodically spawns and is depicted by a red-shaded area superimposed on the miniature play area map within the play screen. As in Battlegrounds, players in Free Fire receive a warning message about the bombardment zone, and during bombardments, interior spaces away from windows within buildings are safe. On information and belief, Garena copied in Free Fire Krafton's expressive use of a bombardment zone to convey fear, danger, and urgency into the game and, separately, to act as an artistic catalyst to create further interaction between the players, where other depictions could have been used.

| **BATTLEGROUNDS BOMBARDMENT ZONE** | **FREE FIRE BOMBARDMENT ZONE** |
|---|---|
|  |  |
|  |  |

100.   **Shrinking Gameplay Area**. Free Fire includes a shrinking gameplay area feature that is substantially similar to the shrinking gameplay area feature in Battlegrounds. As in Battlegrounds, the shrinking gameplay area in Free Fire is depicted by a white circle on the gameplay area map. In both games, the circle shrinks in iterations, with each iteration encompassing a proportionally smaller amount of the previous areas. Both games also display a timer that warns players when the next shrinking will occur. Further, in both games, the amount of damage per second inflicted to the player when outside of the gameplay area increases as the gameplay area becomes progressively smaller. On information and belief, Garena copied in Free Fire Krafton's expressive shrinking gameplay area depiction, which reduces lulls in the action and provides ever-increasing tension in the game, where other such depictions could have been used.

| **BATTLEGROUNDS SHRINKING GAMEPLAY** | **FREE FIRE SHRINKING GAMEPLAY** |







101. **Chicken Theme**. When a player emerges victorious at the end of Free Fire, his or her screen displays a cartoon chicken resting atop an image of a roast chicken dinner. This catchphrase that was creatively selected by Krafton to congratulate winners of Battlegrounds has become emblematic of Battlegrounds. The juxtaposition of this lighthearted expression of victory with the survival narrative of the game adds elements of surprise and humor to the work, and the artistic inclusion of this emphatic expression has become particularly beloved by the gaming community. Garena has employed the use of chicken imagery in Free Fire, including but not limited to the display of a roast chicken dinner when a player is victorious, as depicted below. On information and belief, Garena copied Krafton's expressive use of a chicken dinner theme to designate victory where other depictions could have been used to inject joy and whimsy into a game upon winning.

**Chicken Theme in Free Fire Upon Winning**



102.   **Supply Belts**. Garena copied in Free Fire Battlegrounds' use of a supply belt and specific slots for specific types of weapons or objects. As with Battlegrounds, Free Fire only permits larger firearms in certain slots and smaller firearms in others. Further, as with Battlegrounds, Free Fire only permits melee weapons, such as the frying pan, to be placed in a specific slot near the middle of the belt. As in Battlegrounds, this causes the frying pan to cover the game character's buttocks. On information and belief, Garena copied in Free Fire Krafton's expressive use the supply belt and arrangement of weapons and objects, including the placement of melee weapons, like the frying pan, where other depictions could have been used.

103.   **Health and Health Repair**. Garena has additionally copied in Free Fire Battlegrounds' realistic use of bandages to repair health. As in Battlegrounds, the application of a bandage to repair health in Free Fire takes several moments and the effects are not immediately felt. On information and belief, Garena copied in Free Fire Krafton's expressive depiction of bandage application where other depictions could have been used.

104.   The foregoing are representative examples and not an exhaustive catalogue of the large number of similarities, individually or in combination with others, that exist between Battlegrounds and Free Fire.

105.   Upon information and belief, these same or substantially similar elements are also present in Free Fire Max, a game that is substantively identical to Free Fire except for certain color enhancements, user interface features, and other elements, which do not render it any less infringing of Battlegrounds.

106.   Based on the foregoing, Krafton seeks to hold Garena liable for copyright infringement for the period from April 13, 2019 to present, as set forth herein.

### GARENA, THROUGH APPLE AND GOOGLE, HAS EXPERIENCED TREMENDOUS SUCCESS WITH FREE FIRE, AND NOW FREE FIRE MAX, AT THE EXPENSE OF KRAFTON

107.   After Krafton launched Battlegrounds, Garena apparently authorized Apple and Google to begin to distribute Free Fire through their respective app stores.

108.   As alleged above, by the time Apple and Google began distributing Free Fire with the apparent authorization of Garena, Battlegrounds was already immensely popular. Indeed, Krafton had sold more than 10 million copies and it had reached a record three million concurrent players.

109.   Garena seized on Battlegrounds' popularity and success and exploited the fact that a mobile version of Battlegrounds had yet to be released. Indeed, Free Fire was a thinly veiled unauthorized or "bootleg" version of Battlegrounds.

