1
2
3
4
5

DURIE TANGRI LLP
MARK A. LEMLEY (CA SBN 155830)
mlemley@durietangri.com
HANNAH JIAM (CA SBN 312598)
hjiam@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  415-362-6666
Facsimile:   415-236-6300

6
7
8
9

DURIE TANGRI LLP
ALLYSON R. BENNETT (CA SBN 302090)
abennett@durietangri.com
953 East 3rd Street
Los Angeles, CA 90013
Telephone:  213-992-4499
Facsimile:   415-236-6300

10
11
12

Attorneys for Defendants
SEA LIMITED, GARENA INTERNATION I PRIVATE
LIMITED, GARENA ONLINE PRIVATE LIMITED,
and APPLE INC.

13

*(Additional counsel continued following page)*

14
15
16
17

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

18
19
20
21
22
23
24
25
26

KRAFTON, INC. and PUBG SANTA
MONICA, INC.,

                Plaintiffs,

     v.

APPLE INC., GOOGLE, LLC,
YOUTUBE LLC, SEA LIMITED, MOCO
STUDIOS PRIVATE LIMITED (F/K/A
GARENA INTERNATIONAL I
PRIVATE LIMITED), AND GARENA
ONLINE PRIVATE LIMITED,

                Defendants.

Case No. 2:22-cv-00209-GW-MRW

**DEFENDANTS' NOTICE OF MOTION
AND MOTION TO COMPEL
ARBITRATION AND TO STAY
LITIGATION; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Date:  June 2, 2022
Time:  8:30 a.m.
Ctrm:  9D
Judge: Honorable George H. Wu

27
28

**REDACTED VERSION OF DOCUMENT PROPOSED
TO BE FILED UNDER SEAL**

MAYER BROWN LLP
A. JOHN P. MANCINI (NY SBN 4106159)
jmancini@mayerbrown.com
PAUL M. FAKLER (NY SBN 2940435)
pfakler@mayerbrown.com
SARA A. SLAVIN (NY SBN 5245196)
sslavin@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-506-2600

Attorneys for Defendants GOOGLE LLC AND
ITS WHOLLY-OWNED SUBSIDIARY, YOUTUBE, LLC

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on Thursday June 2, 2022, at 8:30 a.m., in Courtroom 9D of the United States District Court for the Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, Defendants Sea Ltd. ("Sea"), Moco Studios Private Ltd. (f/k/a Garena International I Private Ltd.) ("Moco Studios"), Garena Online Private Ltd. ("Garena Online," and, together with Sea and Moco Studios, "Garena"), Apple Inc. ("Apple"), Google LLC ("Google"), and Google's wholly-owned subsidiary, YouTube, LLC ("YouTube") (collectively, "Defendants") will and hereby do move for an Order as follows:

- An Order to compel Plaintiff Krafton, Inc. ("Krafton") to arbitrate whether the Settlement Agreement ██████████████ in the existing Singapore International Arbitration Centre ("SIAC") arbitration that Garena has brought against Krafton, Inc.;

- An Order to stay litigation pending the final resolution of that arbitration with respect to all claims (*i.e.*, claims brought by both Krafton, Inc. and PUBG Santa Monica ("PUBG-SM")) against all Defendants.

This motion is based on the concurrently filed memorandum of points and authorities, declaration of Allyson R. Bennett and its attached exhibit, declaration of Suk Jin Bae and its attached exhibits, the files and records in this case, and such argument as the Court may hear upon this motion.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 21, 2022.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

1  Dated:  March 28, 2022                    DURIE TANGRI LLP

2

3                                            By:_____ /s/ Allyson R. Bennett___
                                                      ALLYSON R. BENNETT
4

5                                            Attorneys for Defendants
                                             SEA LIMITED, GARENA INTERNATIONAL
6                                            I PRIVATE LIMITED, GARENA ONLINE
                                             PRIVATE LIMITED, and APPLE INC.
7

8                                            MAYER BROWN LLP

9

10                                           By:_____ /s/ A. John P. Mancini___
                                                      A. JOHN P. MANCINI
11

12                                           Attorneys for Defendants
                                             GOOGLE LLC and ITS WHOLLY-OWNED
13                                           SUBSIDIARY, YOUTUBE, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................1

II. BACKGROUND ...............................................................................2

    A. Garena's *Free Fire*...............................................................2

    B. Krafton's 2018 Copyright Claim and DMCA Notice ...................................3

    C. The Settlement Agreement.........................................................4

    D. The 2019 Arbitration ............................................................5

    E. Plaintiffs' Attempt to Revive the Copyright Claims Against *Free Fire*.........7

III. ARGUMENT....................................................................................9

    A. The Federal Arbitration Act Requires Agreements to Arbitrate Be Enforced ...................................................................10

    B. Under the FAA, this Court Must Compel Arbitration of Krafton's Claims against Garena ...............................................................10

        1. The Settlement Agreement Contains an Arbitration Clause and is Governed by the Convention......................................12

        2. The Settlement Agreement is Not Null and Void, Inoperative, or Incapable of Being Performed..........................................14

        3. The Parties Expressly Delegated the Question of Arbitrability to the Arbitrators................................................15

        4. In Any Event, the Settlement Agreement Unambiguously Requires Arbitration Here .................................................17

            a. The Arbitration Clause Requires Krafton to Arbitrate Whether the Settlement Agreement Applies............................18

            b. Krafton's Assertion That the Settlement Was Limited to Claims Under Singapore Law Is Irrelevant and Incorrect........19

|  |  | c. | Any Ambiguity Should Be Resolved in Favor of Arbitration .................................................................22 |

C. The Court Should Stay the Proceedings in their Entirety..............................22

    1. Plaintiff's Claims Concerning *Free Fire* Should Be Stayed ..............23

        a. Resolution of the Pending Singapore Arbitration Would Simplify the Issues Before the Court and Avoid Potential Inconsistent Outcomes ............................................................23

        b. Both Garena and the Non-Signatory Defendants Would Suffer Prejudice ......................................................................25

        c. Plaintiffs Suffer No Harm in the Event of a Stay ...................26

    2. Plaintiffs' Claims Concerning *Biubiubiu* Should Also Be Stayed .....27

        a. A Stay Will Promote Judicial Economy ..................................28

        b. A Stay Will Minimize Hardship to All Parties ........................29

IV. CONCLUSION .....................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
    622 F. Supp. 2d 825 (N.D. Cal. 2007)........................................................................29

*AT&T Mobility LLC v. Concepcion*,
    565 U.S. 333 (2011)..................................................................................................10

*Balen v. Holland Am. Line Inc.*,
    583 F.3d 647 (9th Cir. 2009).............................................................................11, 12

*Bischoff v. DirecTV, Inc.*,
    180 F. Supp. 2d 1097 (C.D. Cal. 2002) ...........................................................23, 25

