David P. Enzminger (SBN: 137065)
denzminger@winston.com
Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213-615-1700
Facsimile:  213-615-1750

Sean R. Anderson (NY SBN: 5391479)*
sranderson@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10016
Telephone: 212-294-6700
Facsimile:  212-294-4700

*Pro hac vice application forthcoming

Attorneys for Plaintiffs
KRAFTON, INC. and
PUBG SANTA MONICA, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KRAFTON, INC. and PUBG SANTA MONICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., GOOGLE, LLC, YOUTUBE LLC, SEA LIMITED, MOCO STUDIOS PRIVATE LIMITED (F/K/A GARENA INTERNATIONAL I PRIVATE LIMITED), and GARENA ONLINE PRIVATE LIMITED, <br><br> Defendants. | Case No. 2:22-cv-00209-GW-MRW <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION** <br><br> Date: June 2, 2022 <br> Time: 8:30 a.m. <br> Ctrm: 9D <br> Judge: Honorable George H. Wu |

## REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ............................................................................. 1

II.  BACKGROUND ............................................................................. 3

    A.  Garena's Infringement of Krafton's Copyrights in Battlegrounds .......... 3

    B.  The Settlement Agreement and 2019 Arbitration .................................. 4

    C.  Krafton's Complaint and the 2022 SIAC Arbitration ............................ 5

III.  ARGUMENT .................................................................................. 8

    A.  Krafton Cannot Be Compelled to Arbitrate Whether it Has Released its Claims Against the Non-Signatory Defendants .................................... 8

        1.  The Court Can and Should Determine the Question of Arbitrability .............................................................................. 8

        2.  The Court Can and Should Determine that Krafton Did Not Agree to Arbitrate Claims Against the Non-Signatory Defendants ...... 10

        3.  The Non-Signatory Defendants Lack Standing to Compel Krafton to Arbitrate or Enforce an Award in Their Favor ......................... 16

    B.  The Claims Against the Non-Signatory Defendants Should Not Be Stayed ............................................................................................. 17

        1.  Krafton Can ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ory nts ▮▮▮▮▮▮▮▮▮▮▮▮ ..................................... 18

            (a)  Krafton's Claims Against Apple and Google Are Not Dependent on the Outcome of the Arbitration ................. 18

            (b)  Krafton Can Pursue its Claims Against YouTube Irrespective of the Arbitration ........................................ 20

        2.  Krafton Would Be Prejudiced by a Stay ................................... 21

        3.  Defendants' Prejudice Arguments Are Unavailing ..................... 23

    C.  Defendants Have Forfeited Waivable Defenses Under Rule 12 ............ 25

IV.  CONCLUSION ............................................................................. 26

i

CERTIFICATE OF SERVICE - PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bischoff v. DirectTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002)................................................24

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ...........................................................9

*Busbice v. Williams*,
  2014 WL 12593988 (C.D. Cal. Oct. 23, 2014) ................................18

*CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc.*,
  14 F. Supp. 3d 463 (S.D.N.Y. 2014) .................................................17

*Chen v. Bank of Am., N.A.*,
  2020 WL 4561658 (C.D. Cal. Mar. 31, 2020) ....................18, 21, 23

*City of Almaty v. Sater*,
  2021 WL 4940304 (S.D.N.Y. Oct. 22, 2021)....................................22

*Congdon v. Uber Techs.*,
  226 F. Supp. 3d 983 (N.D. Cal. 2016)...............................................23

*Costello Pub. Co. v. Rotelle*,
  670 F.2d 1035 (D.C. Cir. 1981).........................................................18

*Daebo Int'l Shipping Co. v. Americas Bulk Transp. (BVI) Ltd.*,
  2013 WL 2149591 (S.D.N.Y. May 17, 2013)....................................17

*Davies v. Broadcom Corp.*,
  130 F. Supp. 3d 1343 (C.D. Cal. 2015).............................................15

*DeMartini v. Johns*,
  693 F. App'x 534 (9th Cir. 2017).......................................................21

*DSMC, Inc. v. Convera Corp.*,
  273 F. Supp. 2d 14 (D.D.C. 2002)................................................22, 23

*Duncanson v. Wine & Canvas IP Holdings LLC*,
  2017 WL 5170958 (S.D. Ind. Feb. 9, 2017).................................19, 25

ii

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) .................................................................................. 2, 9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ...................................................................................... 9

*Hill v. Quicken Loans Inc.*,
   2020 WL 5358394 (C.D. Cal. Aug. 5, 2020) ...................................................... 10

*Inamed Corp. v. Kuzmak*,
   275 F. Supp. 2d 1100 (C.D. Cal. 2002) ............................................................ 20

*Khraibut v. Chahal*,
   2016 WL 1070662 (N.D. Cal. Mar. 18, 2016) ..................................................... 9

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ....................................................................... 17

*KTS Karaoke, Inc. v. Sony/ATV Music Publ'g LLC*,
   2014 WL 12567169 (C.D. Cal. Jan. 14, 2014) .................................................. 19

*KWB and Assocs., Inc. v. Marvin*,
   2018 WL 5094927 (C.D. Cal. Apr. 18, 2018) .................................................. 25

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ..................................................................................... 21

*LeBoeuf v. NVIDIA Corp.*,
   833 F. App'x 465 (9th Cir. 2021) ..................................................................... 9

*Lee v. Tesla, Inc.*,
   2020 WL 10573281 (C.D. Cal. Oct. 1, 2020) .................................................. 24

*Lemberg v. LuLaRoe, LLC*,
   2018 WL 6927836 (C.D. Cal. Mar. 1, 2018) ................................................... 25

*Macias v. Excel Bldg. Servs. LLC*,
   767 F. Supp. 2d 1002 (N.D. Cal. 2011) ........................................................... 11

*Malhotra v. Copa de Ora Realty, LLC*,
   673 F. App'x 666 (9th Cir. 2016) ................................................................... 15

*Malibu Media, LLC v. Whaley*,
   2015 WL 12852966 (M.D. Fla. May 14, 2015) ........................................... 19, 25

*McLellan v. Fitbit, Inc.*,
  2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) .............................................. 18, 22

*Metal Bull. Ltd. v. Scepter, Inc.*,
  192 F. Supp. 3d 377 (S.D.N.Y. 2016) ................................................................ 11

*Mitsubishi Motors. Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ............................................................................................ 13

*Moses N.H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................................ 13

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ........................................................................... 16

*MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020) ................................................................... 9

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*,
  2015 WL 6689572 (E.D. Cal. Oct. 30, 2015) ................................................... 25

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*,
  330 F.3d 843 (6th Cir. 2003) ............................................................................. 17

*NCR Corp. v. Sac-Co, Inc.*,
  43 F.3d 1076 (6th Cir. 1995) ............................................................................. 17

*Nexon Am., Inc. v. Cornwall*,
  2012 WL 12893775 (C.D. Cal. Sept. 18, 2012) ................................................ 19

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  971 F.3d 1042 (9th Cir. 2020) ........................................................................... 20

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ............................................................................. 9

*Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*,
  2016 WL 6679682 (N.D. Cal. Nov. 14, 2016) .................................................. 15

*Oxy-Health, LLC v. H2 Enter., Inc.*,
  812 F. App'x 660 (9th Cir. 2020) ...................................................................... 10

*Parker v. New Prime, Inc.*,
  2020 WL 6143596 (C.D. Cal. June 9, 2020) ..................................................... 24

iv

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
  862 F.3d 981 (9th Cir. 2017) ................................................................... 9

