1   DURIE TANGRI LLP
    MARK A. LEMLEY (SBN 155830)
2   mlemley@durietangri.com
    HANNAH JIAM (SBN 312598)
3   hjiam@durietangri.com
    217 Leidesdorff Street
4   San Francisco, CA  94111
    Telephone:  415-362-6666
5   Facsimile:   415-236-6300

6   DURIE TANGRI LLP
    ALLYSON R. BENNETT (SBN 302090)
7   abennett@durietangri.com
    953 East 3rd Street
8   Los Angeles, CA 90013
    Telephone:  213-992-4499
9   Facsimile:   415-236-6300

10  Attorneys for Defendants
    SEA LIMITED, GARENA INTERNATIONAL I
11  PRIVATE LIMITED, GARENA ONLINE PRIVATE
    LIMITED, and APPLE INC.
12
    *(Additional counsel continued following page)*
13

14              IN THE UNITED STATES DISTRICT COURT
15
16              FOR THE CENTRAL DISTRICT OF CALIFORNIA

17                        WESTERN DIVISION

18  KRAFTON, INC. and PUBG SANTA          Case No. 2:22-cv-00209-GW-MRW
    MONICA, INC.,
19                                        **DEFENDANTS' REPLY
                                          MEMORANDUM IN SUPPORT OF
20              Plaintiffs,               THEIR MOTION TO COMPEL
                                          ARBITRATION AND STAY
21        v.                              LITIGATION**

22  APPLE INC., GOOGLE, LLC,              Date:  June 2, 2022
    YOUTUBE LLC, SEA LIMITED, MOCO        Time: 8:30 a.m.
23  STUDIOS PRIVATE LIMITED (F/K/A        Ctrm:  9D
    GARENA INTERNATIONAL | PRIVATE        Judge: Honorable George H. Wu
24  LIMITED), AND GARENA ONLINE
    PRIVATE LIMITED,
25
26              Defendants.

27          **REDACTED VERSION OF DOCUMENT PROPOSED
                   TO BE FILED UNDER SEAL**
28

MAYER BROWN LLP
A. JOHN P. MANCINI (NY SBN 4106159)
jmancini@mayerbrown.com
PAUL M. FAKLER (NY SBN 2940435)
pfakler@mayerbrown.com
SARA A. SLAVIN (NY SBN 5245196)
sslavin@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-506-2600

Attorneys for Defendants GOOGLE LLC AND
ITS WHOLLY-OWNED SUBSIDIARY, YOUTUBE, LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   ARGUMENT........................................................................................3

    A.    There is No Dispute that Krafton Must Arbitrate its Claims Against Garena or That Those Claims Should Be Stayed...........................................3

    B.    Garena Is Entitled to Arbitrate Whether ███████████████ ██████████████████, Including Apple, Google, and YouTube.................................................................................................4

        1.    Garena has asked the Arbitration Panel █████████████ ██████████.................................4

        2.    The Arbitrator, and not this Court, decides whether Garena may arbitrate whether ████████████████.................................5

        3.    Even if the Court decides arbitrability, it should find that the 2022 SIAC Arbitration Panel has the authority to decide ██████.......6

    C.    Plaintiffs' Claims Against Non-Signatory Defendants Should Be Stayed...............................................................................................11

        1.    The 2022 Arbitration Panel may order Krafton to dismiss all claims against the Non-Signatory Defendants.................................12

        2.    The Non-Signatory Defendants cannot be found liable if Garena is free to sell *Free Fire*.................................................................13

            a.    The Non-Signatory Defendants cannot be secondarily liable without a finding of direct infringement.......................13

            b.    Under the DMCA's safe harbor, the Non-Signatory Defendants cannot be direct infringers...................................15

        3.    Both Garena and the Non-Signatory Defendants Would Be Prejudiced by a Partial Stay .........................................................17

            a.    Garena would be prejudiced by a partial stay...........................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

          b.     The Non-Signatory Defendants would be prejudiced by a partial stay ................................................................18

          c.     Plaintiffs will suffer no prejudice ............................................20

    4.     A stay is warranted concerning Plaintiffs' claims against YouTube concerning *Biubiubiu* ........................................23

D.     Defendants Have Not Waived Certain Defenses Under Rule 12 .................24

III.     CONCLUSION ......................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)..........................................................................14

*Alter v. Walt Disney Co.*,
  No. CV 16-06644 SJO (Ex), 2016 WL 9455627 (C.D. Cal. Oct. 31, 2016) ...............20

*In re Am. Apparel, Inc. Shareholder Derivative Litig.*,
  No. CV 10-06576 MMM, 2012 WL 9506072 (C.D. Cal. July 31, 2012)..............18, 20

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*,
  622 F. Supp. 2d 825 (N.D. Cal. 2007)..........................................................23

*In re Apple iPhone Antitrust Lit.*,
  846 F.3d 313 (9th Cir. 2017)...............................................................24, 25

*Bischoff v. DirecTV, Inc.*,
  180 F. Supp. 2d 1097 (C.D. Cal. 2002) .........................................12, 15, 19

*Chen v. Bank of Am., N.A.*,
  No. CV 19-6941-MWF (SK), 2020 WL 4561658
  (C.D. Cal. Mar. 31, 2020) ..........................................................................12

*City of Almaty v. Sater*,
  2021 WL 4940304, (S.D.N.Y. Oct. 22, 2021) ....................................21, 22

*Cuviello v. City of Vallejo*,
  No. 16-cv-2584-KJM-KJN, 2020 WL 6728796 (E.D. Cal. Nov. 16, 2020)................25

*Dongguan Beibei Toys Indus. Co. v. Underground Toys USA, LLC*,
  No. 19-4993 DSF, 2020 WL 2065034 (C.D. Cal. Mar. 2, 2020) ................................25

*DSMC, Inc. v. Convera Corp.*,
  273 F. Supp. 2d 14, 31 (D.D.C. 2002).........................................................21