110.   Unsurprisingly, given the immense popularity of Battlegrounds, the infringing Free Fire also experienced rapid success. By the end of 2017, Garena reported that Free Fire had six million daily active users. And by the end of 2020, Garena reported that Free Fire had more than 100 million daily users. According to Garena, for the years 2019 and 2020, Free Fire was the most downloaded mobile game globally—downloads that occurred through the Apple App Store and Google Play store—and the top-ranking mobile-only video game on YouTube in terms of views.[14]

---

[14] https://www.sea.com/products/garena.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

111.   Garena has generated astronomical revenues from the exploitation of Free Fire through the Apple App Store and the Google Play store. For example, in 2018, Garena's global revenue from digital entertainment was $462.4 million. By 2019, it was $1.1 billion. And by 2020, it was more than $2 billion.[15] Garena has reported that the vast majority of this revenue is attributable to sales of the infringing Free Fire app, through the Apple App Store and Google Play store. Indeed, Garena recently reported that, during the first three months of 2021, it generated more than $100 million in revenue from Free Fire sales in the United States alone, again through the Apple App Store and Google Play store.[16]

112.   Garena's ill-gotten revenue is not only the result of its wrongful sales of Free Fire but also its constant, global promotion of Free Fire, including at e-sport competitions and other events that are attended by millions of users. These actions have continued through the filing of this complaint, including now through Free Fire Max.

## DISTRIBUTION OF FREE FIRE AND FREE FIRE MAX
## BY APPLE AND GOOGLE

113.   Upon information and belief, Apple is the owner of the Apple App Store distribution platform. The App Store is the world's only platform for the distribution and sale of mobile games for iOS devices such as iPhones and iPads.

114.   Upon information and belief, Google is the owner of the Google Play distribution platform. Google Play is the world's leading platform for the distribution and sale of mobile games for Android devices.

---

[15] https://cdn.sea.com/webmain/static/resource/seagroup/pressrelease/2021-04-17%20Sea%20Limited%20Files%20Annual%20Report%20on%20Form%2020-F/2021-04-16%20-%20Form%2020-F.pdf.

[16] https://dotesports.com/news/free-fire-overtakes-pubg-mobile-in-u-s-revenue-for-q1-2021.

115.    Upon information and belief, in order for a game developer or publisher to distribute a game on either the Apple App Store or Google Play store, the developer must create an Apple App Store or Google Play developer account, agree to a standard developer agreement, and provide information to Apple and/or Google such as contact information, credit card and/or bank account information, and the currency preference for payment.

116.    Upon information and belief, as part of its standard developer agreement, Apple requires that its developers agree to indemnify it from any claims of copyright infringement. For example, in the current version of the Apple Developer Program License Agreement (the "Apple Developer Agreement"), Apple requires the following:

> To the extent permitted by applicable law, You agree to indemnify and hold harmless, and upon Apple's request, defend, Apple, … from any and all claims, losses, liabilities, damages, taxes, expenses and costs, including without limitation, attorneys' fees and court costs …, incurred … and arising from or related to … (ii) any claims that Your Covered Product or the distribution, sale, offer for sale, use or importation of Your Covered Product … violate or infringe any third party intellectual property or proprietary rights….

Apple Developer Agreement, § 10.[17]

117.    Similarly, upon information and belief, as part of its standard developer agreement, Google also requires that its developers agree to indemnify it from any claims of copyright infringement. For example, in the current version of the Google Play Developer Distribution Agreement (the "Google Developer Agreement"), Google requires the following:

> To the maximum extent permitted by law, You agree to defend, indemnify, and hold harmless Google … from and against any and all third party claims, actions, suits, or

---

[17] *See* https://developer.apple.com/support/downloads/terms/apple-developer-program/Apple-Developer-Program-License-Agreement-20210607-English.pdf.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

proceedings, as well as any and all losses, liabilities, damages, costs, and expenses (including reasonable attorneys' fees) arising out of or accruing from … infringement or violation by Your Product(s) of any Intellectual Property Right or any other right of any person; or (c) You or Your Product(s)' violation of any law.

Google Developer Agreement, § 14.1.[18]

118.   Upon information and belief, once a developer, such as Garena, enters into these agreements and creates accounts with either the Apple App Store or the Google Play store, the developer may upload a digital file of the app to the Apple App Store or Google Play store and select the territories to which the developer wishes to distribute the game.

119.   Upon information and belief, Apple and Google review uploaded games for various criteria before they are offered to the public. If approved, Apple and Google will allow the game to be distributed, and do distribute the game, through a dedicated store page.

120.   Accordingly, and upon information and belief, in order for Free Fire and Free Fire Max to be distributed in the United States on the Apple App Store or Google Play store, Garena necessarily created both an Apple developer account and a Google developer account and selected the territories in which it would be sold. Garena has reported that Free Fire is currently available on the Apple App Store and Google Play store in more than 130 markets worldwide, including the United States. Upon information and belief, Garena is distributing Free Fire Max in the same manner.[19]

---

[18] https://play.google.com/about/developer-distribution-agreement.html

[19] https://cdn.sea.com/webmain/static/resource/seagroup/pressrelease/2021-04-17%20Sea%20Limited%20Files%20Annual%20Report%20on%20Form%2020-F/2021-04-16%20-%20Form%2020-F.pdf.

78

121.    Further, and upon information and belief, both Apple and Google reviewed and approved Free Fire and Free Fire Max for distribution through their respective app stores and, upon approval, have collectively distributed over a billion copies of Free Fire worldwide. Indeed, Free Fire has been downloaded from the Google Play store alone more than one billion times, as Garena recently promoted on social media.