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015)...................................................................................16

*CCP Sys. AG v. Samsung Elecs. Corp.*,
    No. .09-CV-4354 (DMC) (CCC), 2010 WL 2546074 (D.N.J. June 21, 2010)............17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000)...................................................................................14

*Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*,
    109 F. Supp. 2d 1236 (S.D. Cal. 2020) ...................................................................11

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962)..............................................................................22, 28

*Concat LP v. Unilever, PLC*,
    350 F. Supp. 2d 796 (N.D. Cal. 2004)......................................................................17

*ESCO Corp. v. Bradken Res. Pty. Ltd.*,
    No. 10-788-AC, 2011 WL 1625815 (D. Ore. Jan. 31, 2011)......................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)................................................................................................19

*Khraibut v. Chahal*,
    No. C15-04463 CRB, 2016 WL 1070662 (N.D. Cal. Mar. 18, 2016).........................16

*Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*,
No. 2:19-cv-00527-JVS-ADS, 2019 WL 1449502 (C.D. Cal. Mar. 26, 2019) ......27, 29

*Kroll v. Doctor's Assocs., Inc.*,
3 F.3d 1167 (7th Cir. 1993).........................................................................25

*KWB and Assocs., Inc. v. Marvin*,
Case No. 18-289-DMG, 2018 WL 5094927 (C.D. Cal. Apr. 18, 2018)....................10

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
440 Fed. Appx. 604 (10th Cir. 2011) ........................................................10

*Lee v. Tesla, Inc.*,
No. SACV20-00570JVS(KESx), 2020 WL 10573281
(C.D. Cal. Oct. 1, 2020) .....................................................................23, 28

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir.1979).....................................................................28

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
473 U.S. 614 (1985).................................................................................21

*Moses N.H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................................................................................21

*Mujica v. AirScan Inc.*,
771 F.3d 580 (9th Cir. 2014)...................................................................24

*Oracle Am., Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013)..................................................................16

*Oriental Com. and Shipping Co., Ltd. v. Rosseel, N.V.*,
609 F. Supp. 75 (S.D.N.Y.1985) ..............................................................14

*Pac. States Indus. Inc. v. Am. Zurich Ins. Co.*,
No. 18-CV-04064-LHK, 2018 WL 6106383 (N.D. Cal. Nov. 21, 2018)....................28

*Parker v. New Prime, Inc.*,
No. LA CV 20-03298-DOC-AGR, 2020 WL 6143596 (C.D. Cal. June 9, 2020) ........25

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
862 F.3d 981 (9th Cir. 2017)................................................................11, 16

*RB Prods., Inc. v. Ryze Capital, LLC*,
No. 3:19-cv-00105-MMD-WGC, 2019 WL 5722205 (D. Nev. Nov. 4, 2019) 26, 27, 29

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...................................................................................15

*Republic of Nicar. v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991)...................................................................22

*Rhodia Inc. v. Bayer Cropscience Inc.*,
    No. 04-6424 (GEB) (MF), 2007 WL 3349453 (D.N.J. Nov. 7, 2007) ........18

*Rogers v. Royal Caribbean Cruise Line*,
    547 F.3d 1148 (9th Cir. 2008)...................................................................13

*ROI Properties Inc. v. Burford Cap. Ltd.*,
    No. CV-18-03300-PHX-DJH, 2019 WL 1359254 (D. Ariz. Jan. 14, 2019)..........15, 16

*Ruderman v. Rolls Royce Motor Cars, LLC*,
    511 F. Supp. 3d 1055 (C.D. Cal. 2021) ....................................................10

*Setty v. Shrinivas Sugandhalaya LLP*,
    3 F.4th 1166 (9th Cir. 2021)......................................................................16

*Shearson/Am. Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987)..................................................................................10

*SteppeChange LLC v. VEON Ltd.*,
    354 F. Supp. 3d 1033 (N.D. Cal. 2018).....................................................23

*Tradeline Enterprises Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*,
    No. LA CV15-08048 JAK (RAOx), 2018 WL 10152573 (C.D. Cal. July 10, 2018),
    aff'd, 772 F. App'x 585 (9th Cir. 2019) ....................................................13

*Unicolors, Inc. v. NB Brother Corp.*,
    No. CV 16-02268-MWF, 2017 WL 4402287 (C.D. Cal. Oct. 3, 2017) ......................24

*United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*,
    No. 19 Civ. 4355 (VM) (GWG), 2021 WL 1539225, (S.D.N.Y. Apr. 19, 2021),
    *report and recommendation adopted*, No. 19 Civ. 4355 (VM), 2021 WL 3270024
    (S.D.N.Y. July 30, 2021) ..........................................................................18

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)............................................................................17, 22

*Wells Fargo Clearing Servs., LLC v. Foster*,
    No. 3:18-cv-00032-MMD-VPC, 2018 WL 1746307 (D. Nev. April 11,2018) ...........24

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

*In re Wynn Resorts Derivative Litig. (Wynn)*,
No. 2:18-cv-293-KJD-CWH, 2019 WL 1429526 (D. Nev. Mar. 29, 2019)................23

**Statutes**

9 U.S.C. § 4 ................................................................................................13

9 U.S.C. § 201 ............................................................................................10

9 U.S.C. § 202 ............................................................................................10

9 U.S.C. § 206 ............................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12........................................................................................22

LCIA Arbitration Rules (2014), LCIA Arbitration and ADR worldwide,
https://www.lcia.org/Dispute_Resolution_Services/lcia-arbitration-rules-2014.aspx
(last visited Mar. 28, 2022) ........................................................................15

SIAC Rules 2016, SIAC - Singapore International Arbitration Centre,
https://www.siac.org.sg/our-rules/rules/siac-rules-2016
(last visited Mar. 28, 2022) ........................................................................15

## I.      INTRODUCTION

Krafton[1] believes that its copyright in one video game extends to the entire battle royale genre of games.  Krafton is wrong, but that question is not for this Court.  Krafton already agreed—in settling a 2018 lawsuit against Garena in Singapore involving Garena's game *Free Fire*—██████████████████.  It also agreed that any disputes with Garena "of any kind whatsoever" arising in connection with the Settlement Agreement would be decided by binding arbitration in Singapore, not U.S. federal court or any other court.  Garena and Krafton entered into a ████████████ resolution of their disputes that ████████████████████.  But Krafton has repeatedly tried to renege on the deal—and the arbitration clause.

The first time Krafton attempted to avoid the Settlement Agreement came shortly after it was signed:  Krafton refused to discontinue the 2018 Singapore Litigation, denying the validity of the Settlement Agreement and its arbitration clause.  Upon reviewing the same arbitration clause, however, the Singapore High Court and then the Singapore Court of Appeal (the highest court in Singapore) concluded that the validity of the Settlement Agreement should be resolved in arbitration and stayed the 2018 Singapore Litigation.