*QED Holdings, LLC v. Block*,
  2015 WL 12659935 (C.D. Cal. June 11, 2015).................................... 10, 11, 15

*RB Prods., Inc. v. Ryze Capital, LLC*,
  2019 WL 5722205 (D. Nev. Nov. 4, 2019)........................................... 21

*Republic of Nicar. v. Standard Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991) ................................................................. 13

*Rhodia Inc. v. Bayer Cropscience Inc.*,
  2007 WL 3349453 (D.N.J. Nov. 7, 2007) ...................................... 15, 16

*ROI Props. Inc. v. Burford Cap. Ltd.*,
  2019 WL 1359254 (D. Ariz. Jan. 14, 2019) .......................................... 9

*Rsch. In Motion, Ltd. v. LG Elecs. Mobilecomm U.S.A., Inc.*,
  2008 WL 11336161 (C.D. Cal. Mar. 25, 2008) .................................. 19

*Smorowski v. Domino's Pizza LLC*,
  2021 WL 4440167 (C.D. Cal. July 23, 2021) ...................................... 9

*TMTV, Corp. v. Mass Prods., Inc.*,
  645 F.3d 464 (1st Cir. 2011)......................................................... 11, 14, 19

*Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*,
  42 F.3d 1292 (9th Cir. 1994) ............................................................... 11

*United States Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*,
  2021 WL 1539225 (S.D.N.Y. Apr. 19, 2021) .................................... 15

*Vincent v. BMW of N. Am., LLC*,
  2019 WL 8013093 (C.D. Cal. Nov. 26, 2019) .................................... 16

*Vision Constr. Ent Inc v. Argos Ready Mix LLC*,
  2020 WL 6749040 (N.D. Fla. May 20, 2020) ...................................... 9

*Woodall v. Walt Disney Co.*,
  2021 WL 2982305 (C.D. Cal. Apr. 14, 2021) .................................... 18

*World Fuel Servs. Singapore Pte, Ltd. v. Bulk Juliana M/V*,
  2015 WL 575201 (E.D. La. Feb. 11, 2015)......................................... 11

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*World Grp. Sec. v. Tiu*,
   2003 WL 26119461 (C.D. Cal. July 22, 2003) ....................................................2

**Statutes**

9 U.S.C. § 207 .......................................................................................................17

**Other Authorities**

*Allenger, Shiona (trustee-in-bankruptcy of the estate of Pelletier,
   Richard Paul Joseph) v Pelletier, Olga and
   another* [2020] SGHC 279 ................................................................................12

Ng-Loy Wee Loon, S.C., "*Law of Intellectual Property of Singapore*"
   (3rd ed)...............................................................................................................12

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY
LITIGATION / CASE NO. 2:22-CV-00209-GW-MRM

Plaintiffs Krafton, Inc. ("Krafton") and PUBG Santa Monica, Inc. ("PUBG SM" and, collectively with Krafton, "Plaintiffs"), by and through their counsel, hereby oppose the Motion to Compel Arbitration and to Stay filed by Defendants Sea Ltd. ("Sea"), Moco Studios Private Ltd. (f/k/a Garena International | Private Ltd.) ("Moco Studios"), Garena Online Private Ltd. ("Garena Online," and, together with Sea and Moco Studios, "Garena"), Apple Inc. ("Apple"), Google, LLC ("Google"), and YouTube LLC ("YouTube") (collectively, "Defendants").

## I.    INTRODUCTION

Defendants seek to needlessly delay the consequences of their individual acts of direct and secondary copyright infringement by pointing to a nascent arbitration proceeding in Singapore that will only resolve a █████████████████████ ████████████████████████████████████████. In urging the Court to stay this case in favor of that arbitration, Defendants disingenuously claim that if ████████ ████████████████████████████, this case would be over—not true. Krafton asserts claims against Apple and Google for *direct infringement*, which do not depend on Garena's conduct. Moreover, Defendants do not (and could not) contend that Garena has a license to exploit the infringing game, Free Fire, for itself or to sublicense other parties, so Krafton's secondary infringement claims against Defendants will also proceed. And Defendants concede that the Singapore arbitration has █████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████████████████, the Court should reject their attempt to the delay this case by evoking an agreement to which they are not parties and ████ ██████████████████████.

Furthermore, Defendants concede that the Singapore arbitration will not decide whether █████████████████████████████████████. Rather, the arbitration will only address whether ████████████████████████████ ████████████████████████████████████████████████████████

1

1 ██████████████████████████████████████████████████

2 ████████████████████████████████. Thus, this is unlike the cases in which

3 an arbitration may bear on the claims or facts at issue in the court proceeding. Here,

4 the arbitration will not decide any of the issues ██████████████████████████

5 ██████████████████████████████████████████████████

6 ██████████████████████████████████████████████████

7 ██████████████████████████████████████████████████

8 ████████████████. These issues are for this Court to decide, and there is no basis to

9 stay their resolution for nearly ████████ pending an arbitration that is focused on ██

10 ██████████████████████████████████████████.

Defendants present their motion as a straight-forward request under the Federal Arbitration Act and consistent with the federal policy in favor of arbitration. But what Defendants are seeking is extraordinary—to compel the arbitration of a dispute between parties who did not agree to arbitrate, based on an agreement between other parties that ████████████████████████████, and in a transparent effort to delay their liability for U.S. copyright infringement. Defendants' request thus contravenes two core tenets of American litigation: that "[a]rbitration is strictly a matter of consent," *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 299 (2010) (internal quotation marks and citation omitted), and the plaintiff has a "right to choose a forum," *World Grp. Sec. v. Tiu*, 2003 WL 26119461, at *7 (C.D. Cal. July 22, 2003).

Given the magnitude of Krafton's harm, the time and effort that is required to litigate its claims, ████████████████████████████████████████████

2

1  █████████ ——█████████——Defendants' motion should be denied as

2  to Defendants Apple, Google, and YouTube.[1]

## II.   BACKGROUND

### A.   Garena's Infringement of Krafton's Copyrights in Battlegrounds

Krafton is the creator and owner of copyrights in Battlegrounds, an immensely popular battle royale-style video game that it first developed in 2016. Declaration of Jinyung Lee ("Lee Decl.") ¶¶ 3-4; ECF 1 ("Complaint" or "Compl.") ¶¶ 31-37. Battlegrounds was an instant hit, having reached the million-copies mark faster than any other game available on the popular Stream distribution platform. Lee Decl. ¶ 5; Compl. ¶ 36.

Garena immediately recognized Krafton's success—and, in turn—an opportunity. Lee Decl. ¶¶ 6-7; Compl. ¶¶ 4, 74-77. Shortly after Battlegrounds hit the market, Garena released a mobile app, which it called "Free Fire: Battlegrounds" ("Free Fire"). *Id.* Free Fire was—and still is—a clone of Battlegrounds, from its game and play sequences, to its distinctive locations, buildings, and maps, and to the objects players utilize during the game. Lee Decl. ¶ 7; Compl. ¶¶ 74-106. Garena sought to quickly and profitably exploit the fact that Krafton had yet to release a mobile version of Battlegrounds (i.e., one that could be played on phones and tablets), which was then under development. Lee Decl. ¶ 7; Compl. ¶ 4.

On March 23, 2018, Krafton sued Garena in Singapore for violation of Singapore copyright and trademark law. Lee Decl. ¶ 8; *see also* Declaration of Suk

---

[1] Krafton and Garena are already arbitrating whether ███████████
███. Defendants' motion is moot to the extent it seeks to compel Krafton to arbitrate that question, and should be denied on that basis. If the Court were inclined to grant Defendants' motion to stay because the arbitration may impact ███████████
███████████, then Krafton respectfully submits that Garena be severed from this action so that Krafton can proceed only against Apple, Google, and YouTube.