*Elec. Frontier Found. v. Off. of Dir. of Nat. Intel.*,
  No. C 08-01023 JSW, 2009 WL 773340 (N.D. Cal. Mar. 23, 2009) .........................22

*Hendrickson v. eBay, Inc.*,
  165 F. Supp. 2d 1082 (C.D. Cal. 2001)..........................................................15

*Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*,
    No. 2:19-cv-00527-JVS-ADS, 2019 WL 1449502
    (C.D. Cal. Mar. 26, 2019) .......................................................................24

*Lee v. Tesla, Inc.*,
    No. SACV20-00570JVS(KESx), 2020 WL 10573281
    (C.D. Cal. Oct. 1, 2020) .........................................................................19

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015)..................................................20

*RB Prods., Inc. v. Ryze Capital, LLC*,
    No. 3:19-cv-00105-MMD-WGC, 2019 WL 5722205
    (D. Nev. Nov. 4, 2019) ...........................................................................23

*Rivera v. UHS of Del., Inc.*,
    No. EDCV 15-00863, JGB (DTBx), 2018 WL 6332278,
    (C.D. Cal. July 13, 2018) .................................................................20, 21

*ROI Properties, Inc. v. Burford Cap. Ltd.*,
    No. CV-18-03300-PHX-DJH, 2019 WL 1359254 (D. Ariz. Jan. 14, 2019)..............5, 6

*Rosen v. eBay, Inc.*,
    No. CV 13-6801 MWF (Ex), 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ...............15

*Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula*
    *Horticulture, Inc.*, No. 17-cv-7076-VKD, 2018 WL 6268878
    (N.D. Cal. Nov. 29, 2018) .......................................................................25

*Sid Avery & Assocs., Inc. v. Pixels.com, LLC*,
    No. CV 18-10232-CJC(JEMx), 2021 WL 736258
    (C.D. Cal. Feb. 24, 2021) .......................................................................16

*Tovar v. Hosp. Housekeeping Sys., Inc.*, No. CV 09-03487 MMM (RNBx),
    2009 WL 10672526, (C.D. Cal. Nov. 2, 2009)..................................22, 23

*UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*,
    718 F.3d 1006 (9th Cir. 2013)................................................................16

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012)......................................................................16

**Statutes**

17 U.S.C. § 512 ...........................................................................................15, 16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...........................................................................25

Fed. R. Civ. P. 12(c) ...............................................................................25

Fed. R. Civ. P. 19...................................................................................19

S. Rep. No. 105–190 (1998)...................................................................15

DEFENDANTS' REPLY MEMORANDUM ISO THIER MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

# I.   INTRODUCTION

This lawsuit is yet another attempt by Krafton to get out of a ▮▮▮▮▮▮▮▮▮▮▮

settlement agreement that it signed over three years ago.  The agreement resolved ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 46-7 (Singapore Complaint) ¶¶

19, 27(b). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt.

No. 46-10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And the plain language of the agreement

makes clear that the parties accepted and agreed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as it has since *Free Fire* first

launched in 2017.  Indeed, Krafton never objected to those continued distributions because

it understood that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Krafton now seeks to upend

the status quo and circumvent arbitration via a commercially absurd interpretation of the

contract: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That is baseless.  But the Court need not even consider

this issue, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Plaintiffs do not dispute that Krafton's claims against Garena should be compelled to

arbitration and stayed pending that arbitration.  And Defendants do not dispute that Apple,

Google, and YouTube will not participate in that arbitration.  So the only remaining issue

1   left for the Court is whether Plaintiffs' claims against the Non-Signatory Defendants should

2   be stayed pending Krafton's arbitration with Garena.  Plaintiffs maintain that their claims

3

4   against the Non-Signatory Defendants should proceed because (1) the pending arbitration

5   has no bearing on Plaintiffs' claims against the Non-Signatory Defendants; and (2) ███████

6

7   ████████████████████  would prejudice Plaintiffs.  Plaintiffs are wrong.

8        If Garena prevails in the pending arbitration, the arbitrators' ruling will ████████

9   ██████████████████████████████████.  Garena's ████████████████

10  ████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████  Mot. at 8, 24–25; Dkt. No. 46-18 (Notice of

14  Arbitration) at 9.  And Garena's recently filed ████████████████████████

15

16  ████████████████████████████████████████████████████

17  ██████████████████  Bennett Reply Decl. Ex. 1 (2022 SIAC Arbitration

18  Statement of Claim) ¶ 172(b).  The filings in the 2022 SIAC Arbitration flatly contradict

19

20  Plaintiffs' representations that the outcome "will not affect any claims against Apple,

21  Google, and YouTube."  Opp. at 1.

22       Because Plaintiffs' *Free Fire*-related claims against the Non-Signatory Defendants

23

24  are inextricably connected to the claims, issues, and outcome of the pending arbitration, the

25  Court should stay the rest of the case until the arbitration panel rules.  Even if it does not

26

27  compel dismissal, the arbitration will make factual and legal determinations that are

28  interdependent with issues at the heart of this case, and litigating those issues concerning

*Free Fire* without Garena would prejudice both Garena and the Non-Signatory Defendants. The Court should also stay Garena's related claims against YouTube concerning *Biubiubiu* because the scope of Krafton's copyrights is a common issue which should not be litigated piecemeal. A stay of the entire action would therefore promote judicial economy and minimize hardship to all parties. Krafton waited nearly four years to bring this lawsuit. Krafton can wait another year to avoid potentially inconsistent or duplicative litigation.

## II.   ARGUMENT

### A.   There is No Dispute that Krafton Must Arbitrate its Claims Against Garena or That Those Claims Should Be Stayed

Defendants' Motion to Compel Arbitration and to Stay Litigation ("Motion") asks the Court for two things: (1) an Order to compel Krafton to arbitrate with Garena in the 2022 SIAC Arbitration; and (2) an Order to stay litigation pending resolution of the arbitration with respect to all claims against all Defendants. *See* Defendants' Notice of Motion at 1. Plaintiffs' opposition brief does not dispute that Krafton must arbitrate whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or that Plaintiffs' claims against Garena should be stayed pending that arbitration. Opp. at 3 n.1. This Court thus need only determine whether the claims against the Non-Signatory Defendants should be stayed.