122.    Moreover, upon information and belief, if either Apple or Google finds a game to be particularly noteworthy or appealing, it may elect to "feature" the game on its storefront to make it easier for users to find and download.

123.    Upon information and belief, Apple and Google profit directly from every game sold or in-app purchase made on their respective platforms in the form of "platform fees" or "service fees." Indeed, according to public information, and upon information and belief, Apple and Google retain approximately 30% of the revenues generated from each game sold or in-app purchase made on or through their respective platforms. Upon information and belief, Apple and Google also retain highly valuable user data.

124.    Upon information and belief, because Apple and Google also require app developers to utilize Apple's and Google's respective payment systems for in-app purchases, Apple and Google receive this additional revenue and highly valuable purchase data. Upon information and belief, it was only recently that a federal court ruled that Apple cannot force its app developers to utilize its proprietary in-app payment system.

125.    In 2020, Garena reported earning more than $2 billion in revenue from the exploitation of digital games, the vast majority of which came from Free Fire, which is distributed through the Apple App Store and Google Play store.[20] During the same

---

[20] https://cdn.sea.com/webmain/static/resource/seagroup/pressrelease/2021-04-17%20Sea%20Limited%20Files%20Annual%20Report%20on%20Form%2020-F/2021-04-16%20-%20Form%2020-F.pdf.

period, Apple earned approximately $50 billion from the App Store and Google earned approximately $38.6 billion from the Google Play store.[21] Further, upon information and belief, approximately 80% of Apple's revenue from apps is derived from games like Free Fire. Upon information and belief, Apple and Google have received (and will continue to receive, as long as Free Fire and Free Fire Max are available to download and play) substantial revenue in connection with the game.

### YouTube Is Hosting Infringing Gameplay Videos of Free Fire and Free Fire Max

126.   On or about December 21, 2021, Krafton served YouTube with a notice that seven videos posted on the official YouTube account of "Free Fire Garena, NA," which is believed to be maintained by or on behalf of Garena (available at https://www.youtube.com/c/FreeFireNorthAmerica/about), that featured Free Fire and/or Free Fire Max gameplay that infringed Krafton's copyrights in Battlegrounds. Krafton demanded that YouTube take down the posts and take appropriate actions against its responsive users no later than January 5, 2022.

127.   These videos feature extensive game play of Free Fire and/or Free Fire Max, including portions of those games that are protected elements of Battlegrounds, both individually and in their combination.

128.   To date, YouTube has not removed the infringing posts.

### YouTube Is Hosting Videos of *Biubiubiu*—a Film that Blatantly Infringes Battlegrounds

129.   On or about August 10, 2021, Krafton served YouTube with a notice that a film, *Biubiubiu*, by Huawen Image (Beijing) Film Co., Ltd. ("Huawen"), which was posted by its distributor, Youku Movie, infringed Krafton's copyrights in

---

[21] *See, e.g.*, https://www.statista.com/statistics/444476/google-play-annual-revenue/; https://www.cnbc.com/2021/01/08/apples-app-store-had-gross-sales-around-64-billion-in-2020.html.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

Battlegrounds. As set forth in that demand, and detailed below, *Biubiubiu* is an unauthorized adaptation of Battlegrounds, depicting a live-action dramatized version of Battlegrounds gameplay—from the initial pre-game lobby to the player's arrival on Battlegrounds' fictional island, to the player's foraging for supplies and efforts to survive on the island. Krafton informed YouTube that in depicting these gameplay moments, *Biubiubiu* appropriated numerous unique, creative audio and visual elements, including numerous individual works of creative expression, that, individually or in combination with others, constitute copyrightable audiovisual work. Krafton provided YouTube with a detailed exhibit that identified some nonexhaustive examples of Krafton's works of creative expression that have been appropriated by *Biubiubiu*, which are set forth below. Krafton requested that YouTube immediately remove or disable all videos that contain portions or the entirety of *Biubiubiu* from its platforms, including the video located at the URL address identified in its notice. Krafton also demanded that YouTube take appropriate action against the uploader pursuant to its Terms of Service, including by terminating the uploader's account. Krafton further requested that YouTube utilize its ContentID or other digital fingerprinting software (or take any and all other reasonable steps) to ensure that *Biubiubiu* is not uploaded again to YouTube by Huawen, its agents, or any other party. Krafton also submitted a notice through YouTube's online form.

130.   As detailed below, and in Krafton's notice to YouTube, *Biubiubiu* infringes numerous unique, creative audio and visual elements, including numerous individual works of creative expression, that, individually or in combination with others, constitute copyrightable audiovisual work.