---

[1] In December 2020, Krafton, Inc. merged with PUBG Corp., with Krafton, Inc. as the surviving entity.  *See* Krafton, Inc., *PUBG Corporation Merges with Krafton, Inc.*, PUBG Studios https://press.pubg.com/PUBG-CORPORATION-MERGES-WITH-KRAFTON-INC (last visited Mar. 27, 2022).  For the purposes of this motion, Krafton, Inc. and its predecessor-in-interest, PUBG Corp., are collectively referred to as "Krafton." The Settlement Agreement is applicable to both Krafton and PUBG Corp., as it pertains not only to the signatory (PUBG Corp.) but the signatories' "respective successors and assigns" (Krafton).  Bae Decl. Ex. 7 (Settlement Agreement) ¶ 5.2.

Ultimately, in October 2020, a ██████████████████████████

████████████████████████████████████

Nonetheless, around a year later, Krafton once again began sending letters and making demands ███████████████████████.  On January 5, 2022—*before* this case was filed—Garena filed another SIAC arbitration to enforce the Settlement Agreement.  Declaration of Suk Jin Bae ("Bae Decl.") Ex. 17 (Notice of Arbitration). That arbitration, and not this litigation, is where this dispute must be decided.  Krafton cannot nullify ██████████████ its agreement to arbitrate merely by changing venue.  And even if Krafton once again disputes the enforceability of the arbitration clause, the law is clear that, under the terms of the Settlement Agreement, it is the arbitrators, not a U.S. court, who must resolve that issue.  Defendants therefore respectfully request that this Court compel Krafton to arbitrate its dispute with Garena and stay this lawsuit (including the claims involving Plaintiff PUBG Santa Monica and Defendants Apple, Google, and YouTube) pending the final resolution of that arbitration.

## II.    BACKGROUND

### A.    Garena's *Free Fire*

Garena Online and Moco Studios are the developer and publisher, respectively, of *Free Fire*, a mobile "battle royale" game that was by some accounts the most downloaded game worldwide in 2019, 2020, and 2021.  Bae Decl. Exs. 1–3 (data.ai (f/k/a App Annie) Reports).  "Battle royale" is a genre of video game that gained popularity after the success of both the Japanese novel and film *Battle Royale*, and *The Hunger Games* series of books

and movies.  Bae Decl. ¶ 4 (January 16, 2018 Email from App Store to Moco Studios).

Games in this genre generally share a common goal: for the player to be the last man or

team standing.  Bae Decl. ¶ 3 (data.ai (f/k/a App Annie) Report) .

Moco Studios began distributing *Free Fire* worldwide through Apple's App Store

(the "App Store") and Google's Play Store (the "Play Store") in 2017.  *Id.* ¶ 5.  Moco

Studios has continued to distribute *Free Fire* through the App Store and the Play Store

ever since.[2]

### B.     Krafton's 2018 Copyright Claim and DMCA Notice

Krafton also publishes and distributes a battle royale video game, called

*Playerunknown's Battlegrounds* ("*Battlegrounds*").  On January 16, 2018, approximately

one month after Garena Online and Moco Studios officially launched *Free Fire*, Apple

informed Moco Studios that Krafton had filed a takedown notice under 17 U.S.C. § 512 of

the Digital Millennium Copyright Act ("DMCA"), alleging that *Free Fire* infringed

Krafton's rights in *Battlegrounds*.  Bae Decl. Ex. 4 (January 16, 2018 Email from App

Store to Moco Studios).  Shortly thereafter, Garena received a cease-and-desist letter from

Krafton's U.S. counsel alleging the same.  *Id.* Ex. 5 (January 22, 2018 C&D Letter from

---

[2] For the purposes of this motion, "*Free Fire*" refers to both *Free Fire* and *Free Fire MAX*, the two applications-at-issue in the Complaint.  The two applications are essentially the same game, but *Free Fire MAX* offers high-definition graphics and higher resolution. The applications are also inter-playable, so users of *Free Fire* and *Free Fire MAX* can play together on all game modes.  In addition, a user's login information, progress, and items are maintained across both applications.  Bae Decl. ¶ 16.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

Saliwanchik, Lloyd & Eisenschenk).  Garena never received any cease-and-desist communication from Krafton's Singapore counsel.

On March 23, 2018, Krafton brought claims of copyright infringement against Garena in the High Court of Singapore (the "2018 Singapore Litigation").  *See* Bae Decl. Ex. 6 (Singapore Statement of Claim) ¶ 19.  Krafton alleged that it had copyrights—both "in Singapore and around the world"—in *Battlegrounds*, which it alleged was published and sold "around the world."  *Id.* ¶¶ 2–3, 6.[3]

### C.    The Settlement Agreement

On April 12, 2019, Garena and Krafton entered into the Settlement Agreement, a ███████████████ settlement of ████████████████.  Bae Decl. Ex. 7 (Settlement Agreement) Recital B, ¶ 2; *see also id.* ¶ 5.1.  ██████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████  *Id.*  ¶¶ 1.2, 2.1.  ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████.  *Id.* ¶¶ 2.1, 3.1.

The ████████████ Settlement Agreement contains three elements relevant to this motion.  First, it ████████████████████████████████████

---

[3] The U.S. copyright registrations for *Battlegrounds* issued on April 4, 2018, a little less than two weeks after Krafton filed suit.  Complaint ¶ 39.



Second,

*Id.* ¶ 5.2 (emphases added).

Third, it contains an arbitration clause:

> In the event ***any dispute, controversy, claim or difference of any kind*** whatsoever shall arise between the Parties ***in connection with this Agreement***, it shall be ***referred to and finally resolved by arbitration in Singapore*** in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, ***which rules are deemed to be incorporated by reference in this clause.*** There will be three arbitrators and the language of the arbitration shall be English.

*Id.* ¶ 7.2 (emphases added).

## D.   The 2019 Arbitration

On April 16, 2019, four days after Garena accepted Krafton's settlement offer and countersigned the Settlement Agreement, Krafton tried to back out.  Bae Decl. Ex. 8 (Singapore Court of Appeal Judgment) at 381.  Krafton alleged that its offer was no longer capable of being accepted and the agreement was not valid.  *Id.*  As a result,

Garena commenced arbitration against Krafton ███████████████████████

███████████ (the "2019 Arbitration") and applied for a stay of the 2018 Singapore

Litigation pending resolution of the arbitration proceedings.  *Id.* at 381–82.  The

Singapore High Court granted the stay on the basis of the arbitration clause, finding that

the Settlement Agreement's validity is for the arbitration panel.  *Id.* at 382.