1   Jin Bae in Support of Defendants' Motion to Compel Arbitration and to Stay
2   Litigation (the "Bae Decl."), Ex. 6 (ECF 46-7) (Singapore Statement of Claim). In
3   that action, Krafton did not assert claims against Garena for any other alleged
4   infringement outside of Singapore. Lee Decl. ¶ 8; *see generally* Bae Decl., Ex. 6
5   (Singapore Statement of Claim). Krafton also did not assert claims against any other
6   party, including distributors of the game like Apple and Google. Lee Decl. ¶ 8; *see*
7   *generally* Bae Decl., Ex. 6 (Singapore Statement of Claim).

8       **B.**     **The Settlement Agreement and 2019 Arbitration**

9       Krafton and Garena settled the Singapore Litigation on April 12, 2019. Lee
10  Decl. ¶ 9; *see also* Bae Decl. Ex. 7 (ECF 45-4) (Settlement Agreement). The
11  Settlement Agreement, like the Singapore Litigation, was narrow, in that it concerned
12  only ███████████████████████████████████████████████████████████████.
13  Accordingly, it states, in relevant part, that it is ████████████████████████████
14  ██████████████████████████████████████ which is defined to be the █████████
15  ██████████████████████████████. *See* Bae Decl. Ex. 7 (Settlement Agreement) §§
16  A, B (emphasis added).

17      In the Settlement Agreement, █████████████████████████████████
18  ████████████████████████████████████████████████████████████████████████
19  ███████████. *Id.* § 1.2.1. In addition, ████████████████████████████████████
20  ████████████████████████████████████████████████████████████████████████
21  ████████████████████████████████████████████████████████████████████████
22  ██████████████████████████ *Id.* § 1.2.2. These obligations were related solely to
23  ████████████████████████████████████████████. *Id.* §§ 1.2.1, 1.2.2 ███████
24  ████████████████████████████████████████████████████████████████████████
25  █████████████████████████ *Id.* § 2.1. In exchange, ███████████████████████
26  ████████████████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████████████
28  ██████████████████████. *Id.* §§ 3.1, 3.2.

                                    4

In addition, the parties ████████████████████████
████████████████████████████████████████████████
████████. *Id.* § 5.2. Garena and Krafton also agreed that any disputes that "arise[]

between [them] in connection with" the Settlement Agreement would be resolved in

arbitration before the Singapore International Arbitration Centre ('SIAC')" and

incorporated the SIAC's rules by reference. *Id.* § 7.2. SIAC later presided over a

dispute relating to the validity of the Settlement Agreement (the "2019 Arbitration");

Bae Decl. Ex. 8 (ECF 46-9) (Singapore Court of Appeal Judgment) at 381-82. The

2019 Arbitration did not concern, and the panel did not rule on, the meaning of any

Settlement Agreement terms or its scope. *See generally id.* Although ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. Lee Decl. ¶ 10.

### C.    Krafton's Complaint and the 2022 SIAC Arbitration

As Garena represents, between 2019 and 2021—the years following the

Singapore Litigation—Free Fire became the "most downloaded game worldwide."

Mot. at 2 (citing Bae Decl. Exs. 1-3). Garena generates hundreds of millions of dollars

(if not billions of dollars) from its infringement of Battlegrounds. Lee Decl. ¶ 11;

Compl. ¶¶ 111, 125. Much of this revenue has been achieved by unauthorized

reproduction and distribution of Free Fire by Apple and Google. Compl. ¶¶ 111, 125.

This has caused, and continues to cause, Krafton significant harm. Lee Decl. ¶ 11;

Compl. ¶ 76.

Krafton's harm has been further compounded by Garena's recent release of yet

another version of Free Fire, this one called "Free Fire Max." Lee Decl. ¶ 12. Like its

predecessor, Free Fire Max also infringes Battlegrounds. Mot. at 3, n.2; *see also* Lee

Decl. ¶ 12; Compl. ¶¶ 6-8. Moreover, in November 2021, Krafton released a new

game, its much anticipated follow up to Battlegrounds called "PUBG: New State."

Lee Decl. ¶ 13; Compl. ¶ 9. Garena's games also infringe elements of PUBG: New

5

State, which causes further harm to Krafton. Lee Decl. ¶ 13; Compl. ¶¶ 9, 76.

Due to this surge in Free Fire's popularity, achieved largely through the unauthorized reproduction and distribution by Apple and Google, which caused Krafton's increasing harm, Krafton sent cease and desist letters to Defendants. *See* Lee Decl. ¶ 14 & Ex. 1 (the "December 2021 Cease-and-Desist Letters"). In the letters, Krafton stated that it owned U.S. copyrights in Battlegrounds, that Free Fire infringed those copyrights, and that Defendants' actions in adapting, reproducing, and/or distributing Free Fire constitute actionable copyright infringement. *Id.* Ex. 1 (December 21 Cease-and-Desist Letters). Krafton demanded that Garena cease its exploitation of Free Fire, including by distributing it through Apple's and Google's respective app stores and on its official YouTube channel. *Id.* Krafton also requested that Apple and Google stop infringing Battlegrounds by reproducing, distributing, and/or otherwise exploiting Free Fire through their respective platforms. *Id.*

Further, Krafton requested that YouTube remove from its platform videos of infringing Free Fire gameplay. *Id.* But YouTube's act of hosting infringing Free Fire content is not its only infringement. Unrelated to Garena or Free Fire, YouTube published an unauthorized infringing feature-length film called *BiuBiuBiu*, which was a live-action dramatization of Battlegrounds. *Id.* Krafton also sent YouTube a cease-and-desist letter requesting that YouTube remove this unauthorized film infringing its copyrights. *Id.* ¶ 15 & Ex. 2 (the "*BiuBiuBiu* Cease-and-Desist"). None of the Defendants complied with these requests. Lee Decl. ¶ 16; Compl. ¶¶ 144-146.

Instead, on January 5, 2022, the date by which Krafton requested that Defendants cease their infringement (Lee Decl. Ex. 1 (December 21 Cease-and-Desist Letters)), Garena initiated another SIAC arbitration (the "2022 SIAC Arbitration") (Bae Decl. Ex. 17 (Notice of Arbitration)). Lee Decl. ¶ 17. In its Notice of Arbitration, Garena states that it will request ███████████████████████████████████████████████████████████████. Bae Decl. Ex. 17 (Notice of Arbitration) ¶ 33(a). Garena also states that it will seek ████████████████████

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY
LITIGATION / CASE NO. 2:22-CV-00209-GW-MRM

1　████████████████████████████████████

2　████████████████████████████████████

3　████████████████████████████████████

4　████████████████████████████████████

5　██████████████████ *Id.* ¶ 33(b).

6　　　On January 10, 2022, consistent with its December 2021 Cease-and-Desist

7　Letters, Krafton filed this suit against Defendants. Lee Decl. ¶ 18. Krafton alleges that

8　Garena is liable for both direct and secondary infringement from its acts of making

9　Free Fire, which is an infringing copy of Battlegrounds, and selling it in the United

10　States. Lee Decl. ¶ 18; Compl. ¶¶ 192-231. Krafton alleges that Apple and Google are

11　liable for both direct and secondary infringement from their acts of reproducing

12　and/or distributing Free Fire through their respective app stores, among other means.