Plaintiffs have devoted more than nine pages of their brief to arguing that Krafton cannot be compelled to arbitrate against the ***Non-Signatory Defendants***. Opp. at 8–17. But that is relief that no one has sought; the Non-Signatory Defendants do not intend to join or initiate arbitration proceedings in Singapore against Krafton. Defendants sought an order

to compel Krafton to arbitrate against *Garena*, not the Non-Signatory Defendants.  *See* Mot.

at 10–22.  The Non-Signatory Defendants seek only a stay of these proceedings pending

the outcome of that potentially dispositive arbitration.  Because the parties agree on this

issue, Plaintiffs' argument is inapposite and moot.

> **B.    Garena Is Entitled to Arbitrate Whether ▮▮▮▮▮▮▮▮▮▮**
> **▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Including Apple, Google, and YouTube**
>
> **1.    Garena has asked the Arbitration Panel ▮▮▮▮▮▮**
> **▮▮▮▮▮▮▮▮▮**

Plaintiffs assert that the pending arbitration will address only whether the Settlement

Agreement barred Krafton's claims against Garena and not the Non-Signatory Defendants.

Opp. at 1, 2, 18.  That is incorrect.

Garena's  Notice  of  Arbitration ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dkt. No. 46-18 (Notice of Arbitration) at 9 (emphasis added).  And Garena's Statement of

Claim, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮   The Statement of Claim states:

DEFENDANTS' REPLY MEMORANDUM ISO THIER MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW



Bennett Reply Decl. Ex. 1 (2022 SIAC Arbitration Statement of Claim) ¶¶ 161, 172(b)–(c)

(emphasis added).

        **2.**       **The Arbitrator, and not this Court, decides whether Garena may arbitrate whether** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

      Krafton claims that this Court is the correct authority to consider the question of arbitrability.  Opp. at 8–16.  It is not.  The parties entrusted determinations of the scope of arbitrability to the arbitration panel.  The arbitration will ▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇  As Plaintiffs admitted, Garena and Krafton "incorporated the SIAC rules in the Settlement Agreement, which delegates the question of arbitrability to the arbitrators."  Opp. at 8.  Thus, there is a "clear and unmistakable agreement" to arbitrate the issue of arbitrability.  *ROI Properties, Inc. v. Burford Cap. Ltd.*,

DEFENDANTS' REPLY MEMORANDUM ISO THIER MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

1  No. CV-18-03300-PHX-DJH, 2019 WL 1359254, at *4 (D. Ariz. Jan. 14, 2019).  Krafton

2  should be compelled to arbitrate whether █████████████████████████████████

3

4  ████████████████████████████████████████████████████████ should be decided

5  in arbitration.

6           **3.     Even if the Court decides arbitrability, it should find that the 2022**

7                    **SIAC Arbitration Panel has the authority to decide** ████████

8                    ██████████████████████████████████████████████

9           Even if the Court did consider the issue of the scope of the arbitration for itself, the

10  plain language of the Settlement Agreement demonstrates that the question of █████

11

12  ██████████████████████████████████████████████████████████ is indeed

13  arbitrable and at issue in the pending arbitration between Krafton and Garena.

14          First, Garena and Krafton disagree on the scope of the Settlement Agreement.  This

15  is in and of itself a "dispute, controversy, claim or difference of any kind . . . in connection

16

17  with this Agreement."   Dkt. No. 46-8 (Settlement Agreement) ¶ 7.2.   Because the

18  Settlement Agreement states that such disputes "shall be referred to and finally resolved by

19

20  arbitration," Garena's claims of breach—both as to Krafton's suit against Garena and its

21  claims against the Non-Signatory Defendants—are properly resolved in arbitration.  *Id.*

22          Second, Krafton's claims against the Non-Signatory Defendants are covered by the

23  Settlement Agreement at least because ██████████████████████████████████

24

25  ████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████

27

28  ████████████████████████████████████ Dkt. No. 46-8 (Settlement Agreement)

1  ¶ 3.2.  Krafton argues that the Settlement Agreement ████████████████████

2  ██████████████████████████████  But the terms of the Settlement Agreement say

3  otherwise.  For example, as Garena explained in its Statement of Claim in the pending

4

5  arbitration, Krafton ████████████████████████████████████████████████

6  ████████████████████  Bennett Reply Decl. Ex. 1 (2022 SIAC Arbitration Statement

7  of Claim) ¶ 92(e),(h).

8  ████████████████████████████████████████████████████████████████

9

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████  Dkt. No. 46-8 (Settlement

12 Agreement) ¶ 3.2 ████████████████████████████████████████████████

13 ████████████████████████████████████████  (emphasis added)).

14

15    It is not surprising that ████████████████████████████████████████

16 ███████████  Settlement  Agreements  frequently ████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████  As Garena explained in

19 its Statement of Claim in the pending 2022 SIAC Arbitration:



DEFENDANTS' REPLY MEMORANDUM ISO THIER MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

[REDACTED]

Bennett Reply Decl. Ex. 1 (2022 SIAC Arbitration Statement of Claim) ¶ 92(h).

Other provisions in the Settlement Agreement also demonstrate that [REDACTED]

[REDACTED]

[REDACTED] For example, [REDACTED]

[REDACTED]

[REDACTED] Dkt. No. 46-8 (Settlement Agreement) ¶¶ 1.2.1, 1.2.2 (emphasis added). But

[REDACTED]

[REDACTED]. *Id.*, ¶ 2.2. As Garena explained

in its Statement of Claim in the arbitration, that underscores that Krafton [REDACTED]

[REDACTED]

[REDACTED]. Bennett Reply Decl. Ex. 1 (2022 SIAC

Arbitration Statement of Claim) ¶ 104.