131.   For example, in *Biubiubiu*, depictions of the protagonist parachuting to a location are nearly identical to those featured in Battlegrounds. Further, *Biubiubiu* includes a copy of Battlegrounds' striped parachute backpack, as seen below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| BATTLEGROUNDS AIRDROP AND PARACHUTE | BIUBIUBIU AIRDROP AND PARACHUTE |
|---|---|

 

 

 

 

132.   Structures and locations from Battlegrounds are reproduced in *Biubiubiu*, such as specific building designs and color schemes, interior environments, and distinctive locations such as the port featuring shipping crates and an adjacent power plant cooling tower.

| BATTLEGROUNDS STRUCTURES AND LOCATIONS | BIUBIUBIU STRUCTURES AND LOCATIONS |
|---|---|
|  |  |
|  |  |
|  |  |

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1
2
3
4
5
6





7
8
9
10
11
12

13      133.   Items, weapons, and equipment from Battlegrounds have been reproduced
14  in identical fashion in *Biubiubiu*. This includes, without limitation, (1) health packs and
15  syringes, which increase a player's health; (2) Battlegrounds' iconic helmet and visor;
16  (3) thrown items such as grenades and flash bangs; (4) weapons such as Battlegrounds'
17  distinctive frying pan; and (5) backpacks. In addition, the supply-drop crates in
18  *Biubiubiu* appear identical to those in Battlegrounds, including the distinctive red smoke
19  used to indicate their location.

20
21
22
23
24
25
26
27
28

COMPLAINT FOR COPYRIGHT INFRINGEMENT

| BATTLEGROUNDS ITEMS AND EQUIPMENT | BIUBIUBIU ITEMS AND EQUIPMENT |
|---|---|
|  |  |
|  |  |

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10




11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27




28

COMPLAINT FOR COPYRIGHT INFRINGEMENT











134. *Biubiubiu* also features interface elements appropriated directly from Battlegrounds, such as mini-maps, player data, and grenade arc indicators.

| BATTLEGROUNDS GAME USER INTERFACE | BIUBIUBIU GAME USER INTERFACE |
|---|---|







135. *Biubiubiu* also features distinctive characters copied directly from Battlegrounds, including those illustrated below.

| BATTLEGROUNDS CHARACTERS | BIUBIUBIU CHARACTERS |
|---|---|









**YouTube Fails to Expeditiously Remove *Biubiubiu* Despite Multiple Warnings**

136.   On or about August 16, 2021, after receiving no response from YouTube regarding its notice to take down the infringing posts containing the *BiuBiuBiu* film, Krafton sent an additional notice under the DMCA.

137.   On August 17, 2021, Krafton, through its authorized agent, received an automated response from YouTube in which YouTube noted that it is "concerned that some of the information in [Krafton's] takedown request may be fraudulent." YouTube requested that, "[f]or each video in question, please explain how [Krafton] is authorized to make this claim…."

138.   On the same day, Krafton responded via email, including both its original letter and the above-referenced automated email, and stated that the notice was not fraudulent and again requested that YouTube remove the identified infringing content. Krafton also stated that YouTube had been placed on notice of the infringement, and therefore had actual knowledge of the infringement. Krafton requested confirmation that the identified material had been removed or disabled.

139.   On August 19, 2021, YouTube followed up with another form email, this time requesting certain pieces of information that Krafton had already included in its prior notices and emails to YouTube. On the same day, Krafton responded and stated that all of the requested information had previously been provided—twice—and was being provided once again. Krafton also stated that its position is that YouTube had not acted expeditiously to remove infringing content after having received a notice.

140.   On August 23, 2021, after no response, and nearly two weeks after its first notice, Krafton sent a fourth notice, reiterating its prior demands that YouTube remove the infringing content and restating all of the information YouTube either required or requested for purposes of processing a notice under the DMCA. Krafton again stated that it did not believe that YouTube had responded expeditiously and thus had forfeited any safe-harbor protection it might have had under the DMCA.

141.   On August 27, 2021, YouTube responded to Krafton's August 19, 2021 email, and stated that "copyright does not subsist in the content that is the subject of [Krafton's] complaint" and for "[that] reason we are unable to process your request."

142.   To date, the links identified in Krafton's notices remains on YouTube, as do countless other posts featuring the same infringing content.

143.   Prior to sending multiple notices regarding *Biubiubiu*, Krafton served YouTube with a notice for a different film that infringed its copyrights in Battlegrounds—*Run Amuck* by Hippo Universal Films. Inconsistent with its response to the *Biubiubiu* requests, YouTube responded to that notice that it had taken down the infringing content. As alleged in more detail below, unlike with respect to *Biubiubiu*, the *Run Amuck* videos were posted by individual users who no doubt lack the deep pockets necessary to fully indemnify YouTube from liability for copyright infringement.

**Krafton Serves Garena, Apple, and Google with Cease-and-Desist Notices**

144.   On or about December 21, 2021, Krafton sent Garena a cease-and-desist notice, demanding that it immediately revoke its apparent authorization to Apple and

Google to distribute Free Fire and Free Fire Max through their respective app stores, no later than January 5, 2022. To date, Garena has refused to comply.

145.   On or about December 21, 2021, Krafton served Apple with a notice that informed Apple that Free Fire and Free Fire Max infringed Krafton's copyrights in Battlegrounds and thus its facilitation of Free Fire's reproduction and distribution via the Apple App Store was in violation of Krafton's exclusive rights in Battlegrounds and, accordingly, constituted actionable copyright infringement. Krafton also informed Apple that its continued facilitation of the distribution and reproduction, among other actions, via the Apple App Store of Free Fire and Free Fire Max made it liable not only for direct infringement but secondary infringement. Krafton requested that Apple immediately remove Free Fire and Free Fire Max from the Apple App Store no later than January 5, 2022. To date, Apple has refused to comply.