Krafton appealed the High Court's decision to the Singapore Court of Appeal,

which affirmed the lower court's decision, explaining: "when a court is presented with

what appears on its face to be a valid arbitration agreement and a dispute that appears to

fall within the scope of that agreement, the court is bound not to ignore that agreement.

Instead, it should allow any such dispute to be determined by the arbitral tribunal."  *Id.* at

384.  On ████████████████████████████████████████████

████████████████████████ Decl. Ex. 9 ████████████████████

███████████████████████████████████████████████████

██████████████████████████████████. *Id.*  Krafton

discontinued the 2018 Singapore Litigation approximately two weeks later.  *See* Bae Decl.

Ex. 10 (Notice of Discontinuance).

As it had since December 2017, Garena continued to distribute *Free Fire*

worldwide on the App Store and the Play Store.  Other than the actions taken in

connection with the 2018 Singapore Litigation, Krafton has never taken any action with

respect to its January 2018 DMCA takedown notice under U.S. law.  Bae Decl. ¶ 17

(Notice of Arbitration).

**E.      Plaintiffs' Attempt to Revive the Copyright Claims Against *Free Fire***

On December 21, 2021, Garena received a cease-and-desist letter from Krafton's U.S. counsel.  *See* Bae Decl. Ex. 11 (December 21, 2021 Krafton Cease and Desist Letter).  Like its Statement of Claim in the 2018 Singapore Litigation, Krafton's letter alleged that Garena's *Free Fire* infringed Krafton's copyrights in *Battlegrounds*.  *Id.*  Two days later, Apple informed Garena that Krafton had submitted two new notices of complaint with respect to *Free Fire* on the App Store.  *See* Bae Decl. Ex. 13 (December 23, 2021 Email from App Store to Moco Studios).  Approximately two weeks later, Garena received a notice from Google informing Garena that Krafton had submitted DMCA takedown notices with respect to *Free Fire* on the Play Store on December 21, 2021.  *See* Bae Decl. Ex. 12 (January 6, 2022 Email from Play Store to Moco Studios).

Because Krafton's actions ███████████████████████, Garena filed a Notice of Arbitration in the SIAC in Singapore (the "2022 SIAC Arbitration") on January 5, 2022.  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ and the 2022 SIAC Arbitration is well underway.[4]

---

[4] This motion does not set out all the facts, circumstances, and arguments, including

On January 10, 2022, despite the pending arbitration between the parties, Plaintiffs filed this lawsuit.  Making no mention of the preexisting arbitration proceedings, the Complaint alleges that the publication and distribution of *Free Fire* infringes Krafton's copyrights in *Battlegrounds*.[5]  Like the 2018 Singapore Statement of Claim, the Complaint alleges that Garena infringes copyrights associated with *Battlegrounds* by selling *Free Fire* through the App Store and Play Store.  *Compare* Bae Decl. Ex. 6 (Singapore Statement of Claim) ¶ 19, *with* Complaint ¶¶ 74–75.  And like the Singapore Statement of Claim, the Complaint relies on a myriad of elements in *Free Fire* that are allegedly "virtually identical and/or substantially similar to copyrightable elements" in *Battlegrounds*.  *Compare* Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule, *with* Complaint ¶¶ 78–106.

On January 19, 2022 (nine days after filing this case), Krafton ███████████████ ████████████████████████████████████████████.  Bae Decl., Ex. 18.  ████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████

_____

matters of Singapore law which govern the Settlement Agreement and which will be raised at the appropriate time in arbitration.

[5] Plaintiffs also allege that YouTube infringes copyrights associated with *Battlegrounds* because it hosts *Free Fire* gameplay videos and a feature-length Chinese film, *Biubiubiu*. Complaint ¶¶ 127, 129.

8

1

2

3

4

## III.   ARGUMENT

6

That

question should therefore be decided in the ongoing arbitration before the merits of this

case are addressed.

The Court need not—and should not—reach the question of whether ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮.  Rather, this Court should compel Krafton to arbitrate its dispute with Garena

and stay this entire case because: (i) Krafton agreed to arbitrate disputes with Garena "of

any kind whatsoever . . . in connection with" the Settlement Agreement, and (ii) Plaintiff

PUBG Santa Monica, Corp.'s ("PUBG-SM") claims against Garena (if any) and both

Plaintiffs' claims against Defendants Apple, Google, and YouTube are so inextricably

dependent on that arbitration that they should also be stayed to prevent futile or

duplicative litigation, and possibly inconsistent resolution of similar issues.[6]

---

[6] As explained *supra* at 8, the Complaint alleges that Krafton owns the copyrights in
*Battlegrounds* and does not indicate what, if any, standing Plaintiff PUBG-SM has to any
of the asserted copyright claims.  Complaint ¶¶ 153.  As such there is no claim PUBG-SM
can maintain without Krafton.

9

### A. The Federal Arbitration Act Requires Agreements to Arbitrate Be Enforced

Arbitration provisions in international commercial agreements are governed by Chapter 2 of the Federal Arbitration Act ("FAA"), which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 9 U.S.C. §§ 201, 202, 206.[7] "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 565 U.S. 333, 351 (2011). Indeed, the FAA establishes "a federal policy favoring arbitration," in which courts must "rigorously enforce agreements to arbitrate." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citation omitted). If a court finds that a party has failed to comply with a valid arbitration agreement, it "***must*** issue an order compelling arbitration." *Ruderman v. Rolls Royce Motor Cars, LLC*, 511 F. Supp. 3d 1055, 1057 (C.D. Cal. 2021) (citing 9 U.S.C. § 4) (emphasis added). "[T]he district court shall also stay the proceedings, pending the resolution of the arbitration, at the request of one of the parties bound to arbitrate." *Id.*

### B. Under the FAA, this Court Must Compel Arbitration of Krafton's Claims against Garena

Krafton must arbitrate whether ███████████████████████ because: (1) the Settlement Agreement is an international agreement to arbitrate within the

---

[7] Under the FAA, a defendant in a pending lawsuit may file a motion to compel arbitration in lieu of an answer to the complaint. *See KWB and Assocs., Inc. v. Marvin*, Case No. 18-289-DMG (KKx), 2018 WL 5094927, at *9 (C.D. Cal. Apr. 18, 2018); *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 Fed. Appx. 604, 607 (10th Cir. 2011).

meaning of the Convention; (2) the Settlement Agreement's arbitration provision is not "null and void, inoperative or incapable of being performed"; and (3) Krafton's claims fall within the scope of the arbitration clause. *See Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009) (affirming order to compel arbitration of international agreement to arbitrate); *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2020) (granting motion to compel arbitration of international agreement to arbitrate).

The Settlement Agreement is a valid agreement to arbitrate under the Convention, satisfying the first two elements.  There cannot be any dispute that the Settlement Agreement is valid and that this arbitration clause is binding against Krafton.  The Singapore Court of Appeal previously stayed the 2018 Singapore Litigation in favor of arbitration on the basis of this very arbitration clause, and ███████████████████ ████████████████████████████████████ Bae Decl. Ex. 8 (Singapore Court of Appeal Judgment) at 382; Bae Decl. Ex. 9 ███████████████ ████████.