13　Lee Decl. ¶ 18; Compl. ¶¶ 152-191. Krafton also asserts secondary copyright

14　infringement claims against YouTube for its failure to expeditiously remove from its

15　site numerous videos that contain infringing Free Fire content and the infringing

16　*BiuBiuBiu* film, which was produced by a third-party and does not relate to either

17　Garena or Free Fire. Lee Decl. ¶ 18; Compl. ¶¶ 232-254.

18　　　On ███████████, the 2022 SIAC Arbitration panel (the "Arbitration Panel")

19　issued a ████████████████. Lee Decl. Ex. 3 (Procedural Order No. 1). An award

20　is not scheduled to be issued until ██████████████ after Krafton sent

21　the December 2021 Cease-and-Desist Letters prior to filing the Complaint. *Id.*

22　　　As set forth below, the Arbitration Panel will not—and could not—decide

23　whether Krafton's claims against Apple, Google, and YouTube—non-signatories to

24　the Settlement Agreement and non-parties to the 2022 SIAC Arbitration (the "Non-

25　Signatory Defendants")—███████. Moreover, Krafton's claims against the Non-

26　Signatory Defendants are not ██████████████████████████████

27　████████████████████████.

28

7

# III.  ARGUMENT

## A.      Krafton Cannot Be Compelled to Arbitrate Whether it Has Released its Claims Against the Non-Signatory Defendants

When Krafton resolved the Singapore Litigation, it did not agree to arbitrate the question of whether it could later bring claims against non-parties in a U.S. court for violations of the Copyright Act and based on entirely distinct actions, like those it asserts here against ███████████████████—the Non-Signatory Defendants. This is for two reasons. First, by its plain language, the Settlement Agreement neither ████████████████████████████████████████████. Bae Decl. Ex. 7 (Settlement Agreement) §§ A, B, 5.1. Thus, Defendants cannot unilaterally create an arbitrable "dispute" by asserting that the Non-Signatory Defendants have somehow been ████████████████████████ ████. And notwithstanding that the parties incorporated the SIAC rules in the Settlement Agreement, which delegates the question of arbitrability to the arbitrators, the Court can make this threshold determination and deny the motion to compel. Second, the Non-Signatory Defendants, as non-parties to the Settlement Agreement, have no right to enforce it, including its arbitration provision. Because Krafton's claims must proceed on the merits in this forum—as Defendants concede—the Non-Signatory Defendants should not be permitted to use the Settlement Agreement, ████████████████████, to delay their adjudication.

### 1.     The Court Can and Should Determine the Question of Arbitrability

Defendants argue that the Court cannot address the question of arbitrability because the Settlement Agreement incorporates the SIAC rules, which delegate that question to the arbitrators. Mot. at 15-17. But none of the cases that Defendants cite involve facts, like those here, in which a *non-party* unilaterally claims the benefit of an agreement—████████████████████—and then seeks to

8

compel a dispute over that very issue based on that agreement's arbitration provision.[2]

To compel arbitration under such circumstances would violate the court's role to "decide preliminary contract issues of assent and formation before referring the dispute to an arbitrator," "even in the presence of an arbitration agreement with a delegation clause." *See Smorowski v. Domino's Pizza LLC*, 2021 WL 4440167, at *6 (C.D. Cal. July 23, 2021) (citing *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 401 (3d Cir. 2020), in which the Third Circuit analyzes *Granite Rock Co.*, 561 U.S. at 298-99 & n.6 and *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)).[3] Indeed, as Judge Fitzgerald observed in *Smorowski*, "[i]t would not contravene the FAA's text" for a court to "make an initial determination as to whether the parties entered into a contract that governs the subject matter of the plaintiffs' claims ... ." 2021 WL 4440167, at *6; *see also, e.g.*, *Vision Constr. Ent Inc v. Argos Ready Mix LLC*, 2020 WL 6749040, at *6 (N.D. Fla. May 20, 2020) (court assessed applicability of arbitration agreement to claims at issue despite a delegation clause).

---

[2] To the contrary, in Defendants' cases, it was the parties to an arbitration agreement with a delegation clause that disputed whether one party's claims against the other were arbitrable, or parties to agreements related to the subject arbitration agreement. *See* Mot at 16-17 (citing *ROI Props. Inc. v. Burford Cap. Ltd.*, 2019 WL 1359254, at *3 (D. Ariz. Jan. 14, 2019); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1071 (9th Cir. 2013); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 984 (9th Cir. 2017), *as amended* (Aug. 28, 2017); *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015); and *Khraibut v. Chahal*, 2016 WL 1070662, at *1 (N.D. Cal. Mar. 18, 2016)).

[3] In *Smorowski*, Judge Fitzgerald ultimately followed the Ninth Circuit's unpublished opinion in *LeBoeuf v. NVIDIA Corp.*, 833 F. App'x 465, 466 (9th Cir. 2021) to find that arguments that an agreement on its face did not cover the dispute "implicat[ed] the scope of the Arbitration Clause," as opposed to the "preliminary contract issues of assent and formation" that a court must decide "before referring the dispute to an arbitrator." 2021 WL 4440167 at *6. Thus, Judge Fitzgerald deferred the dispute to the arbitrators as the parties had delegated that issue. *Id.* However, Judge Fitzgerald also observed that "perhaps a future Ninth Circuit panel will take up this conundrum and issue more guidance in a published opinion." *Id.*

Irrespective of the delegation clause, the law clearly permits the Court to make an "initial determination" as to whether Krafton "entered into a contract that governs the subject matter" of whether it released claims against the Non-Signatory Defendants. As set forth in detail below, the Settlement Agreement's plain language demonstrates that it ███████████████████████████████████████████ ██████████████████████████████████████████████████.

### 2. The Court Can and Should Determine that Krafton Did Not Agree to Arbitrate Claims Against the Non-Signatory Defendants

The Settlement Agreement ████████████████████████. Bae Decl. Ex. 7 (Settlement Agreement) § 5.2. ████████████████████ ████████. In addition, Krafton's direct infringement claims against Apple and Google do not depend in any way on ███████████████████. *See infra* § III(B)(1). Thus, by resolving its Singapore claims against Garena and signing the Settlement Agreement, Krafton cannot be found to have also agreed to arbitrate the question of whether it ████████████████████. To hold otherwise would permit any joint tortfeasor to unilaterally assert that they are somehow immunized from liability by pointing to an agreement to which they are not parties and in which independent and unrelated claims were settled solely as to an unrelated co-defendant. But that is not the law, as "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" as "arbitration is a matter of contract." *See Oxy-Health, LLC v. H2 Enter., Inc.*, 812 F. App'x 660, 661 (9th Cir. 2020).

Indeed, courts should only order arbitration where the dispute has a "significant relationship" or "origin or genesis" in the contract containing the agreement to arbitration. *QED Holdings, LLC v. Block*, 2015 WL 12659935, at *5 (C.D. Cal. June 11, 2015). But where the claims "do not arise out of the [Settlement] Agreement … Plaintiff … should not be compelled to arbitrate them." *Id.* at *6. In making this determination, a court must draw all inferences in favor of the non-movant. *See Hill*

10

*v. Quicken Loans Inc.*, 2020 WL 5358394, at *4 (C.D. Cal. Aug. 5, 2020).[4] As set forth in detail below, the facts at issue in the underlying Singapore Litigation and the plain language of the Settlement Agreement that resolved it make clear that ████ ████████████████████████████████████████████████████████████████████ ████████████████.[5]

First, the Settlement Agreement ████████████████████████████████ (*see* Bae Decl. Ex. 7 (Settlement Agreement) §§ A, B), a suit in which Krafton asserted claims against Garena for violations of Singapore copyright and trademark law (*id*. Ex 6 (Statement of Claim) ¶ 5 & pp. 12-13). In that litigation, Krafton did not assert claims against Apple, Google, or YouTube, or any other joint infringer. *Id*. Krafton also did not assert claims arising under U.S. law—nor could it have. Under Singapore law—like U.S. law—copyright infringement is territorial in nature, such that one cannot assert a claim for infringement that does not occur in Singapore. And a Singapore court also would lack jurisdiction to decide copyright claims arising under the U.S. Copyright Act for infringement occurring in the United States. *See*

---

[4] "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *QED Holdings, LLC*, 2015 WL 12659935, at *3 (quoting *Macias v. Excel Bldg. Servs. LLC,* 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011)).