Krafton's 2018 Singapore Complaint and pre-litigation conduct further demonstrate

that the parties intended a [REDACTED]

[REDACTED] including those relating to the Non-Signatory Defendants. Dkt. No.

46-8 (Settlement Agreement) ¶ B. In the 2018 Singapore Litigation, as here, Krafton

claimed that it owned the copyright in *Battlegrounds* "around the world," and that Garena

distributed *Free Fire* through App Store and Play Store—the very acts that are the supposed

basis for Apple and Google's liability.  *Compare* Dkt. No. 46-7 (Singapore Complaint) ¶ 2, 19, Schedule*, with* Compl. ¶¶ 7–8, 75–106.   There, as here, the allegedly infringed copyrights are based on Krafton's *Battlegrounds*.  *Compare* Bae Decl. Ex. 6 (Singapore Complaint) ¶¶ 2–10*, with* Compl. ¶¶ 38–73.  Both suits were preceded by DMCA takedown notices sent by Krafton's U.S. counsel to service providers based on distribution of *Free Fire* on their app marketplaces.  *Compare* Dkt. No. 46-5 (January 16, 2018 Email from App Store to Moco Studios)*, with* Dkt. No. 46-14 (December 23, 2021 Email from App Store to Moco Studios) *and* Dkt. No. 46-13 (January 6, 2022 Email from Play Store to Garena).  And the Singapore lawsuit sought relief against distribution through the App Store and Play Store and sought the destruction of all copies of *Free Fire*, which would have had the effect of precluding Garena from publishing, distributing, or communicating *Free Fire* worldwide (i.e. through Apple, Google, or YouTube).  Dkt. No. 46-7 (Singapore Complaint) ¶ 27(b) (asking the Singapore court to order Garena to deliver or destroy *all* copies of *Free Fire*, which was globally available through App Store and Play Store).   The Settlement Agreement █████████████████████████████████████████████████████████████████ ████████████████████████████████████████.

Moreover, if Krafton truly believed that the Settlement Agreement ███████████████ ██████████████████████████████████████████████████████████, then there is no explanation for why Plaintiffs did not sue Garena or any third party in relation to *Free Fire*, in any other country, including the United States, for years.  Krafton's U.S. counsel sent its first takedown notice to Apple on January 6, 2018.  Dkt. No. 46-5 (January 16, 2018 Email

from App Store to Moco Studios).  ████████████████████████████████████

████████████████████████████████████, Dkt. No. 46-10 (October 12, 2020 SIAC Final

Award), and as Krafton's opposition notes, "[i]n 2020 alone . . . distribution of *Free Fire*

by Apple and Google generated hundreds of millions of dollars," Opp. at 14.  Krafton,

however, did not file a lawsuit in the U.S. or against Non-Signatory Defendants until now.

     In fact, Plaintiffs' own position in the Complaint betrays the fact that they know the

Settlement Agreement ████████████████████████████.  In the Complaint, which

was drafted by lawyers who were aware of the Settlement Agreement, Krafton claims

damages against Garena for copyright infringement for the period from April 13, 2019 (*i.e.*,

one day after the parties entered into the Settlement Agreement) to the present.  Compl.

¶¶ 106, 194–198; Dkt. No. 46-8 (Settlement Agreement).  It is not disputed that Garena has

been publishing and distributing *Free Fire* in the United States through App Store and Play

Store since December 2017.  The fact that Krafton is not claiming damages from Garena

from December 2017 to April 12, 2019 (*i.e.*, the date the parties entered into the Settlement

Agreement) is compelling evidence that Krafton accepts that ████████████████████

████████████████████████████████████████████████████████████[1]

     In addition, Krafton's reliance on the ████████████████ as evidence of a narrow

settlement agreement is unavailing.  Opp. at 13–14.  There is no dispute that Krafton thinks

it should have been paid more and regrets signing the contract; Krafton tried (and failed) to

---

[1] In any event, the parties expressly agreed to ████████████████████████████████
Dkt. No. 46-8 (Settlement Agreement) ¶ 5.2.

back out of the deal immediately after it was signed.  Bae Decl. Ex. 9 (October 12, 2020

SIAC Final Award).  But Krafton's dissatisfaction with the deal that it made cannot override

the plain language of the agreement, which ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████.  All of Plaintiffs' current claims of copyright

infringement with respect to *Free Fire* are within the scope of the arbitration ███████████

██████████████████████████████████████.  *See* Mot. at 20–21.

        Finally, it bears emphasizing that while all this evidence indicates that Krafton did in

fact ███████████████████████████████████ this Court need not and should not

resolve that question on the merits.  At a bare minimum, the evidence shows that there is a

disputed question as to the scope of the Settlement Agreement and whether it █████████████

█████████████████████████████████.  That there is a dispute is enough to compel

resolution of that dispute before the Arbitration Panel.  Mot. at 18–19.  And because

████████████████████████████████████████████████████████████████████████ is at issue in

the arbitration, the entire case must be stayed pending the result of that arbitration.

    **C.**    **Plaintiffs' Claims Against Non-Signatory Defendants Should Be Stayed**

        Because the question of whether ███████████████████████████████████████████

███████ is properly before the arbitration panel, this Court should exercise its discretion to

stay the claims against both Garena and the Non-Signatory Defendants.  And even if the

2022 SIAC Arbitration does not resolve *all Free Fire*-related claims against both Krafton

and the Non-Signatory Defendants, if Garena prevails, it will unquestionably affect the

scope of any claims that remain.  In addition, in comparison to Defendants, the prejudice that Plaintiffs would suffer absent a stay is *de minimis*.  Finally, the Court should stay Plaintiffs' claims against YouTube concerning *Biubiubiu*, pending a judicial determination of whether Plaintiffs' *Free Fire* claims against the Non-Signatory Defendants may proceed, because such a stay will promote judicial economy and minimize hardship to all parties.