146.   On or about December 21, 2021, Krafton served Google with a notice that informed Google that Free Fire and Free Fire Max infringed Krafton's copyrights in Battlegrounds and thus its facilitation of Free Fire's reproduction and distribution via the Google Play store was in violation of Krafton's exclusive rights in Battlegrounds and, accordingly, constituted actionable copyright infringement. Krafton also informed Google that its continued facilitation of the distribution and reproduction, among other actions, via the Google Play store of Free Fire and Free Fire Max made it liable not only for direct infringement but secondary infringement. Krafton requested that Google immediately remove Free Fire and Free Fire Max from the Google Play store no later than January 5, 2022. To date, Google has refused to comply.

147.   Since receiving Krafton's infringement notices, Apple and Google have continued to distribute Free Fire and Free Fire Max, have received revenue in connection with Free Fire, and have paid substantial revenue to Garena.

**Apple and Google Only Address Infringement When Not Indemnified by**

**Deep-Pocketed Co-Infringers**

148.   Apple's and Google's responses to Krafton's complaints are consistent with their responses to similar complaints regarding other infringing apps. As alleged in *Ubisoft Entertainment et al. v. Ejoy.Com Ltd. et al.*, Case No. 20-cv-4419 (C.D. Cal.), ECF 1, ¶ 5, Apple and Google refused to comply with a video game developer's demand that they remove an infringing game from their respective stores. Upon information and belief, it was only after the developer filed suit against the infringing developer *and* Apple and Google that the infringing developer removed the app itself. Significantly, neither Apple nor Google ever took any action on its own.[22]

149.   In addition, Krafton previously sued another manufacturer of an infringing game that was made available through the Apple App Store and Google Play store. *PUBG Corp. et al. v. NetEase, Inc. et al.*, Case No. 4:18-cv-02010-JSW (N.D. Cal.), ECF 32, ¶¶ 115-117. Krafton had requested that Apple and Google remove the infringing game, and both refused.

150.   Apple's and Google's actions make clear that they elect to protect copyrights only where they are not otherwise indemnified by co-infringers with deep pockets. Such selective enforcement runs counter to the Copyright Act and constitutes willful infringement.

151.   Moreover, to the extent that the DMCA safe-harbor provisions even apply to Apple's and Google's respective app stores, Apple's and Google's strategic infringement deprives them of any such protections. Indeed, the fact that Apple and/or Google might remove infringing content posted by individual users and, in some instances, even terminate those individual users, this strategic, profit-driven

---

[22] https://www.pcgamer.com/rainbow-six-siege-mobile-clone-shut-down-following-ubisoft-lawsuit/.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

infringement—both direct and secondary—is in direct contravention of the Copyright Act and the DMCA.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### Direct Copyright Infringement

(Against Defendants Apple and Google)

152. Krafton repeats and re-alleges each and every allegation contained in paragraphs 1 through 151 as if fully set forth herein.

153. Krafton is the owner of valid and registered copyrights in Battlegrounds.

154. Defendants Apple and Google have infringed, and are continuing to infringe, Krafton's copyrights in Battlegrounds by reproducing, adapting, distributing, publicly performing, and publicly displaying, and knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display, Free Fire and/or Free Fire Max without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

155. Krafton has never authorized or given consent to Defendants Apple and Google to use its copyrighted work in the manner complained of herein.

156. Defendants Apple's and Google's acts of infringement are willful, in disregard of, and with indifference to Krafton's rights.

157. As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to Defendants Apple's and Google's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b). Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

158. Krafton is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

159.   As a result of Defendants Apple's and Google's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, Defendants Apple and Google will continue to infringe Krafton's rights in Battlegrounds. Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

**SECOND CLAIM FOR RELIEF**

**Contributory Copyright Infringement**

(Against Apple and Google)

160.   Krafton repeats and realleges each and every allegation contained in paragraphs 1 through 159 as if fully set forth herein.

161.   Krafton is the owner of valid and registered copyrights in Battlegrounds.

162.   Defendants, and their respective customers and users, have infringed, and are continuing to infringe, Krafton's copyrights in Battlegrounds by reproducing, adapting, distributing, publicly performing, and publicly displaying, and knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display, Free Fire and Free Fire Max without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

163.   Specifically, Garena, through the Apple App Store and Google Play store, has distributed the infringing Free Fire and/or Free Fire Max apps in the United States. Free Fire and/or Free Fire Max are not available through any other means in the United States.

164.   Krafton has never authorized or given consent to Apple or Google, or any of their customers or users, to use its copyrighted work in the manner complained of herein.

165.   The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq.*

94

166.   On or about December 21, 2021, Krafton informed Defendants that Free Fire and Free Fire Max infringed Krafton's copyrights in Battlegrounds. Krafton requested that Apple and Google remove Free Fire and Free Fire Max from their respective stores no later than by January 5, 2022.

167.   Despite their actual and constructive knowledge that Free Fire and Free Fire Max infringe Krafton's copyrights in Battlegrounds, to date, neither Apple nor Google has removed Free Fire or Free Fire Max from their respective stores or otherwise taken any action to prevent their customers from continuing to download the infringing apps from their respective stores.