If there is any dispute about the third element—the *scope* of the arbitration clause—the parties explicitly agreed in the Settlement Agreement that the arbitrators, and not the Court, should decide the question of arbitrability.  Accordingly, this Court should compel arbitration of the question whether the parties' dispute fits within the arbitration clause. *See Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985–86 (9th Cir. 2017) (vacating and remanding where district court decided question regarding the scope

of an arbitration clause despite the parties' express agreement that the arbitrator would decide questions of arbitrability).  The Court should rule on the scope of the arbitration clause only if it finds that the parties did *not* agree that the arbitrators should decide the question of arbitrability.  Even then, however, the Court should find that the parties' dispute about the scope of the Settlement Agreement falls within the arbitration provision.  Krafton should not be given a second chance to avoid its agreement merely by changing forums.

### 1. The Settlement Agreement Contains an Arbitration Clause and is Governed by the Convention

An agreement to arbitrate falls under the Convention if:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen*, 583 F.3d at 654–55 (citation omitted).  All four factors are satisfied here.  First, Krafton and Garena entered into a valid, written agreement, which is binding on Krafton.  *See* Bae Decl. Ex. 7 (Settlement Agreement) ¶ 5.2; *see also supra* note 1 (Krafton Notice of Merger).  The Settlement Agreement's ████████████████████████████████████ *Id.* Ex. 9 ███████████████████████████████

Second, the contract contains an arbitration clause, which requires that:

> In the event any dispute, controversy, claim or difference of any kind whatsoever shall arise between the Parties in connection

with this Agreement, it shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed to be incorporated by reference in this clause.

Bae Decl. Ex. 7 (Settlement Agreement) ¶ 7.2.  Singapore is a signatory of the Convention.  Declaration of Allyson R. Bennett Ex. 1 (New York Arbitration Convention—List of Contracting States).

Third, the arbitration agreement arises out of a legal relationship that is commercial in nature because ████████████████████ about alleged copyright infringement.  *See, e.g.*, *Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, No. LA CV15-08048 JAK (RAOx), 2018 WL 10152573, at *7 (C.D. Cal. July 10, 2018) (arbitration award resolving dispute arising out of trademark licensing agreement), *aff'd*, 772 F. App'x 585 (9th Cir. 2019); *see also ESCO Corp. v. Bradken Res. Pty. Ltd.*, No. 10-788-AC, 2011 WL 1625815, at *6 (D. Ore. Jan. 31, 2011) (arbitration award resolving dispute arising out of patent and trademark licensing agreement).

Fourth, at least one party to the agreement is not an American citizen.  Krafton, both now and at the time it signed the Settlement Agreement, is a Korean company.  Garena Online and Moco Studios are Singaporean companies, and Sea is a Cayman Islands company.  Accordingly, the Settlement Agreement is an enforceable agreement to arbitrate within the meaning of the Convention.

### 2.    The Settlement Agreement is Not Null and Void, Inoperative, or Incapable of Being Performed

This Court is *required* to order arbitration under the Convention unless Krafton demonstrates the contract is "null and void, inoperative or incapable of being performed." 9 U.S.C. § 4; *see also Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008) (the party challenging the arbitration clause has the burden of proof).  And "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (citation omitted).  "[I]nternationally recognized defenses" that might render an arbitration agreement null and void include "duress, mistake, fraud, or waiver, or when it contravenes fundamental policies of the forum nation." *Oriental Com. and Shipping Co., Ltd. v. Rosseel, N.V.*, 609 F. Supp. 75 (S.D.N.Y.1985) (citation omitted).

Here, ███████████████████████████████████████████████████████ █████████, and Garena (which has already initiated a second arbitration) has not waived its right to arbitrate.[8]  The Court should therefore find that the Settlement Agreement is an enforceable international agreement to arbitrate under the Convention.

---

[8] ████████████████████████████████████████████████████████████

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

### 3. The Parties Expressly Delegated the Question of Arbitrability to the Arbitrators

Because there is a valid arbitration agreement that has not been proven null and void, and because the parties agreed to submit any dispute over arbitrability to the arbitrators, this Court's role is at an end.  "While there is a presumption that courts will decide which issues are arbitrable, 'parties may delegate the adjudication of gateway issues to the arbitrator if they clearly and unmistakably agree to do so.'"  *ROI Props. Inc. v. Burford Cap. Ltd.*, No. CV-18-03300-PHX-DJH, 2019 WL 1359254, at *4 (D. Ariz. Jan. 14, 2019) (cleaned up); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as . . . whether their agreement covers a particular controversy.").

Here, the parties expressly agreed to submit the question of arbitrability to the arbitrators.  The Settlement Agreement "incorporate[s] by reference in this [arbitration] clause" the "Arbitration Rules of the [SIAC]."  Bae Decl. Ex. 7 (Settlement Agreement) ¶ 7.2.  Those rules provide that the "Tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement."  SIAC Rules 28.2 (2016).

Adopting the SIAC Rules shows an unmistakable agreement to arbitrate arbitrability.  In *ROI Properties Inc. v. Burford Cap. Ltd.*, the District of Arizona found that language materially identical to the arbitration clause in the Settlement Agreement was "a clear and unmistakable agreement to delegate the adjudication of the gateway issue of arbitrability to the arbitrator."  2019 WL 1359254, at *4.  There, the agreement

incorporated the London Court of International Arbitration ("LCIA") rules, which, like the SIAC Rules, provide that the arbitrator decides issues of arbitrability.  *Compare* LCIA Arbitration Rules Article 23.1 ("The Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement.") (2014)[9], *with* SIAC Rule 28.2 ("The Tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, validity or scope of the arbitration agreement.") (2016).[10]  The *ROI* court concluded that "the incorporation of LCIA rules in the Intercreditor Agreement's arbitration provision is a clear and unmistakable agreement to delegate the adjudication of the gateway issue of arbitrability to the arbitrator," and declined to reach the question of whether the plaintiff's claims fell within the arbitration provision.  *Id.* at *4–5.  The same is true here.

Under the FAA, courts must defer to such an agreement.  *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (collecting cases); *Portland Gen. Elec. Co.*, 862

---

[9] *LCIA Arbitration Rules (2014)*, LCIA Arbitration and ADR worldwide, https://www.lcia.org/Dispute_Resolution_Services/lcia-arbitration-rules-2014.aspx (last visited Mar. 28, 2022).

[10] *SIAC Rules 2016*, SIAC - Singapore International Arbitration Centre, https://www.siac.org.sg/our-rules/rules/siac-rules-2016 (last visited Mar. 28, 2022).