[5] The Settlement Agreement is to be construed under Singapore law. Bae Decl. Ex. 7 (Settlement Agreement) § 7.2. In the 2022 SIAC Arbitration, Krafton will demonstrate that, under Singapore law, the scope of the release does not reach its current claims. Here, however, "the scope of the arbitration clause is governed by federal law." *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994)). Further, where the general principals of contract interpretation are not materially different, the application of federal common law is appropriate. *See World Fuel Servs. Singapore Pte, Ltd. v. Bulk Juliana M/V*, 2015 WL 575201, at *3 (E.D. La. Feb. 11, 2015) (finding that federal and Singapore contract law would yield the same result); *see also Metal Bull. Ltd. v. Scepter, Inc.*, 192 F. Supp. 3d 377, 380 n.2 (S.D.N.Y. 2016) (applying federal law despite a foreign choice-of-law provision because there was "no material difference"); *TMTV, Corp. v. Mass Prods., Inc.*, 645 F.3d 464, 472 (1st Cir. 2011) (same).

11

1    Section 31(1), The Copyright Act of Singapore (Cap. 63, 2006 Rev. Ed.); Ng-Loy

2    Wee Loon, S.C., "*Law of Intellectual Property of Singapore*" (3rd ed) at [10.1.3];

3    *Allenger, Shiona (trustee-in-bankruptcy of the estate of Pelletier, Richard Paul*

4    *Joseph) v Pelletier, Olga and another* [2020] SGHC 279 at 54. Thus, the ████████

5    ████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████. Indeed, the Settlement

7    Agreement—████████████████████████████████████—could not

8    have settled, ████████████████, claims that were incapable of being brought

9    (and were not brought) before the Singapore court for adjudication.[6]

10        The parties then applied this limited ████████████████████████████████

11    ████████████████████████████████████████████████████████████████████████

12    ████████████████████████████████████████████████████████████████████████

13    ████████████████████████████████████████████████████████████████████████

14    ████████████████████████████████████████████████████████████████████████

15    ████████    Bae Ex. 7 (Settlement Agreement) §§ 3.2, 5.2 (emphasis added).

16    Because, again, that ████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████████████████████

20    ████████████████████████████████████████████.

21        Defendants nevertheless attempt to avoid the Settlement Agreement's plain

22    language and the parties' clear intent by arguing that it constituted ████████████

23    ████████████████████████████████████████ Mot. at 4 (emphasis added). But

24    the phrase ████████████████████████████████████████████████████████████

25

26    ─────────────────────
      [6] Moreover, at the time of the Singapore Litigation, Krafton was separately enforcing

27    its U.S. copyrights. Mot. at 3-4. Krafton did not (and could not) press those claims in
      the Singapore Litigation and, accordingly, they are not incorporated ████████████

28    ████████████████████████.

1   ██████. Further, Defendants take this language out of context. ██████

2   ████████████████████████████████████████████████████████

3   ██████ Bae Decl. Ex. 7 (Settlement Agreement) Recital B ██████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ██████ (emphasis added). The "██████" was defined by the parties

7   in the Settlement Agreement as the ██████

8   ██████. Moreover, ██████

9   ████████████████████████████████████████████████████████

10  ██████████████

11      Defendants also argue that the present case necessarily involves the same or

12  substantially the same ██████ as the Singapore Litigation simply because both

13  involve some version of Garena's game—Free Fire. Mot. at 19-21. That is irrelevant

14  given that Krafton's present claims accrued *after* the resolution of the Singapore

15  Litigation, for U.S.-based infringement, and of different copyrights. Compl. ¶¶ 106,

16  194, 203, 218, 224. Thus, simply because Krafton previously sued Garena in

17  Singapore based on its infringement of a different version of the game does not mean

18  that ██████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████

21  ██████████████.[7]

22      Additionally, the fact that the parties resolved the Singapore Litigation ██████

23  ─────────────────────────

24  [7] Defendants argue that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," which "applies with special force in the field of international commerce." Mot. at 22 (citing *Moses N.H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), *Mitsubishi Motors. Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), and *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)). Yet the cases to which Defendants point do not involve *settlement agreements* among parties without any ongoing commercial relationships, which is at issue here.



13

1    ████████    directly undermines any argument that ████████████████████

2    ████████████████████. Indeed, Krafton's harm from infringement by Apple,

3    Google, and YouTube ██████████████████. In 2020 alone, for example,

4    distribution of Free Fire by Apple and Google generated hundreds of millions of

5    dollars. Compl. ¶ 125. Those entities retained a significant portion of that for

6    themselves. *Id.* Thus, when signing the Settlement Agreement, had ███████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████. Indeed, had the parties—sophisticated business entities—desired to

10   ████████████████████████████████████████████████████

11   ████████████████, they could have done so. But they did not.

12          The facts here are thus analogous to those in *TMTV, Corp.*, where the court

13   looked to the parties' settlement amount as evidence that a copyright owner did not

14   intend to release claims against infringers who were not named in the underlying suit.

15   645 F.3d at 472. There, the owner of a copyright in a television program first sued the

16   broadcaster of an infringing program. *Id.* at 467-68. After it settled that case, it moved

17   on to sue the producer of the infringing program. *Id.* The producer claimed it was

18   released by the prior settlement. *Id.* at 472. The First Circuit rejected that argument,

19   holding that "[i]n some situations, a settlement with a joint tortfeasor might suggest

20   … an intent" to release other joint tortfeasors, such as where the release contains

21   language "discharging 'any and all persons' potentially liable on the stated claims."

22   *Id.* However, absent such language, "the opposite is more plausible," particularly

23   because "[i]f the release were for all, a larger settlement would be demanded." *Id.*

24   Here, ████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████.

27          Finally, because the Settlement Agreement does not ██████████████████

28   ████████████████, Krafton cannot be compelled to arbitrate the question of

14

whether it did. *See QED Holdings, LLC*, 2015 WL 12659935, at *6 (because the agreement "does not include terms relating [to the claims] … Plaintiff … should not be compelled to arbitrate them").[8] Indeed, as one of the cases Defendants cite demonstrates, "'the claim of arbitrability [must be] plausible … [to be] passed on to the arbitrator,'" and "plainly requires more than mere assertions that the claims are released and that the scope of the release is subject to arbitration." Mot. at 18 (citing *Rhodia Inc. v. Bayer Cropscience Inc.*, 2007 WL 3349453, at *5 (D.N.J. Nov. 7, 2007)).[9]

Here, Defendants' claim of arbitrability is implausible. The Settlement

---

[8] *See also Malhotra v. Copa de Ora Realty, LLC*, 673 F. App'x 666, 668 (9th Cir. 2016) (affirming the denial of a motion to compel arbitration because "the contract's existence was a mere background fact against which the conduct at issue here occurred; the relationship of the conduct to the contract is incidental rather than direct, and accordingly no 'significant relationship' exist[ed]"); *Osprey Partners RSF LLC v. UBS Fin. Servs. Inc.*, 2016 WL 6679682, at *4 (N.D. Cal. Nov. 14, 2016) (rejecting as "untenable" the argument that "every transaction, no matter how complex, is subject to arbitration as long as some small, isolated part of the transaction involved an agreement that contained an arbitration clause"); *Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1352-53 (C.D. Cal. 2015) (denying a motion to compel arbitration where the plaintiff's claims "lack[ed] a significant relationship" to the subject agreement).