1.    **The 2022 Arbitration Panel may order Krafton to dismiss all claims against the Non-Signatory Defendants**

If the arbitration panel agrees with Garena that the Settlement Agreement: (1) ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████ or (2) ██████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████, Plaintiffs will have to dismiss *all* of their *Free Fire*-related claims (including claims against the Non-Signatory Defendants).  And since those claims encapsulate all but the *BiuBiuBiu*-related claim in the present litigation, which should also be stayed as a matter of judicial discretion, *infra* Section II.C.4., this Court should exercise its discretion and stay the entire case.  *See, e.g.*, *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2002) (granting a stay where there are "similarity of the issues of law and fact" and "potential for inconsistent findings absent a stay"); *cf. Chen v. Bank of Am., N.A.*, No. CV 19-6941-MWF (SK), 2020 WL 4561658, at *3 (C.D. Cal. Mar. 31, 2020) (parallel proceedings would not be a "waste of judicial resources" because the parties would "litigate the non-arbitrable claims

irrespective of the arbitration outcome").

     **2.**    **The Non-Signatory Defendants cannot be found liable if Garena is free to sell *Free Fire***

In any event, even if Garena turns out to be wrong about the arbitration encompassing ████████████████████████████████████████████, the arbitration will still make factual and legal determinations that affect Krafton's claims against the Non-Signatory Defendants, and the case should be stayed for that reason. All claims against the Non-Signatory Defendants as *indirect* infringers are premised on whether Garena's *Free Fire* directly infringes Krafton's alleged copyrights. The arbitration will determine whether ████████ ███████████████████████████████████████████████████████ ████████████████████████████████████ As to direct liability, the Non-Signatory Defendants cannot be liable as direct infringers as a matter of law, but, in any event, the fact that the secondary claims are likely to be affected by the arbitration is sufficient for a stay.

     a.    **The Non-Signatory Defendants cannot be secondarily liable without a finding of direct infringement**

Plaintiffs' claims against the Non-Signatory Defendants for indirect infringement or "secondary liability" all require proof of direct infringement by Garena. And Garena cannot be a direct infringer because the Settlement Agreement ████████████████████ ██████████████████████████████████

The Settlement Agreement unquestionably permits Garena to continue to distribute *Free Fire*. *See supra* II.B.3. And it is well established that if the distribution of a product

is not infringing, acts by third parties that help facilitate that distribution cannot be infringing either. *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement . . . .").

Krafton tries to avoid these basic principles of copyright law and facts related to the Settlement Agreement by taking the remarkable position that even though Garena is free to distribute *Free Fire*, Krafton can sue anyone who acquires or further distributes the game from it for copyright infringement. It relies on a line of cases that says, correctly, that plaintiffs can sue joint tortfeasors without joining all of them together. But Krafton's argument assumes that the distribution of *Free Fire* is an act of copyright infringement— in other words, that there is a tort in which multiple parties are participating. Here, there is no infringement and therefore no tort. ███████████████████████████

███████████████████   And because that distribution is lawful, acts dependent on that initial distribution (resale, further distribution, etc.) are similarly lawful. With respect to the secondary liability claims, facilitating Garena's lawful distribution or hosting gameplay videos based on a lawfully distributed game are the only things Apple, Google, and YouTube are accused of doing. As the Ninth Circuit has made clear, there can be no secondary liability without proof of an act of direct infringement. *A&M Records*, 239 F.3d at 1013 n.2. And ████████████████████████████████

████████████████████████████.

At the very least, the scope of that agreement and the rights it provides Garena is a

central issue in the 2022 SIAC Arbitration, which Krafton concedes must be resolved by the arbitrators.  Until it is resolved, the question of whether there is an act of direct infringement—and therefore whether it is even possible for there to be secondary infringement—cannot be answered.  This Court should stay any such claims pending the result of the arbitration.

   b. **Under the DMCA's safe harbor, the Non-Signatory Defendants cannot be direct infringers**

   That the secondary claims will be affected by the arbitration is sufficient on its own to grant a stay, even if the direct claims continue.  *See Bischoff*, 180 F. Supp. 2d at 1115. But, in any event, allowing this litigation to proceed on the narrow issue of direct liability for the Non-Signatory Defendants would also be futile because these parties are sheltered from liability under the statutory framework of the Digital Millennium Copyright Act ("DMCA").  The DMCA was designed to "clarif[y] the liability faced by service providers who transmit potentially infringing material over their networks," S. Rep. No. 105–190 at 2 (1998).  17 U.S.C. § 512 creates safe harbors that protect online service providers if they satisfy certain "conditions of eligibility." 17 U.S.C. §§ 512(i), (k)(1)(B).

   Apple and Google provide online marketplaces for third-party mobile applications. *See* Compl. ¶¶ 113–124.  Such online marketplaces in which third parties may offer products for sale have consistently been held to be internet service providers within the meaning of the DMCA.  *See, e.g.*, *Rosen v. eBay, Inc.*, No. CV 13-6801 MWF (Ex), 2015 WL 1600081, at *7–*14 (C.D. Cal. Jan. 16, 2015); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1088-94 (C.D. Cal. 2001).

Indeed, Plaintiffs' Complaint contains many of the facts required to establish this. Plaintiffs' Complaint incorporates by reference its DMCA takedown notices to Non-Signatory Defendants.  Compl. ¶¶ 145–146.  Those notices show that the Non-Signatory Defendants had designated agents to receive such notices and that the Non-Signatory Defendants had implemented notice and takedown procedures and policies.  Apple and Google followed those procedures by forwarding the notices to Garena, which then sent counternotifications disputing the claim of infringement.  17 U.S.C. §§ 512(g)(2)–(3); Dkt. No. 46-1 ¶¶ 19–22.  Because of those counter-notices, Apple and Google do not lose safe harbor eligibility despite that *Free Fire* remains available.  17 U.S.C. § 512(g)(2)(B).