168.   Instead, Apple and Google have continued to feature and otherwise promote Free Fire and Free Fire Max on their respective stores and, separately, to provide the means for Garena to engage with users who download Free Fire and Free Fire Max through the Apple App Store and the Google Play store.

169.   Apple and Google are liable as contributory copyright infringers for the direct infringements described above. Defendants have actual and constructive knowledge of their customers' and users' acts of direct infringement. And by failing to take any action to prevent further infringement, Apple and Google have knowingly caused, materially contributed to, and/or induced the unlawful reproduction, distribution, and/or performance of Krafton's copyrighted works.

170.   Based on the foregoing, Apple and Google are ineligible for the safe harbor under the Digital Millennium Copyright Act, to the extent such safe harbor is even applicable to them.

171.   Apple's and Google's infringement has been willful, intentional, and purposeful.

172.   Indeed, based on their actions, it is clear that Apple and Google only elect to enforce their purported copyright policies when they are not indemnified by co-infringers with deep pockets, like Garena.

173.   As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to Apple's and Google's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b). Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

174.   Krafton is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

175.   As a result of Apple's and Google's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, Apple and Google will continue to infringe Krafton's rights in Battlegrounds. Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Apple's and Google's continuing infringing conduct.

## THIRD CLAIM FOR RELIEF

### Vicarious Copyright Infringement

(Against Apple and Google)

176.   Krafton repeats and realleges each and every allegation contained in paragraphs 1 through 175 as if fully set forth herein.

177.   Krafton is the owner of valid and registered copyrights in Battlegrounds.

178.   Defendants, and their respective customers and users, have infringed, and are continuing to infringe, Krafton's copyrights in Battlegrounds by reproducing, adapting, distributing, publicly performing, and publicly displaying, and knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display, Free Fire and Free Fire Max without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

179.   Specifically, Garena, using the Apple App Store and Google Play store, has distributed the infringing Free Fire app in the United States. Free Fire is not

available through any other means in the United States. Since on or about September 28, 2021, Garena, using the Apple App Store and Google Play store, has distributed the infringing Free Fire Max app in the United States. Free Fire Max is not available through any other means in the United States.

180.   Krafton has never authorized or given consent to Apple or Google, or any of their customers or users, to use its copyrighted work in the manner complained of herein.

181.   The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq.*

182.   Defendants are liable as vicarious copyright infringers for the direct infringements described above.

183.   Defendants have the legal and practical right and ability to supervise and control the infringing activities that occur through the use of their respective platforms and, at all relevant times, have had a financial interest in, and derived a financial benefit from, the infringing use of their respective platforms.

184.   Upon information and belief, Apple and Google each maintain the right to remove apps from their respective platforms, for any reason, including but not limited to claims that the apps are infringing.

185.   Apple and Google each derive a direct financial benefit from their customers' and users' infringement of Battlegrounds through their distribution, reproduction, and/or performance of Free Fire and Free Fire Max. Among other financial benefits, by failing to remove Free Fire and Free Fire Max from their respective app stores, and by maintaining a relationship with Garena, Apple and Google continue to receive substantial amounts of revenue through in-app purchases and subscription fees paid by Free Fire and Free Fire Max users who download the app from either the Apple App Store or the Google Play store. Further, because Apple and Google require in-app purchases to be made through their respective payment systems, Apple and Google retain additional revenue and highly valuable user and purchaser data. The

ability to download the highly popular infringing Free Fire and Free Fire Max has served as a draw for Apple's and Google's existing customers and for new customers. Further, given the popularity of Free Fire and/or Free Fire Max, there can be question that the ability to download Free Fire and/or Free Fire Max serves as draw to users of Apple's and Google's respective platforms.

186.    Based on the foregoing, Apple and Google are ineligible for the safe harbor under the Digital Millennium Copyright Act, to the extent such safe harbor is even applicable to them.

187.    Apple's and Google's infringement has been willful, intentional, and purposeful.

188.    Indeed, based on their actions, it is clear that Apple and Google only elect to enforce their purported copyright policies when they are not indemnified by co-infringers with deep pockets, like Garena.

189.    As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to Apple's and Google's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b). Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

190.    Krafton is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

191.    As a result of Apple's and Google's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, Defendants will continue to infringe Krafton's rights in Battlegrounds. Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants continuing infringing conduct.

# FOURTH CLAIM FOR RELIEF

## Direct Copyright Infringement

(Against Garena)

192.   Krafton repeats and realleges each and every allegation contained in paragraphs 1 through 191 as if fully set forth herein.

193.   Krafton is the owner of valid and registered copyrights in Battlegrounds.

194.   For the period from April 13, 2019 to present, Garena has infringed, and is continuing to infringe, Krafton's copyrights in Battlegrounds by reproducing, adapting, distributing, publicly performing, and publicly displaying, and knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display Free Fire and Free Fire Max without authorization.

195.   The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq.*

196.   Krafton has never authorized or given consent to Garena to use its copyrighted work in the manner complained of herein.