F.3d at 985; *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *6 (N.D. Cal. Mar. 18, 2016) (collecting cases).  This case is no different.[11]

### 4. In Any Event, the Settlement Agreement Unambiguously Requires Arbitration Here[12]

If the Court finds that the parties did not delegate arbitrability to the arbitrators, the issue of whether ████████████████████████████ must still be sent to arbitration.  When parties dispute whether an arbitration clause applies, courts err on the side of finding that it does.  *See, e.g.*, *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83 (1960) ("An order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Concat LP v. Unilever, PLC,* 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)  Here, the arbitration clause is more than "susceptible" to an interpretation that covers the parties' disputes; it states explicitly that

---

[11] While the Ninth Circuit applies federal substantive law to the threshold inquiries, including arbitrability, notwithstanding a clear choice of law provision to the contrary, other courts have ruled differently.  *Compare Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168–69 (9th Cir. 2021)*, with CCP Sys. AG v. Samsung Elecs. Corp.*, No. .09-CV-4354 (DMC) (CCC), 2010 WL 2546074, at *7–8 (D.N.J. June 21, 2010).  Because the Settlement Agreement contains a choice of law provision in favor of Singapore law, and because Singapore law requires this Court to compel arbitration, Garena preserves the question of whether that choice of law provision should govern the arbitrability inquiry for appeal.

[12] All the arguments in this section are made on the basis that this Court is applying US, not Singapore, law.

any dispute concerning the scope of the Settlement Agreement must be resolved first in arbitration.

### a.   The Arbitration Clause Requires Krafton to Arbitrate Whether the Settlement Agreement Applies

Courts routinely compel arbitration when (1) the defendant raises a settlement agreement as a defense to the plaintiff's claims and (2) the relevant settlement agreement has an arbitration clause similar to the one at issue here.  *See, e.g.*, *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19 Civ. 4355 (VM) (GWG), 2021 WL 1539225, at *5 (S.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, No. 19 Civ. 4355 (VM), 2021 WL 3270024 (S.D.N.Y. July 30, 2021) (holding that "numerous cases hold that, where the parties have entered into an arbitration agreement, the arbitrator must decide the applicability of any release" and citing cases); *Rhodia Inc. v. Bayer Cropscience Inc.*, No. 04-6424 (GEB) (MF), 2007 WL 3349453, at *5 (D.N.J. Nov. 7, 2007) (rejecting argument that the court must "perform a detailed analysis of the claims and whether they were comprehended by the release" and granting motion to compel arbitration because movants made an argument that "on its face, is governed by" a contract containing an agreement to arbitrate under the Convention) (internal quotations omitted).

Here, Krafton argues that ███████████████████████████████████
██████████████████████████████████████████  The Settlement Agreement requires the parties to arbitrate "*any* dispute, controversy, claim or difference *of any kind whatsoever* [that] shall arise between the Parties *in connection with this [Settlement]*

18

*Agreement*."  Bae Decl. Ex. 7 (Settlement Agreement) § 7.2 (emphasis added).  A dispute over whether the Settlement Agreement ████████████████ is, by any reasonable interpretation, "a dispute" "in connection with" the Settlement Agreement.  Nothing more is required for that question to be referred to arbitration.

Further, that arbitration should occur *before* this lawsuit is allowed to proceed; otherwise, Garena would be deprived of one of the primary benefits of the Settlement Agreement's ████████████████ *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.").  Accordingly, the Court need not (and should not) resolve the question of the scope of the Settlement Agreement on the merits.  The parties bargained to reserve that question for arbitration.

**b.      Krafton's Assertion That the Settlement Was Limited to Claims Under Singapore Law Is Irrelevant and Incorrect**

Krafton asserts in the Complaint that the settlement was limited to "Singapore related claims."  Complaint ¶ 4.  That ████████████████████ that should be decided by the SIAC panel, and not this Court.  However, if the Court believes it must resolve that question in order to compel arbitration (which it need not), it should reject Krafton's arguments that the Settlement Agreement does not reach claims brought under U.S. law.

The Settlement Agreement ████████████████████████████████

████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████   *See* Bae Decl. Ex. 7 (Settlement

Agreement) ¶¶ 3.2, 5.2.  That standard is met here:  Plaintiffs' Complaint in this case

includes pages of assertions, essentially verbatim from 2018, of a menagerie of mechanics

and features in *Free Fire* that are allegedly "virtually identical and/or substantially similar

to copyrightable elements of creative audiovisual expression" in *Battlegrounds*.  *Compare*

Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule*, with* Complaint ¶¶ 78–106.

These include:

- General gameplay and progression of a battle royale game, such as air
  jumping or "parachuting" from an aircraft; searching for equipment or
  "scavenging"; moving as the gameplay area shrinks; and battling other
  players until only one player or team remains.  *Compare* Bae Decl. Ex. 6
  (Singapore Statement of Claim) ¶3, Schedule at 15–17, 31, 32*, with*
  Complaint ¶¶ 79, 87–88, 100.

- Game maps featuring "towns, farms, buildings, fields, trees, roads, and
  mountainous topography that are depicted as if photographed using a
  reconnaissance satellite, as well as featured location indicators and white
  lettered descriptions of those featured areas."  *Compare* Bae Decl. Ex. 6
  (Singapore Statement of Claim) Schedule at 18–19*, with* Complaint ¶¶ 80–
  83.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

- Visual depictions of locations and buildings in the game map, such as a port with shipping containers and a crane, and a power plant with cooling towers. *Compare* Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule at 20–26, *with* Complaint ¶¶ 84–86.

- Frying pans as weapons.  Compare Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule at 28, 33, *with* Complaint ¶¶ 89–91.

- Attachments and modifications for firearms.  *Compare* Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule at 30, *with* Complaint ¶ 92.

- Armor.  Compare Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule at 29, *with* Complaint ¶¶ 93–95.

- Air-dropped supply boxes.  *Compare* Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule at 31, *with* Complaint ¶¶ 97–98.

- Shrinking gameplay area or "blue" zone.  *Compare* Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule at ¶ 3, *with* Complaint ¶¶ 100.

Even some of the gameplay screenshots in the Complaint are identical to those used in the Singapore Statement of Claim.  *Compare* Bae Decl. Ex. 6 (Singapore Statement of Claim) Schedule at 15, 20–22, 25–26, 31–32, *with* Complaint ¶¶ 78, 84–85, 88.

These overlapping claims demonstrate that █████████████████████ █████████████████████████████████ and are therefore subject to the arbitration clause.

### c. Any Ambiguity Should Be Resolved in Favor of Arbitration

If there is any remaining ambiguity as to arbitrability, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses N.H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This thumb on the scale in favor of arbitrability "applies with special force in the field of international commerce," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985), where "the most minimal indication of the parties' intent to arbitrate must be given full effect." *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991). *See also United Steelworkers of Am.,* 363 U.S. at 582–83. At the very least, the Settlement Agreement can reasonably be interpreted to extend to this suit. That is all the law requires.