[9] In *Rhodia Inc.*, the court granted the defendants' motion to compel arbitration. *See* 2007 WL 3349453, at *1, 5. However, the plaintiff brought claims for reimbursement of environmental remediation costs that the defendants argued were expressly released in a series of agreements concerning the same events giving rise to those costs. *Id.* Here, by contrast, the Settlement Agreement resolved claims in a different jurisdiction, arising under different laws, against different parties, and for different actions. Defendants also cite to *United States Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*, 2021 WL 1539225, at *5 (S.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, 2021 WL 3270024 (S.D.N.Y. July 30, 2021) for the proposition that "numerous cases hold that, where the parties have entered into an arbitration agreement, the arbitrator must decide the applicability of any release." Mot. at 18. Yet in that case, and each of the cases to which it cites, the parties to the release were the same as the parties to the suit. Here, by contrast, Krafton is arbitrating ████████████████████████, though Defendants cite no support for the proposition that Krafton must arbitrate ████████████████████.

---

Agreement does not ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████. The Court is thus left with nothing but Defendants' say-so—or, the "mere assertions that the claims are released and that the scope of the release is subject to arbitration." *See Rhodia Inc.*, 2007 WL 3349453, at \*5. But that assertion is not supported by law or fact, and the Court should deny the motion to compel as to the Non-Signatory Defendants on this ground alone.

### 3. The Non-Signatory Defendants Lack Standing to Compel Krafton to Arbitrate or Enforce an Award in Their Favor

Moreover, the Court can deny the motion to compel to the extent it is brought by the Non-Signatory Defendants, as they are precluded from enforcing the arbitration provision. The arbitration provision makes clear that it is limited to disputes "between the Parties in connection with [the Settlement Agreement]." Bae Ex. 7 (Settlement Agreement) § 7.2. The Non-Signatory Defendants are not parties to the Settlement Agreement, and Defendants do not argue otherwise.[10] Thus, any dispute between the Non-Signatory Defendants and Krafton "is simply not within the scope of the arbitration agreement[]" and cannot be compelled to arbitration. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (applying California law and rejecting motion to compel brought by non-party to arbitration agreement); *Vincent v. BMW of N. Am., LLC*, 2019 WL 8013093, at \*4 (C.D. Cal. Nov. 26, 2019) (concluding that even though the arbitration provision covered claims relating to third parties, language limiting right to enforce to "you and us" meant that

---

[10] Defendants also do not argue that the Non-Signatory Defendants are third-party beneficiaries of the Settlement Agreement or that Krafton is somehow equitably estopped from opposing the Non-Signatory Defendants' request to arbitrate the ████ ████████ as to the claims asserted against them. Neither doctrine is appliable, in any event.

the plaintiffs did not agree to arbitrate any disputes with those third parties); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (finding that "it makes  no difference" that the parties disagree over who decides arbitrability as the defendant is not a party to the arbitration agreement).

Further, the Non-Signatory Defendants also would be barred from confirming or enforcing an award in their favor. This is because "***[o]nly parties*** to an award, ***not nonparties***, have the right to bring an action to confirm and enforce." *CBF Industria de Gusa S/A/ v. AMCI Holdings, Inc.*, 14 F. Supp. 3d 463, 475 (S.D.N.Y. 2014), *vacated and remanded on other grounds sub nom. CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58 (2d Cir. 2017) (emphasis added); *see also Daebo Int'l Shipping Co. v. Americas Bulk Transp. (BVI) Ltd.*, 2013 WL 2149591, at *4 (S.D.N.Y. May 17, 2013) (finding that a non-party to an arbitration award cannot enforce an award and the court has no jurisdiction to modify the parties to an award); 9 U.S.C. § 207 (stating that "*any party* to the arbitration may apply to any court having jurisdiction under this chapter for an ordering confirming the award") (emphasis added).

Finally, even if Garena sought to enforce an award in favor of the Non-Signatory Defendants (i.e., one that purports to authorize the Non-Signatory Defendants to infringe Krafton's copyrights in the United States), it would be subject to challenge. This is because "[a]n arbitration panel may not determine the rights or obligations of non-parties to the arbitration." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) (collecting cases) (vacating an award that created legal rights to non-parties to the arbitration)*; NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076, 1081 (6th Cir. 1995) (same).

## B.    The Claims Against the Non-Signatory Defendants Should Not Be Stayed

The Court should deny Defendants' request to stay Krafton's claims pending the 2022 SIAC Arbitration. When deciding whether to stay litigation pending an

17

arbitration, courts consider the relationship between the arbitrable and non-arbitrable claims, the relative strength of the claims, the risk of inconsistent findings and results, and the prejudice to the non-movant in having the resolution of its claims delayed. *See Busbice v. Williams*, 2014 WL 12593988, at *5 (C.D. Cal. Oct. 23, 2014); *see also Chen v. Bank of Am., N.A.*, 2020 WL 4561658, at *3 (C.D. Cal. Mar. 31, 2020); *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *5 (N.D. Cal. Oct. 11, 2017).

Here, there is *no relationship* between the arbitrable and non-arbitrable claims. As Defendants concede, *all* of Krafton's claims are non-arbitrable, and the arbitration will only address ███████████████████████████. But Defendants ignore that even if the arbitration were resolved in Garena's favor, Krafton could nevertheless pursue claims against the Non-Signatory Defendants. By contrast requiring it to wait nearly ███████ to pursue its claims would be highly prejudicial. For these and the additional reasons set forth below, the factors weigh in favor of denying Defendants' stay request.

### 1. Krafton Can Pursue its Claims Against the Non-Signatory Defendants ███████████████████████ ███████

#### (a) Krafton's Claims Against Apple and Google Are Not Dependent on the Outcome of the Arbitration

Krafton is pursuing direct infringement claims against Apple and Google based on their alleged acts of "reproducing, adapting, distributing, publicly performing, and publicly displaying …" Free Fire through their respective app stores. Compl. ¶ 154; *see also id.* ¶¶ 113-125. Defendants simply ignore that critical fact in their Motion. Krafton can pursue these claims even if the Arbitration Panel deems that ███████ ██████████████████████████. This is because "in … copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tort-feasor." *Woodall v. Walt Disney Co.*, 2021 WL 2982305, at *6 (C.D. Cal. Apr. 14, 2021) (quoting *Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1043

18

(D.C. Cir. 1981)). And a release as to one tortfeasor does not bar subsequent claims as to others. *See KTS Karaoke, Inc. v. Sony/ATV Music Publ'g LLC*, 2014 WL 12567169, at *5 (C.D. Cal. Jan. 14, 2014) (citing 3 Nimmer & Nimmer, § 12.04[C][4][c])); *see also TMTV, Corp.*, 645 F.3d at 472. Thus, contrary to Defendants' repeated assertions, Garena's infringement is not "a necessary element of all of Plaintiffs' claims against the Non-Signatory Defendants concerning *Free Fire*." Mot. at 24.[11] For this reason, there is no basis to stay Krafton's direct infringement claims against Apple and Google.