The sole fact that Plaintiffs have alleged to show that the Non-Signatory Defendants do not qualify for the safe harbor provisions of the DMCA is that "Apple and Google each maintain the right to remove apps from their respective platforms, for any reason, including but not limited to claims that the apps are infringing."  Compl. ¶ 184.  Courts have consistently rejected the theory that because an ISP removes *some* content based on allegations of infringement, it therefore has the right and ability to control the allegedly infringing activity such that it does not qualify for the safe harbor provisions of the DMCA. *See, e.g.*, *Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, No. CV 18-10232-CJC(JEMx), 2021 WL 736258, at *3 (C.D. Cal. Feb. 24, 2021); *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1030–31 (9th Cir. 2013) (explaining that the "right and ability to control" requires "more than the ability to remove or block access to materials posted on a service provider's website"); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19,

38 (2d Cir. 2012) (same).  Accordingly, Plaintiffs' claims for direct infringement against the Non-Signatory Defendants will be barred by the DMCA.

### 3. Both Garena and the Non-Signatory Defendants Would Be Prejudiced by a Partial Stay

#### a. Garena would be prejudiced by a partial stay

Plaintiffs do not dispute that Garena would be prejudiced if it were forced to litigate this matter on the merits while the 2022 SIAC Arbitration proceeds.  *See* Opp. at 17–18. But Garena would also be prejudiced by allowing Plaintiffs' claims to proceed in this Court against the Non-Signatory Defendants while the arbitration proceeds.  Doing so would necessarily involve a legal determination—in Garena's absence—of whether Garena's *Free Fire* infringes Plaintiffs' copyrights.  As a result, Garena would be stuck between a rock and a hard place: Garena would either be forced to intervene and litigate this case on the merits, obviating its undisputed right to arbitration and a stay, or to take on the role of a passive bystander in a case that could result in findings that affect Garena's intellectual property.

First, as noted above, the arbitrator may ultimately decide that ██████████████ ██████████████.  Bennett Reply Decl. Ex. 1 (2022 SIAC Arbitration Statement of Claim) ¶¶ 78, 92(e), (h), 94(f), 159, 161, 172(b).  Concurrent litigation in this Court against the Non-Signatory Defendants in relation to *Free Fire* would therefore deprive Garena of the principal benefit to Garena of the Settlement Agreement and permit Plaintiffs to make an end-run around the Settlement Agreement, including their agreement to arbitrate.

Second, the merits of Plaintiffs' *Free Fire*-related claims against the Non-Signatory

Defendants necessarily require determining whether *Free Fire* infringes Plaintiffs' copyrights. If *Free Fire* is not infringing, there is nothing the Non-Signatory Defendants could be held liable for. *See supra* II.C.2.a.

Third, Plaintiffs' suggestion that Garena will not be prejudiced because "Apple, Google, and YouTube have an equal motivation to contest the 'scope of Krafton's copyrights,'" Opp. at 25, is misplaced. Garena has an obvious interest in any legal determination concerning its games. Further, as Plaintiffs point out repeatedly in their Complaint, Garena has indemnity agreements with Non-Signatory Defendants Apple and Google, Compl. ¶¶ 116–117, and therefore has a material stake in the outcome of Plaintiffs' claims pertaining to *Free Fire*.

Last, Plaintiffs' suggestion that Garena could intervene in this litigation should the Court grant a partial stay, Opp. at 25, is yet another attempt to deprive Garena of the benefit of the arbitration.

### b. The Non-Signatory Defendants would be prejudiced by a partial stay

The Non-Signatory Defendants would also be prejudiced by a partial stay as to Garena alone. First, as discussed above, the pending 2022 SIAC Arbitration between Garena and Plaintiffs may fully dispose of Plaintiffs' *Free Fire* claims against the Non-Signatory Defendants. As Defendants argued in their opening brief, potential narrowing of the issues in this litigation is sufficient for this Court to exercise its discretionary power to stay the proceedings. *See In re Am. Apparel, Inc. Shareholder Derivative Litig.*, No. CV 10-06576 MMM (RCx), 2012 WL 9506072, at *43 (C.D. Cal. July 31, 2012) ("The

18

existence of another proceeding that may have a substantial impact on a pending case is a particularly compelling reason to grant a stay." (internal citation omitted)).  Both the parties and the Court would avoid wasting time and resources needed to brief the same issues twice. Although Plaintiffs argue that the Settlement Agreement ███████████████████████ ███████████████████████████████, that question is for the arbitrator to decide.

      Second, Plaintiffs argue that their claims against the Non-Signatory Defendants can proceed in Garena's absence, citing *Duncanson v. Wine & Canvas IP Holdings LLC*, No. 1:16-cv-00788-SEB-DML, 2017 WL 5170958, at *7 (S.D. Ind. Feb. 9, 2017).  But that case merely asks whether Garena would be an indispensable party for Rule 19 purposes. Whether Garena is an indispensable party is irrelevant to whether the Non-Signatory Defendants would be prejudiced by having to litigate claims that may be significantly narrowed—if not disposed of entirely—by an ongoing arbitration.  The Non-Signatory Defendants will be prejudiced by being forced to fight a proxy war between Plaintiffs and Garena, the creator of the allegedly infringing work. [2]

      It is "efficient for [the Court's] docket and the fairest course for the parties to enter a stay" of this action "pending resolution of independent proceedings which bear upon the

---

[2] Plaintiffs' opposition notes that Defendants' motion incorrectly cites to *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1115 (C.D. Cal. 2020) instead of *Lee v. Tesla, Inc.*, No. SACV20-00570JVS(KESx), 2020 WL 10573281, at *10 (C.D. Cal. Oct. 1, 2020), for the phrase, "solely on the basis of whether they signed an arbitration agreement."  Opp. at 24 n.13.  This was an inadvertent typo and *Lee v. Tesla*, which is cited earlier in the motion, is the correct case for that quote.  But the quote itself and the legal proposition it supports are accurate statements of the law.