197.   Garena's infringement has been willful, intentional, and purposeful.

198.   As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to Garena's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b). Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

199.   Krafton is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

200.   As a result of Garena's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, Garena will continue to infringe Krafton's rights in Battlegrounds.

Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Garena's continuing infringing conduct.

### FIFTH CLAIM FOR RELIEF

### Contributory Copyright Infringement

(Against Garena)

201.   Krafton repeats and realleges each and every allegation contained in paragraphs 1 through 200 as if fully set forth herein.

202.   Krafton is the owner of valid and registered copyrights in Battlegrounds.

203.   For the period from April 13, 2019 to present, Garena has infringed, and is continuing to infringe, Krafton's copyrights in Battlegrounds by reproducing, adapting, distributing, publicly performing, and publicly displaying, and knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display Free Fire and Free Fire Max without authorization.

204.   Krafton's copyrights in Battlegrounds have been, and are being, infringed through the distribution of Free Fire and Free Fire Max on the Apple App Store and Google Play store in the United States.

205.   The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq.*

206.   Upon information and belief, Garena has provided the apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max through their respective app stores in the United States.

207.   Krafton has never authorized or given consent to Garena to use its copyrighted work in the manner complained of herein.

208.   On or about December 21, 2021, Krafton informed Garena that Free Fire and Free Fire Max infringed Krafton's copyrights in Battlegrounds. Krafton requested that Garena revoke its apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max Free Fire Max no later than January 5, 2022.

209.   Despite its actual and constructive knowledge that Free Fire and Free Fire

COMPLAINT FOR COPYRIGHT INFRINGEMENT

Max infringes Krafton's copyrights in Battlegrounds, Garena did not revoke its apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max.

210. Instead, Apple and Google have continued to feature and otherwise promote Free Fire and Free Fire Max on their respective app stores.

211. Garena is liable as contributory copyright infringer for the direct infringements described above. Garena has actual and constructive knowledge of their customers' and users' acts of direct infringement. And by failing to take any action to prevent further infringement, Apple and Google have knowingly caused, materially contributed to, and/or induced the unlawful reproduction and distribution of Krafton's copyrighted works.

212. Garena's infringement has been willful, intentional, and purposeful.

213. As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to Garena's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b). Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

214. Krafton is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

215. As a result of Garena's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, Garena will continue to infringe Krafton's rights in Battlegrounds. Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Garena's continuing infringing conduct.

# SIXTH CLAIM FOR RELIEF

## Vicarious Copyright Infringement

### (Against Garena)

216.   Krafton repeats and realleges each and every allegation contained in paragraphs 1 through 215 as if fully set forth herein.

217.   Krafton is the owner of valid and registered copyrights in Battlegrounds.

218.   For the period from April 13, 2019 to present, Garena has infringed, and is continuing to infringe, Krafton's copyrights in Battlegrounds by reproducing, adapting, distributing, publicly performing, and publicly displaying, and knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display Free Fire and Free Fire Max without authorization.

219.   Krafton's copyrights in Battlegrounds have been, and are being, infringed through the distribution of Free Fire and Free Fire Max on the Apple App Store and the Google Play store in the United States.

220.   The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501, *et seq.*

221.   Upon information and belief, Garena has provided the apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max through their respective app stores in the United States.

222.   Krafton has never authorized or given consent to Garena to use its copyrighted work in the manner complained of herein.

223.   On or about December 21, 2021, Krafton informed Garena that Free Fire and Free Fire Max infringed Krafton's copyrights in Battlegrounds. Krafton requested that Garena revoke its apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max no later than January 5, 2022.

224.   For the period from April 13, 2019 to present, Garena is liable as a vicarious copyright infringer for the direct infringements described above.

225.   Garena has the legal and practical right and ability to supervise and control the infringing activities that occur through the Apple App Store and the Google Play store and, at all relevant times, has had a financial interest in, and derived a financial benefit from, the infringing use of Free Fire and Free Fire Max through those platforms.

226.   Upon information and belief, Garena maintains the right to revoke its apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max through their respective app stores and, upon information and belief, Apple and Google would not continue to distribute Free Fire and Free Fire Max without such apparent authorization.

227.   Garena also derives a direct financial benefit from the distribution of Free Fire and Free Fire Max by Apple and Google through their respective app stores. Among other financial benefits, by failing to revoke its apparent authorization to Apple and Google to distribute Free Fire and Free Fire Max, Garena continues to receive substantial amounts of revenue through in-app purchases and subscription fees paid by Free Fire and Free Fire Max users who download the app from either the Apple App Store or the Google Play store. Further, the ability to download Free Fire and/or Free Fire Max serves as a substantial draw to users of Apple's and Google's respective platforms.

228.   Garena's infringement has been willful, intentional, and purposeful.

229.   As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to Garena's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b). Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

230.   Krafton is further entitled it its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

231.   As a result of Garena's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no

adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, Garena will continue to infringe Krafton's rights in Battlegrounds. Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Garena's continuing infringing conduct.

**SEVENTH CLAIM FOR RELIEF**

**Contributory Copyright Infringement**

(Against YouTube)

232.   Krafton repeats and realleges each and every allegation contained in paragraphs 1 through 231 as if fully set forth herein.