### C. The Court Should Stay the Proceedings in their Entirety

If the Court compels Krafton and Garena's dispute to arbitration, it should also stay these proceedings (including as to Plaintiff PUBG-SM and Defendants Apple, Google, and YouTube (collectively, the "Non-Signatory Defendants")).[13] Where parties to a case

---

[13] By bringing this Motion to Stay Litigation prior to filing an answer or a responsive pleading, Defendants do not intend to waive, nor are they waiving, any affirmative defenses under Fed. R. Civ. P. 12, including but not limited to lack of personal jurisdiction, lack of subject matter jurisdiction, and lack of appropriate service. Defendants reserve the right to make any motions under Rule 12 or raise these defenses in any answer. Accordingly, Defendants request that the stay include a stay of Defendants' obligation to file an answer or a responsive pleading, and that, in the event that this Motion to Stay Litigation is denied, Defendants be permitted 30 days from the date of the denial to file an answer or a responsive pleading.

include both signatories and non-signatories to an arbitration agreement, a district court

may exercise its inherent discretionary power to manage its own docket and stay

proceedings pending the resolution of independent proceedings that bear upon the case.

In doing so, courts consider factors such as: (1) possible damage resulting from granting a

stay; (2) hardship or inequity to a party if the proceedings go forward; and

(3) simplification or complication of issues (proof or issue of law from a stay).  *CMAX,*

*Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

### 1.    Plaintiff's Claims Concerning *Free Fire* Should Be Stayed

The Court should stay Plaintiffs' claims against the Non-Signatory Defendants

concerning *Free Fire* pending the final outcome of the 2022 SIAC Arbitration because all

three of the relevant factors favor staying the case.

### a.    Resolution of the Pending Singapore Arbitration Would Simplify the Issues Before the Court and Avoid Potential Inconsistent Outcomes

"[J]udicial and litigation economy and the avoidance of inconsistent decisions

counsels that only one forum should decide the entire case."  *SteppeChange LLC v. VEON*

*Ltd.*, 354 F. Supp. 3d 1033, 1045 (N.D. Cal. 2018) (granting non-signatory's stay motion).

Because arbitration of Krafton's claims against Garena is "likely to resolve factual

questions coextensive with claims" concerning the distribution of *Free Fire* "against

nonparties to [the] arbitration agreement," *id.*, this action should be stayed to "increase[]

judicial economy and the crystallization of the factual issues."  *In re Wynn Resorts*

*Derivative Litig.* (*Wynn*), No. 2:18-cv-293-KJD-CWH, 2019 WL 1429526, at *12–13 (D.

Nev. Mar. 29, 2019); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002) (granting stay as to all parties, both signatory and non-signatory, where there was "similarity of the issues of law and fact in this case to those that will be considered during arbitration"); *Lee v. Tesla, Inc.*, No. SACV20-00570JVS(KESx), 2020 WL 10573281, at *10 (C.D. Cal. Oct. 1, 2020) (granting overall stay of proceedings where "the underlying facts giving rise to" both arbitrable and non-arbitrable claims "are the same"); *see also Mujica v. AirScan Inc.*, 771 F.3d 580, 599 (9th Cir. 2014) (explaining that, under the doctrine of adjudicatory comity, a U.S. court may defer to a foreign court's rulings "so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States") (citation omitted).

In the 2022 SIAC Arbitration, ██████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████ Bae Decl. Ex. 17 (Notice of Arbitration) at 9. Garena's alleged infringement of *Free Fire* is a necessary element of all of Plaintiffs' claims against the Non-Signatory Defendants concerning *Free Fire*, including Plaintiffs' claims for contributory or vicarious infringement, which require an underlying act of direct infringement. *See Unicolors, Inc. v. NB Brother Corp.*, No. CV 16-02268-MWF (JPRx), 2017 WL 4402287, at *5 (C.D. Cal. Oct. 3, 2017) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)). Accordingly, a stay is warranted because arbitration may ultimately eliminate most, if not all, of Plaintiffs' claims against the Non-Signatory Defendants related to *Free Fire*. *Wells Fargo Clearing Servs., LLC v. Foster*,

No. 3:18-cv-00032-MMD-VPC, 2018 WL 1746307, at *3–4 (D. Nev. Apr. 11, 2018) (stay warranted where arbitration "will likely narrow if not eliminate the issues before this Court").

### b.    Both Garena and the Non-Signatory Defendants Would Suffer Prejudice

Denial of a stay would prejudice both the Non-Signatory Defendants and Garena. As explained *supra*, at 8, as a result of the 2022 SIAC Arbitration, ████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Under these circumstances, forcing the Non-Signatory Defendants to litigate Plaintiffs' *Free Fire* claims would be unfair and would needlessly waste the parties' resources.

Moreover, allowing this litigation to proceed against the Non-Signatory Defendants before the 2022 SIAC Arbitration is concluded could produce judgments inconsistent with the arbitration. This would result in disparate treatment between Garena and the Non-Signatory Defendants "solely on the basis of whether they signed an arbitration agreement," which also militates in favor a stay. *Bischoff*, 180 F. Supp. at 1115; *see also Parker v. New Prime, Inc.*, No. LA CV 20-03298-DOC-AGR, 2020 WL 6143596, at *5 (C.D. Cal. June 9, 2020) (granting stay where arbitrable and non-arbitrable claims "evolve out of the same nucleus of facts" and a stay "will prevent the possibility of inconsistent judgments").

As to Garena, denying this motion and forcing Garena to litigate this dispute in federal court would prejudice Garena's rights under the Settlement Agreement. A

decision about whether to grant a stay should be motivated by a court's "concern that litigation against a party not bound by an arbitration provision may impair an arbitrator's consideration of claims against a party that is compelled to arbitrate." *Kroll v. Doctor's Assocs., Inc.,* 3 F.3d 1167, 1171 (7th Cir. 1993).  In the 2022 SIAC Arbitration, ███ ███████████████████████████████████████████████ Bae Decl. Ex. 17 (Notice of Arbitration) at 9.  Allowing this case to move forward while that arbitration proceeds would undermine Garena's right to seek that relief and could produce inconsistent outcomes.

Finally, resolving any part of the lawsuit would necessarily involve this Court considering the scope of Krafton's copyrights.  Doing so in a proceeding in which Garena is not participating (because the case against it is stayed while it is arbitrating ███ ██████████████████████ would prejudice Garena's rights to raise any appropriate arguments and defenses.