The Court should also decline to stay Krafton's secondary infringement claims against Apple and Google. While Krafton must prove a direct infringement in order to hold Apple and Google secondarily liable, an alleged direct infringer is not an indispensable party. *See, e.g.*, *Nexon Am., Inc. v. Cornwall*, 2012 WL 12893775, at *3 (C.D. Cal. Sept. 18, 2012) ("Copyright infringers are treated collectively as joint-tortfeasors, and as such, plaintiffs may elect to sue whichever tortfeasor they elect to sue"); *Rsch. In Motion, Ltd. v. LG Elecs. Mobilecomm U.S.A., Inc.*, 2008 WL 11336161, at *4 (C.D. Cal. Mar. 25, 2008) (a copyright "victim … may sue as many or as few of the alleged wrongdoers as he chooses"); *see also Malibu Media, LLC v. Whaley*, 2015 WL 12852966, at *2 (M.D. Fla. May 14, 2015) ("Joint tortfeasors are not necessary parties that must be joined in a single lawsuit.") (citing *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990)); *Duncanson v. Wine & Canvas IP Holdings LLC*, 2017 WL 5170958, at *7 (S.D. Ind. Feb. 9, 2017). Thus, even if the Arbitration Panel found that ███████████████████████████████████, that does not

---

[11] Defendants repeat this misconception throughout the Motion. *See, e.g.*, *id.* ("a stay is warranted because arbitration may ultimately eliminate most, if not all, of Plaintiffs' claims against the Non-Signatory Defendants related to *Free Fire*"); *id.* at 23 ("Because arbitration of Krafton's claims against Garena is 'likely to resolve factual questions coextensive with claims' concerning the distribution of *Free Fire* 'against nonparties to the arbitration agreement,' … .").

render Apple and Google's activity per se non-infringing and insulate them from secondary liability.

Defendants may argue that the Settlement Agreement did not just contain a ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████. But there is nothing in the Settlement Agreement to support such an argument (*see supra* § III(A)(2)), and inferring such a far-sweeping ████████ ████████████████████████████ would be contrary to the law, *cf. Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1127 (C.D. Cal. 2002), *aff'd*, 64 F. App'x 241 (Fed. Cir. 2003) ("An agreement must be sufficiently definite that a court can determine the parties' respective duties and whether they have been breached."). *See also Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1050–51 (9th Cir. 2020).

In any event, Garena has not asked the Arbitration Panel to decide whether ██ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. The Arbitration Panel also is not being asked to decide whether ███████████████ ████████████████████████████████████, which itself is a fact-intensive inquiry. *See, e.g.*, *Oracle Am., Inc.*, 971 F.3d at 1050–51 (a court is required to determine whether any activities exceed a claimed license in assessing an infringement claims). Because the 2022 SIAC Arbitration will not resolve any of these issues, which are core to the ████████████████████, a stay of Krafton's secondary infringement claims also is unwarranted.

### (b) Krafton Can Pursue its Claims Against YouTube Irrespective of the Arbitration

For the same reasons set forth above, Krafton's claims against YouTube also should not be stayed pending the 2022 SIAC Arbitration, as that proceeding will not decide whether ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

███████. For that reason, the 2022 SIAC Arbitration also will not decide whether
████████████████████████████████████████████████████████████
███.

Defendants also have no basis to seek the stay of Krafton's *BiuBiuBiu*-related
claim. As set forth above, *BiuBiuBiu* does not relate to Free Fire.  It is a live-action
infringing dramatization of Battlegrounds that was posted on YouTube by an entity
that does not appear to have any relationship to Garena. Defendants' primary
argument is that these claims "relate to many of the same allegedly copyrightable
elements of *Battlegrounds* as Plaintiffs' claims concerning *Free Fire*." Mot. at 27.
But again, there is no possibility that the 2022 SIAC Arbitration will determine the
████████████████████████████. Those issues will only be litigated in this
forum. Further, in the 2022 SIAC Arbitration, Garena does not claim that ███████
████████████████████████████████████████████████████████████
███████████████████████████████. Bae Decl. Ex.
17. Thus, where, as here, litigation will proceed "irrespective of the arbitration
outcome," a stay is not warranted. *Chen v*, 2020 WL 4561658, at *3.

### 2.   Krafton Would Be Prejudiced by a Stay

The prejudice to Krafton from a stay would be significant. As a threshold
matter, Defendants claim that "Plaintiffs have the burden of demonstrating that a stay
would prejudice them." Mot. at 26 (citing *RB Prods., Inc. v. Ryze Capital, LLC*, 2019
WL 5722205, at *2-3 (D. Nev. Nov. 4, 2019)).[12] This flips the burden on its head.
The law is clear that the *moving party* must meet "its burden to 'make out a clear case
of hardship or inequity in being required to go forward.'" *DeMartini v. Johns*, 693 F.
App'x 534, 538 (9th Cir. 2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255

---

[12] *RB Prods., Inc.* does not stand for this proposition. Rather, the court merely
observes that the plaintiff "has not shown how a stay on proceedings … would
prejudice Plaintiff." 2019 WL 5722205, at *2-3. Given the overlapping claims at issue
there, the court determined that a stay would help the plaintiff. Here, there are no
overlapping claims.

1  (1936)). As set forth below, Defendants have failed to make that showing. *See infra*

2  § III(B)(3).

3  Moreover, in arguing that Krafton would not be prejudiced, Defendants imply

4  that its claims are "doomed." Mot. at 27. Yet as set forth above, Krafton can pursue

5  its claims against the Non-Signatory Defendants irrespective of how the arbitration is

6  resolved, and there is a high likelihood that it will be able to pursue its claims against

7  Garena as well. *See supra* § III(A)(2). Where, as here, "the outcome of the arbitration

8  proceedings will [not] have any effect on this Court's consideration of" Krafton's

9  claims, a stay is not warranted. *See McLellan*, 2017 WL 4551484, at *5. Thus,

10  Defendants' manufactured specter of "doomed" claims is plainly insufficient to

11  mitigate the prejudice to Krafton.

12  In addition, while the arbitration is proceeding, Garena continues (and/or will

13  continue) to promote and develop its infringing Free Fire games, including by

14  periodically releasing new versions and updates. Thus, Krafton will be required to

15  prove that each successive release infringes its copyrights. That burden will be

16  compounded by the nearly ████████ it will take for the 2022 SIAC Arbitration to be

17  resolved and this Court can finally decide the question of the scope of Krafton's

18  copyrights and whether, and how, Free Fire infringes them. By contrast, if Krafton

19  were able to proceed now, the parties would adjudicate these issues sooner, which, if

20  Krafton prevails, likely will cause Garena to cease releasing successive infringing

21  versions, saving the parties the time and expense of litigating those issues. Courts

22  routinely deny stays because of prejudice to the plaintiff from potential lost or stale

23  evidence far outweighs any pleas of judicial efficiency. *See, e.g.*, *City of Almaty v.*

24  *Sater*, 2021 WL 4940304, at *7 (S.D.N.Y. Oct. 22, 2021) ("[E]xpenditure of

25  resources, and the continuing need to settle discovery disputes

26  lest evidence be lost during arbitration, weighs in favor of denying Sater's motion.");

27  *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C. 2002) ("A stay issued

28  prior to the completion of discovery is particularly problematic, as with time evidence

22

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY
LITIGATION / CASE NO. 2:22-CV-00209-GW-MRM

may be lost and memories fade. Because this Court ultimately must resolve the issues presented by this case, that resolution will occur in a timely manner.").

### 3. Defendants' Prejudice Arguments Are Unavailing

As set forth below, Defendants' arguments regarding their purported prejudice from proceeding with Krafton's claims in parallel to the 2022 SIAC Arbitration are unavailing and do not support issuing a stay.

First, the resolution of the 2022 SIAC Arbitration is not necessarily binding on the Court and/or would not preclude Krafton's claims against the Non-Signatory Defendants. Thus, the arbitration *will not* "ultimately eliminate most, if not all, of Plaintiffs' claims against the Non-Signatory Defendants related to Free Fire," as Defendants claim. Mot. at 25. Where, as here "the arbitration is not binding on the Court [and] the arbitrator's decision will not necessarily impact the outcome of the non-arbitrable claims," a stay is unwarranted. *See Chen*, 2020 WL 4561658, at *3; *see also Congdon v. Uber Techs.*, 226 F. Supp. 3d 983, 991 (N.D. Cal. 2016) (rejecting stay request where defendant "has not presented the Court with any authority indicating that the decision of the arbitrators ... would in some way bind the Court"); *DSMC, Inc.*, 273 F. Supp. 2d at 31 (same).

Second, not only would a finding as to a ███████████████████ ███████████████████████████████████████████, but the 2022 SIAC Arbitration also will not resolve ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████. Thus, Defendants are wrong to argue that "arbitration of Krafton's claims against Garena is likely to resolve factual questions coextensive with claims concerning the distribution of *Free Fire* against nonparties to the arbitration agreement." Mot. at 23 (internal quotation marks omitted). For this same reason, Defendants also are wrong that "allowing this litigation to proceed against the Non-Signatory Defendants before the 2022 SIAC Arbitration is concluded could produce

23

judgments inconsistent with the arbitration." *Id.* at 25.

Third, Defendants complain that allowing Krafton's claims to proceed against the Non-Signatory Defendants "would result in disparate treatment between Garena and the Non-Signatory Defendants 'solely on the basis of whether they signed an arbitration agreement,' which also militates in favor of a stay." *Id.* But the case from which Defendants quote—*Lee v. Tesla, Inc.*, 2020 WL 10573281, at *10 (C.D. Cal. Oct. 1, 2020)—involved *class action claims* brought by vehicle owners against Tesla.[13] The court found that "[p]roceeding in arbitration could … ensure that the class, as a whole, is treated similarly," as the "arbitrable and non-arbitrable claims are highly interdependent." *Id.*[14] There, the court was trying to avoid a scenario where some class members received different outcomes from others solely based on whether they signed an agreement to arbitrate when they purchased their allegedly defective vehicles. Here, no such factors are present, as Krafton is suing different *defendants* for different acts of infringement. Moreover, this case and others like it are distinguishable, as Defendants are not arguing that some of Krafton's claims against Garena are arbitrable. Rather, they are only seeking to compel the question of the ███████████████████████. Further, because ████████████████████████████████████████████████, it is entirely appropriate to treat the Non-Signatory Defendants differently from Garena on the question of the ███████████████. In all cases, a party who has settled legal claims is treated differently from parties who have not. Indeed, that is a core purpose of settling claims.

Finally, Garena argues that "the Court considering the scope of Krafton's

---

[13] Plaintiffs cite to *Bischoff v. DirectV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002), though the language they quote does not appear in that opinion.

[14] Defendants' reliance on *Parker v. New Prime, Inc.*, 2020 WL 6143596, at *5 (C.D. Cal. June 9, 2020) also is inapt, as there the court observed that the arbitrable and non-arbitrable claims "evolve out of the same facts." Here, by contrast, all of Krafton's claims are non-arbitrable. And, as set forth above, *see supra* § III(B), there is no "possibility of inconsistent judgments" as the arbitration will not resolve ████████████████████████████████.

copyrights … in a proceeding in which Garena is not participating … would prejudice Garena's rights to raise any appropriate arguments and defenses." Mot. at 26. But Defendants ignore that Apple, Google, and YouTube have an equal motivation to contest the "scope of Krafton's copyrights," including the extent to which Free Fire infringes those copyrights. Indeed, it is often the case that secondary infringers are the sole defendants in a copyright suit. *See, e.g.*, *Duncanson*, 2017 WL 5170958, at *7 (collecting cases). Moreover, the Non-Signatory Defendants are sophisticated corporate entities represented by counsel with significant intellectual property experience (and the same counsel represents both Apple and Garena). And, in any event, Krafton is free to coordinate with the Non-Signatory Defendants, or even intervene in this case (or withdraw the Motion), to the extent it wishes to participate in the litigation for the limited purposes of "rais[ing] any appropriate arguments and defenses" relating to "the scope of Krafton's copyrights." Nothing but their own refusal to do so would prevent that.

## C. Defendants Have Forfeited Waivable Defenses Under Rule 12

Defendants state—in a footnote—that they "do not intend to waive, nor are they waiving, any affirmative defenses under Fed. R. Civ. P. 12[,]" "reserve the right to make any motions under Rule 12 or raise these defenses in any answer," and "request that the stay include a stay of Defendants' obligation to file an answer or a responsive pleading" until "30 days from the date of the denial" of the Motion. Mot. at 22, n.13. Regardless of Defendants' subjective intent, the salient issue is what the law is. A motion to compel arbitration is a responsive pleading and, accordingly, Defendants have collectively forfeited their right to assert waivable defenses under Rule 12. As Defendants acknowledge, "[c]ourts in this Circuit … commonly treat motions to compel arbitration as preliminary motions under Federal Rule of Civil Procedure 12." *See KWB and Assocs., Inc. v. Marvin*, 2018 WL 5094927, at *9 (C.D. Cal. Apr. 18, 2018) (cited by Plaintiffs, Mot. at 10, n.7); *see also Lemberg v. LuLaRoe, LLC*, 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018). And Rule 12(h) makes clear

that waivable Rule 12(b) defenses are forfeited if not included in a responsive pleading. *See* Fed. R. Civ. P. 12(h); *see also Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 WL 6689572, at *2 (E.D. Cal. Oct. 30, 2015) (finding that a party must simultaneously assert 12(b) defenses with a motion to compel arbitration as the court must decide personal jurisdiction defenses before resolving a motion to compel arbitration). Here, Defendants collectively moved to *compel* arbitration, which required that they also assert any waivable defenses under Rule 12. They failed to do so, thereby waiving them.

Based on the foregoing, Defendants' request to file a Rule 12 motion asserting a waivable defense "30 days from the date of the denial" should be denied.

## IV.   CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion.

Dated: April 25, 2022                    Respectfully submitted,

**WINSTON AND STRAWN LLP**

By: */s/ David P. Enzminger*
David P. Enzminger (SBN: 137065)
denzminger@winston.com
Michael A. Tomasulo (SBN: 179389)
mtomasulo@winston.com
Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
333 S. Grand Avenue
Los Angeles, CA 90071
Telephone:   213-615-1700
Facsimile:   213-615-1750

*Attorneys for Plaintiffs*

*KRAFTON, INC. and PUBG SANTA MONICA, INC.*

1

## **CERTIFICATE OF SERVICE**

2

 I certify that a true and correct copy of the foregoing document has been

3

served on counsel of record who are deemed to have consented to electronic service

4

on April 25, 2022 via electronic filing using the Court's CM/ECF system.

5

*/s/ David P. Enzminger*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1