case." *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1156 (N.D. Cal. 2015) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir.1979)).  "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.*  Indeed, the fact that Non-Signatory Defendants would be forced to litigate is enough to show prejudice where, as here, Plaintiffs have failed to show that they would be prejudiced by a stay.  *Alter v. Walt Disney Co.*, No. CV 16-06644 SJO (Ex), 2016 WL 9455627, at *2 (C.D. Cal. Oct. 31, 2016) ("Where the opponent does not adduce evidence that it will be harmed by a stay . . . , courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship." (internal citation omitted)).

c.   **Plaintiffs will suffer no prejudice**

This Court should also grant the stay as to all Defendants because Plaintiffs would not suffer "undue prejudice" or "a clear tactical disadvantage" from the stay.  *In re Am. Apparel*, 2012 WL 9506072, at *43; *see also Alter v. Walt Disney Co.*, 2016 WL 9455627, at *2 (finding that the balance of the hardships factor favored the movant even where movant did "not argue it will face hardship or inequity if this action is not stayed" because the nonmovant "failed to demonstrate a 'fair possibility' of prejudice").  Plaintiffs argue in their Opposition that they would be prejudiced by the stay.  However, Plaintiffs point to only garden-variety delay in resolution of their claims and a desire to "adjudicate these issues sooner," Opp. at 22, which courts in this district have held "does not constitute undue prejudice as it is inherent in all proceedings."  *Rivera v. UHS of Del., Inc.*, No. EDCV 15-

00863 JGB (DTBx), 2018 WL 6332278, at *4 (C.D. Cal. July 13, 2018).  This is particularly true when any delay results from Plaintiffs' undisputed agreement to arbitrate.

Plaintiffs' reliance on two out-of-circuit cases for the proposition that the delay that ordinarily results from a stay is sufficient to show undue prejudice is misplaced.  In *DSMC, Inc. v. Convera Corp.*, the court determined that a stay would not narrow any issues before the court because the movant had provided no argument concerning the impact of the arbitration's factual and legal conclusions on the litigation.  273 F. Supp. 2d 14, 31 (D.D.C. 2002).  Here, Defendants have explained at length why a ruling in favor of Garena in the Singapore Arbitration would have ██████████████████████████████████████ ████████████████████████████.  *See supra* II.B.3; *see also* Mot. at 24.  Moreover, the duration of the pending arbitration in *DSMC* was of an indeterminate length and could have caused the litigation "to languish for years" on the court's docket.  *DSMC*, 273 F. Supp. 2d at 31.  That is not the case here, where ████████████████████████████ ████████████████████████████ Dkt. No. 61-3 (Procedural Order).

In *City of Almaty v. Sater*, the movant sought a stay of proceedings against him where the party in arbitration did not, as here, ████████████████████████████ ████████████████████████████████████████████████████████ ██ No. 19-cv-2645 (AJN), 2021 WL 4940304, at *6 (S.D.N.Y. Oct. 22, 2021).  The court in *City of Almaty* also pointed to statements by the arbitrator agreeing with the court's rulings in finding that the risk of inconsistent results was minimal, and that the movant had taken inconsistent positions on whether the results of that arbitration would be binding on

him.  *Id.* at \*7.  Plaintiffs have pointed to no similar evidence here.  Moreover, at the time of the motion to stay in *City of Almaty*, the litigation was well into discovery.  *Id.* Conversely, this case is in the earliest stages of litigation, which weighs in favor a stay. *Tovar v. Hosp. Housekeeping Sys.*, Inc., No. CV 09-03487 MMM (RNBx), 2009 WL 10672526, at \*4 (C.D. Cal. Nov. 2, 2009).  And Krafton's concession that the central part of the case will have to be stayed pending arbitration further undermines Krafton's assertion of prejudice.  *See Elec. Frontier Found. v. Off. of Dir. of Nat. Intel.*, No. C 08-01023 JSW, 2009 WL 773340, at \*2 (N.D. Cal. Mar. 23, 2009) ("When the extent of damage endured by the non-moving party is magnified by the possibility that adverse 'evidence will be obtained, or rulings made, as a result of' the other proceedings, the damage is not considered sufficient to deny a request for a stay.") (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962)).

Moreover, Plaintiffs' newfound sense of urgency is undercut by Krafton's past actions.  *Free Fire* has been available through the App Store and Play Store since it first launched worldwide in late 2017.  Dkt. No. 46-1 ¶¶ 5, 15.  It was the most downloaded mobile "battle royale" game worldwide in 2019, 2020, and 2021, *id.*, ¶ 6.  And, as Plaintiffs' opposition recognizes, *Free Fire* has enjoyed substantial financial success.  Opp. at 5.

Krafton knows all this.  Its U.S. counsel first sent a takedown notice to Apple more than four years ago, in January 2018.  But Krafton did not sue Apple at that time.  Nor did Krafton sue *anyone* (despite its narrow interpretation of the Settlement Agreement) in 2019, when Garena, Apple, and Google all continued to distribute *Free Fire* even though Krafton

claimed it had not reached a settlement at all.  And it did not sue in 2020, after the 2019

SIAC Arbitration ████████████████████, even though Krafton now claims the

Settlement Agreement did not authorize this continued distribution.  Altering the status quo

that has existed between the parties for four years would thus impose far greater hardship

and inequity on Defendants than the possible damage to Plaintiffs from maintaining that

status quo by granting the stay.  *See Tovar*, 2009 WL 10672526, at *4.

> **4.     A stay is warranted concerning Plaintiffs' claims against YouTube concerning *Biubiubiu***

A stay of Plaintiffs' claims against YouTube concerning *Biubiubiu*, pending the

tribunal's determination of whether ██████████████████████████

████████████████, will promote judicial economy and minimize hardship to all

parties.  Plaintiffs allege that *Biubiubiu* and *Free Fire* infringe many of the same protectable

elements of *Battlegrounds,* meaning that the copyrightability of various elements of

*Battlegrounds* will necessarily be a key issue in litigating Plaintiffs' claims concerning both

*Free Fire* and *Biubiubiu.*  A stay will promote "economy and efficiency" by preventing

piecemeal litigation of the copyrightability issues in this Court.  *Amisil Holdings Ltd. v.

Clarium Cap. Mgmt.,* 622 F. Supp. 2d 825, 842 (N.D. Cal. 2007) (noting that

"[c]onsiderations of economy and efficiency" counsel in favor of a stay (alteration in

original) (quoting *Newton v. Neumann Caribbean Int'l, Ltd.,* 750 F.2d 1422, 1427 (9th Cir.

1985)).  *See also RB Prods., Inc. v. Ryze Capital, LLC,* No. 3:19-cv-00105-MMD-WGC,

2019 WL 5722205, at *3 (D. Nev. Nov. 4, 2019) (granting stay to avoid "expend[ing]

unnecessary resources on duplicative litigation that will involve nearly identical evidence

to prove overlapping claims" (internal citation omitted)).

Unable to refute these arguments, Plaintiffs instead "responds" to arguments that YouTube *did not advance*. YouTube has not argued that the 2022 SIAC Arbitration will somehow determine its liability—if any—in connection with *Biubiubiu* or that the 2022 SIAC Arbitration will result in factual determinations relevant to Plaintiffs' claims concerning *Biubiubiu*. Nor has YouTube argued that the Settlement Agreement bars these claims. Rather, the Court should stay Plaintiffs' claims concerning *Biubiubiu* as a matter of judicial economy and efficiency. There is no reason for Plaintiffs' claims concerning *Free Fire* and *Biubiubiu* to be litigated piecemeal, should the 2022 SIAC Arbitration determine that Plaintiffs' *Free Fire* claims may proceed in this Court, as both implicate the scope of Krafton's copyright. *See Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.,* No. 2:19-cv-00527-JVS-ADS, 2019 WL 1449502, at *7–8 (C.D. Cal. Mar. 26, 2019) (court has discretion to stay non-arbitrable claims pending outcome of arbitration). Plaintiffs chose to bring these claims together with the claims against Garena, and they should be bound to the consequences of that choice.

### D. Defendants Have Not Waived Certain Defenses Under Rule 12

Plaintiffs assert that Defendants have forfeited "any waivable defenses under Rule 12." Opp. 25-26. Notably, Plaintiffs entirely omit from this argument *which* Rule 12 defenses they contend that Defendants have waived. This matters because "[t]he consequence of omitting a defense from an earlier motion under Rule 12 *depends on [the] type of defense omitted*." *In re Apple iPhone Antitrust Lit.*, 846 F.3d 313, 317 (9th Cir.

2017) (emphasis added).

Most pertinently, a defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not necessarily waive that defense. *Id.* at 317–18. That defense can be brought in a post-answer motion to dismiss under Rule 12(c), *id.* at 318, and in some cases, district courts have exercised their discretion to rule on later-filed Rule 12(b)(6) motions in the interests of judicial efficiency. *See, e.g.*, *Cuviello v. City of Vallejo*, No. 16-cv-2584-KJM-KJN, 2020 WL 6728796, at *5 (E.D. Cal. Nov. 16, 2020); *Dongguan Beibei Toys Indus. Co. v. Underground Toys USA, LLC*, No. 19-4993 DSF (JPRx), 2020 WL 2065034, at *2 n.3 (C.D. Cal. Mar. 2, 2020); *Salinas Valley Mem'l Healthcare Sys. v. Monterey Peninsula Horticulture, Inc.*, No. 17-cv-7076-VKD, 2018 WL 6268878, at *4–5 (N.D. Cal. Nov. 29, 2018).[3]

Accordingly, although Defendants do not concede that they have waived any Rule 12 defenses, Defendants have not waived the defenses that would be raised under Rule 12(b)(6)—even if Plaintiffs had argued that they had, which Plaintiffs have not.

## III. CONCLUSION

Accordingly, Defendants respectfully request that the Court grant Defendants' motion to compel Krafton to arbitration and to stay the litigation pending that arbitration.

---

[3] Indeed, the Ninth Circuit has indicated that it would be "very forgiving" of a district court's consideration of later-filed Rule 12(b)(6) motions that avoid "unnecessary and costly delays, contrary to the direction of [FRCP] 1." *In re Apple iPhone Antitrust Lit.*, 846 F.3d at 318–20 (to the extent the district court committed any error in ruling on defendant's *fourth* 12(b)(6) motion to dismiss—which did not appear to have been filed for any strategically abusive purposes—such error was harmless).

DEFENDANTS' REPLY MEMORANDUM ISO THIER MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

Dated:  May 16, 2022                    DURIE TANGRI LLP


                                        By:_____
                                                  /s/ Allyson R. Bennett
                                                  ALLYSON R. BENNETT

                                        Attorneys for Defendants
                                        SEA LIMITED, GARENA INTERNATIONAL I
                                        PRIVATE LIMITED, GARENA ONLINE
                                        PRIVATE LIMITED, and APPLE INC.


                                        MAYER BROWN LLP


                                        By:_____
                                                  /s/ A. John P. Mancini
                                                  A. JOHN P. MANCINI

                                        Attorneys for Defendants
                                        GOOGLE LLC and ITS WHOLLY-OWNED
                                        SUBSIDIARY, YOUTUBE, LLC


                            **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-4.3.4, regarding signatures, I, Allyson R. Bennett, attest that

concurrence in the filing of this document has been obtained.

                                        _____
                                                  /s/ Allyson R. Bennett
                                                  ALLYSON R. BENNETT

DEFENDANTS' REPLY MEMORANDUM ISO THIER MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2022 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Allyson R. Bennett*
ALLYSON R. BENNETT

DEFENDANTS' REPLY MEMORANDUM ISO THIER MOTION TO COMPEL
ARBITRATION AND STAY LITIGATION / CASE NO. 2:22-CV-00209-GW-MRW