233.   Krafton is the owner of valid and registered copyrights in Battlegrounds.

234.   YouTube has infringed, and is continuing to infringe, Krafton's copyrights in Battlegrounds by knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display the film *Biubiubiu*, which infringes Krafton's copyrights in Battleground, without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

235.   In addition, YouTube has infringed, and is continuing to infringe, Krafton's copyrights in Battlegrounds by knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display, videos featuring gameplay from Free Fire and Free Fire Max, which infringes Krafton's copyrights in Battlegrounds, without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

236.   Krafton has never authorized or given consent to YouTube to use its copyrighted work in the manner complained of herein.

237.   YouTube's acts of infringement are willful, in disregard of, and with indifference to Krafton's rights.

238.   YouTube failed to expeditiously remove the identified gameplay videos or the posts featuring *Biubiubiu* from its platform after receiving notices from Krafton that these posts infringe Krafton's rights and is unable to avail itself of any of the safe

COMPLAINT FOR COPYRIGHT INFRINGEMENT

harbors of Section 512 of the DMCA, to the extent any of those safe harbors were even available to it.

239. YouTube is liable as a contributory copyright infringer for the direct infringements described above. YouTube has actual and constructive knowledge of their customers' and users' acts of direct infringement. And by failing to take any action to prevent further infringement, YouTube has knowingly caused, materially contributed to, and/or to the unlawful reproduction and distribution of Krafton's copyrighted works.

240. As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to YouTube's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b). Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

241. Krafton is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

242. As a result of YouTube's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, YouTube will continue to infringe Krafton's rights in Battlegrounds. Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin YouTube continuing infringing conduct.

## EIGHTH CLAIM FOR RELIEF

### Vicarious Copyright Infringement

(Against YouTube)

243. Krafton repeats and realleges each and every allegation contained in paragraphs 1 through 242 as if fully set forth herein.

244. YouTube has infringed, and is continuing to infringe, Krafton's copyrights in Battlegrounds by knowingly authorizing others to reproduce, adapt, distribute,

publicly perform, and publicly display the film *Biubiubiu*, without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

245.   In addition, YouTube has infringed, and is continuing to infringe, Krafton's copyrights in Battlegrounds by knowingly authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display, videos featuring gameplay from Free Fire and Free Fire Max without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

246.   Krafton has never authorized or given consent to YouTube to use its copyrighted work in the manner complained of herein.

247.   YouTube's acts of infringement are willful, in disregard of, and with indifference to Krafton's rights.

248.   YouTube failed to expeditiously remove the identified gameplay videos or the posts featuring *Biubiubiu* from its platform after receiving multiple notices from Krafton that these posts infringe Krafton's rights is unable to avail itself of any of the safe harbors of Section 512 of the DMCA, to the extent any of those safe harbors were even available to it.

249.   YouTube has the legal and practical right and ability to supervise and control the infringing activities that occur through its platform and, at all relevant times, has had a financial interest in, and derived a financial benefit from, the infringing use of Free Fire and Free Fire Max through those platforms.

250.   Upon information and belief, YouTube maintains the right to remove infringing content from its platform.

251.   Upon information and belief, YouTube derives a direct financial benefit from hosting the infringing posts on its platform, through advertising and other sources of revenue.

252.   As a direct and proximate result of the infringements alleged herein, Krafton is entitled to its actual damages and to YouTube's profits in amounts to be proven at trial, which are not currently ascertainable, under 17 U.S.C. § 504(b).

Alternatively, Krafton is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

253.   Krafton is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

254.   As a result of YouTube's acts and conduct, Krafton has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Upon information and belief, unless enjoined and restrained by this Court, YouTube will continue to infringe Krafton's rights in Battlegrounds. Krafton is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin YouTube continuing infringing conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court enter judgment in their favor on each and every claim for relief set forth above and award Plaintiffs relief, including, but not limited to, an Order:

1.   Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, licensees, internet service providers, and all persons acting in concert or participation with them from infringing Krafton's copyrighted works, including by copying, selling (including any and all in-app purchases), marketing, distributing, or publicly performing Free Fire and Free Fire Max or any substantially similar product, and specifically with respect to YouTube, posts featuring infringing gameplay of Free Fire or Free Fire Max and the infringing film *Biubiubiu* or any substantially similar product.

2.   Requiring Defendants to deliver to Krafton all copies of materials that infringe or violate any of Krafton's rights described herein.

3.   Requiring Defendants to provide Krafton with an accounting of any and all sales of products or services that infringe or violate any of Krafton's rights described herein.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

4. Awarding Krafton monetary relief, including damages sustained by Krafton in an amount not yet determined, including actual damages and/or Defendants' profits, or statutory damages for copyright infringement and willful copyright infringement under 17 U.S.C. § 504, as appropriate.

5. Awarding Krafton its costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505.

6. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 10, 2022          Respectfully submitted,

**WINSTON AND STRAWN LLP**

By:     */s/ David P. Enzminger*
David P. Enzminger (SBN: 137065)
denzminger@winston.com
Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone:  213-615-1700
Facsimile:   213-615-1750

*Attorneys for Plaintiffs*
*KRAFTON, INC. and PUBG SANTA*
*MONICA, INC.*