### c.    Plaintiffs Suffer No Harm in the Event of a Stay

Plaintiffs have the burden of demonstrating that a stay would prejudice them.  *RB Prods., Inc. v. Ryze Capital, LLC*, No. 3:19-cv-00105-MMD-WGC, 2019 WL 5722205, at *2–3 (D. Nev. Nov. 4, 2019) (granting stay against non-signatory defendants).  Plaintiffs cannot meet that burden.  As an initial matter, Krafton chose not to press any claims concerning *Free Fire* in the U.S. against Defendants for more than four years.  Accordingly, Plaintiffs would be hard-pressed to argue that they are prejudiced by a stay of their pending U.S. claims concerning *Free Fire* while the 2022 SIAC Arbitration

██████████████████████████████████████  To the contrary, Plaintiffs would

benefit from a stay because it would avoid the expense of litigating futile or duplicative

arguments.  ████████████████████████████████████████████████

████████████████████████████, Plaintiffs will "be spared the expense of

pursuing doomed claims."  *RB Prods.*, 2019 WL 5722205, at *3 (quoting *Wynn*, 2019

WL1429526, at *3).  Accordingly, "[a] stay on this proceeding would benefit all parties

by giving them 'more complete information regarding whether and how Plaintiff[] might

pursue [its] claims which promotes the orderly course of justice.'" *Id.* (alterations in

original) (quoting *Wynn*, 2019 WL 1429526, at *3).  Indeed, absent a stay, both Plaintiffs

and the Non-Signatory Defendants would likely "expend unnecessary resources on

duplicative litigation that will involve nearly identical evidence to prove overlapping

claims." *Id.* (citing *Wynn*, 2019 WL 1429526, at *3).  A stay is therefore appropriate on

this basis as well.

        **2.**      **Plaintiffs' Claims Concerning *Biubiubiu* Should Also Be Stayed**

The Court should also stay Plaintiffs' claims against YouTube concerning the film

*Biubiubiu* pending the final outcome of the 2022 SIAC Arbitration.  Plaintiffs' claims

concerning *Biubiubiu* relate to many of the same allegedly copyrightable elements of

*Battlegrounds* as Plaintiffs' claims concerning *Free Fire*.  Accordingly, the Court should

exercise its inherent discretion to stay Plaintiffs' *Biubiubiu* claims pending the final

determination as to whether ████████████████████████████████  A

stay will promote judicial economy, minimize hardship to both YouTube and Plaintiffs, and avoid prejudice to the other Defendants.

### a.   A Stay Will Promote Judicial Economy

"Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts have discretion whether to proceed with nonarbitrable claims before or after the arbitration and [have] . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants." *Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*, No. 2:19-cv-00527-JVS-ADS, 2019 WL 1449502, at *7 (C.D. Cal. Mar. 26, 2019) (internal quotations and citations omitted); *Pac. States Indus. Inc. v. Am. Zurich Ins. Co.*, No. 18-CV-04064-LHK, 2018 WL 6106383, at *7 (N.D. Cal. Nov. 21, 2018) (same). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

A stay of Plaintiffs' claims against YouTube concerning *Biubiubiu* will help "[advance] the orderly cause of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268 (citation omitted).  Plaintiffs allege that *Biubiubiu* and *Free Fire* infringe many of the same protectable elements of *Battlegrounds*, including items, weapons, and equipment such as frying pans and air-dropped supply boxes; "distinctive" locations such as a port with shipping containers and a power plant with a

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

cooling tower; and depictions of a player parachuting to a location.  *See* Complaint, ¶¶ 131–33; *supra*, at 19–21 (listing elements of *Free Fire* that allegedly infringe *Battlegrounds*).  Accordingly, the copyrightability of various elements of *Battlegrounds* will be a key issue in litigating Plaintiffs' claims concerning both *Free Fire* and *Biubiubiu*.  The Court should therefore stay Plaintiffs' *Biubiubiu* claims against YouTube pending the final resolution of the arbitration.  *See Lee*, 2020 WL 10573281, at *10 (granting stay where "the underlying facts giving rise to" both arbitrable and non-arbitrable claims "[were] the same").  A stay will promote "economy and efficiency" by preventing piecemeal litigation in this Court.  *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 842 (N.D. Cal. 2007) (noting that "[c]onsiderations of economy and efficiency" counsel in favor of a stay (alteration in original) (quoting *Newton v. Neumann Caribbean Int'l, Ltd.,* 750 F.2d 1422, 1427 (9th Cir.1985)).

### b.    A Stay Will Minimize Hardship to All Parties

Because Plaintiffs' *Biubiubiu* claims depend on many of the same impermissibly expansive copyrightability issues as their *Free Fire* claims, a stay of Plaintiffs' *Biubiubiu* claims will benefit all parties: both YouTube and any other Defendant responding substantively to Krafton's copyright claims are likely to argue, among other things, that Krafton's copyright in *Battlegrounds* is more limited than Krafton thinks it is.  A stay of the *Biubiubiu* claims will therefore promote judicial economy and prevent both Plaintiffs and YouTube from "expend[ing] unnecessary resources on duplicative litigation that will involve nearly identical evidence to prove overlapping claims."  *RB Prods*, 2019 WL

5722205, at *3 (citing *Wynn*, 2019 WL 1429526, at *3).  It will also avoid the possibility that Defendants other than YouTube are prejudiced by a ruling on the scope of Krafton's copyright made in the context of *Biubiubiu* that Krafton may seek to assert against *Free Fire*.  Accordingly, the Court should stay Plaintiffs' *Biubiubiu* claims pending the final outcome of the 2022 SIAC Arbitration.  *See Knepper*, 2019 WL 1449502, at *7–8 (court has discretion to stay non-arbitrable claims pending outcome of arbitration).

## IV.    CONCLUSION

Defendants respectfully move for an order compelling arbitration in Singapore and staying this litigation pending the final resolution of the Singapore arbitration proceedings.

Dated:  March 28, 2022                    DURIE TANGRI LLP


By:                    */s/ Allyson R. Bennett*
                              ALLYSON R. BENNETT

Attorneys for Defendants
SEA LIMITED, GARENA INTERNATIONAL
I PRIVATE LIMITED, GARENA ONLINE
PRIVATE LIMITED, and APPLE INC.


MAYER BROWN LLP


By:                    */s/ A. John P. Mancini*
                              A. JOHN P. MANCINI

Attorneys for Defendants
GOOGLE LLC and ITS WHOLLY-OWNED
SUBSIDIARY, YOUTUBE, LLC

1

## **<u>FILER'S ATTESTATION</u>**

2       Pursuant to Civil L.R. 5-4.3.4, regarding signatures, I, Allyson R. Bennett, attest

3  that concurrence in the filing of this document has been obtained.

4

5                                                    */s/ Allyson R. Bennett*

6                                              ALLYSON R. BENNETT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 28, 2022 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Allyson R. Bennett*

ALLYSON R. BENNETT

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW