MAYER BROWN LLP
JOHN NADOLENCO (SBN: 181128)
jnadolenco@mayerbrown.com
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
Telephone: 213-229-9500

A. JOHN P. MANCINI (*Pro Hac Vice*)
jmancini@mayerbrown.com
PAUL M. FAKLER (*Pro Hac Vice*)
pfakler@mayerbrown.com
SARA A. SLAVIN (*Pro Hac Vice*)
sslavin@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-506-2500

Attorneys for Defendant YouTube, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| KRAFTON, INC. and PUBG SANTA MONICA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> APPLE INC., et al., <br><br> Defendants. | Case No. 2:22-cv-00209-GW-MRW <br><br> **DEFENDANT YOUTUBE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date: February 27, 2023 <br> Time: 8:30 am <br> Judge: Hon. George H. Wu <br> Courtroom: 9D <br><br> [*Declaration of Sara A. Slavin; Notice of Manual Lodging; [Proposed] Order Filed concurrently herewith*] |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 27, 2023 at 8:30 a.m., in Courtroom 9D of the United States District Court for the Central District of California, located at 350 W. First Street, Los Angeles, CA 90012, Defendant YouTube, LLC ("YouTube") will and hereby does move for an order dismissing, with prejudice, the copyright infringement claims of Plaintiffs Krafton, Inc. and PUBG Santa Monica, Inc. ("Plaintiffs") against YouTube concerning the film *Biubiubiu*, pursuant to Fed. R. Civ. P. 12(b)(6).

Good cause exists to grant the motion because Plaintiffs cannot state a claim for copyright infringement against YouTube as a matter of law. A simple viewing of the underlying works at issue—Plaintiffs' "battle royale" video game *PlayerUnknown's Battlegrounds* ("*Battlegrounds*") and the allegedly infringing fictional, live-action film *Biubiubiu*—reveals that there is no substantial similarity between these works within the meaning of the Copyright Act. Moreover, even assuming *Biubiubiu* does incorporate any minimally-protected elements from *Battlegrounds*—which it does not—*Biubiubiu*'s use of any such elements is fair use, primarily because any such minimal use is highly transformative.

YouTube's motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Sara Slavin ("Slavin Decl."); the Notice of Lodging; the pleadings in this action and documents attached thereto and referenced therein; and on such other briefs, oral argument, and documentary matters as may be presented to this Court at or before the hearing on this motion.

/ / /

/ / /

/ / /

/ / /

/ / /

1        This motion is made following the conference of counsel pursuant to Local

2   Rule 7-3, which took place on November 30, 2022.

3

4   Dated:  December 20, 2022       MAYER BROWN LLP

5

6              By:_____*/s/ A. John P. Mancini*_____

7                   A. JOHN P. MANCINI

8                   PAUL FAKLER
                    SARA SLAVIN

9             Attorneys for Defendant YOUTUBE, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................ 1

II.  PROCEDURAL BACKGROUND .................................................... 2

III.  LEGAL STANDARD ......................................................................... 3

IV.  ARGUMENT ...................................................................................... 4

  A.  Plaintiffs' Copyright Infringement Claims Fail Because the Parties' Works Are Not Substantially Similar. ................................... 4

    1.  "Substantial Similarity" Test. ..................................................... 4

    2.  Plaintiffs' Claim of Substantial Similarity Between *Battlegrounds* and *Biubiubiu* Relies on Elements of *Battlegrounds* That Are Unprotectable As a Matter of Law. ................................................................................................ 6

      a)  Structures and locations ................................................. 7

      b)  Weapons and equipment ................................................ 10

      c)  User interface ................................................................. 13

      d)  Characters ...................................................................... 15

      e)  Other elements ............................................................... 17

    3.  *Biubiubiu* and *Battlegrounds* Are Entirely *Dissimilar* in Their Protectable Expression. ................................................... 18

      a)  Plot and sequence of events .......................................... 19

      b)  Themes and mood .......................................................... 21

      c)  Characters ...................................................................... 22

      d)  Settings ........................................................................... 23

      e)  Pace ................................................................................ 24

  B.  Even If *Biubiubiu* Incorporates Any Minimally-Protected Elements of *Battlegrounds*—Which It Does Not—*Biubiubiu*'s Incorporation of Any Such Elements Is Fair Use. ............................. 25

    1.  Fair Use Doctrine ........................................................................ 25

    2.  *Biubiubiu*'s Use of Any Protectable Elements of *Battlegrounds* Is Fair Use. .................................................... 26

      a)  To the extent *Biubiubiu* uses any elements from *Battlegrounds*, its use is completely transformative. ...... 26

      b)  *Battlegrounds*' weak protection as a creative work and wide dissemination weigh in favor of fair use. ....... 28

      c)  *Biubiubiu*'s use of any elements of *Battlegrounds* is quantitatively and qualitatively insubstantial. ................ 30

      d)  *Biubiubiu* does not affect the market for *Battlegrounds* or any derivative uses of *Battlegrounds*. ...................................................... 32

V.  CONCLUSION .................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records v. Napster*, Inc.,
239 F.3d 1004, 1015 (9th Cir. 2001) ................................................................. 27

*Allen v. Acad. Games League of Am., Inc.*,
89 F.3d 614 (9th Cir. 1996) ........................................................................ 14, 29

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ................................................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 3

*Atari, Inc. v. Amusement World, Inc.*,
547 F. Supp. 222 (D. Md. 1981) ............................................................... 10, 14

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985) ...................................................................... 19

*Bethea v. Burnett*,
2005 WL 1720631 (C.D. Cal. June 28, 2005) ............................................ 6, 21

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006) ...................................................................... 29, 30

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ....................................................... 6, 11

*Burnett v. Twentieth Century Fox Film Corp.*,
491 F. Supp. 2d 962 (C.D. Cal. 2007) .............................................................. 4

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .............................................................................. *passim*

*Campbell v. Walt Disney Co.*,
718 F. Supp. 2d 1108 (N.D. Cal. 2010) ............................................................ 4

*Capcom Co. v. MKR Grp., Inc.*,
2008 WL 4661479 (N.D. Cal. 2008) ......................................................... *passim*

*Capcom U.S.A., Inc. v. Data E. Corp.*,
    1994 WL 1751482 (N.D. Cal. Mar. 16, 1994) ...................................... 6, 7, 11, 14

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013) ............................................................................... 28

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ............................................................................. 18

*Corbello v. Valli*,
    974 F.3d 965 (9th Cir. 2020) ............................................................................... 4

*Data E. USA, Inc. v. Epyx, Inc.*,
    862 F.2d 204 (9th Cir. 1988) ............................................................. 10, 11, 14, 19

*DaVinci Editrice S.R.L. v. ZiKo Games, LLC*,
    183 F. Supp. 3d 820 (S.D. Tex. 2016) .......................................................... 14, 30

*DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ........................................................................... 15

*DraftExpress, Inc. v. Whistle Sports, Inc.*,
    2022 WL 16962285 (C.D. Cal. Aug. 2, 2022) ............................................... 4, 33

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ......................................................................................... 4, 5

*Frybarger v. Int'l Bus. Machines Corp.*,
    812 F.2d 525 (9th Cir. 1987) ........................................................... 11, 17, 29

*Funky Films, Inc. v. Time Warner Entm't Co.*,
    462 F.3d 1072 (9th Cir. 2006) ........................................................................... 21

*Gaiman v. McFarlane*,
    360 F.3d 644 (7th Cir. 2004) ............................................................................. 17

*Google LLC v. Oracle America, Inc.*,
    141 S.Ct. 1183 (2021) ........................................................................... 4, 30, 32

*Grupo Gigante SA De CV v. Dallo & Co.*,
    391 F.3d 1088 (9th Cir. 2004) ........................................................................... 12

*Harper & Row, Publrs. v. Nation Enters.*,
    471 U.S. 539 (1985) ........................................................................................... 32

*Hogan v. DC Comics*,
  48 F. Supp. 2d 298 (S.D.N.Y. 1999) ................................................. 17

*Hsu v. Puma Biotechnology, Inc.*,
  213 F. Supp. 3d 1275 (C.D. Cal. 2016) .............................................. 3

*Idema v. Dreamworks, Inc.*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) .............................................. 6

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ..................................................... 29, 32

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ......................................................... 19

*Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*,
  2018 WL 5310831 (N.D. Cal. June 29, 2018) .................................... 31

*Marcus v. ABC Signature Studios, Inc.*,
  279 F. Supp. 3d 1056 (C.D. Cal. 2017) ........................... 5, 16, 21, 24

*Masterson v. Walt Disney Company*,
  821 F. App'x 779 (9th Cir. 2020) ........................................... 5, 6, 19

*Mattel, Inc. v. MGA Ent., Inc.*,
  616 F.3d 904 (9th Cir. 2010) ..................................................... 5, 6

*Monge v. Maya Mags., Inc.*,
  688 F.3d 1164 (9th Cir. 2012) ......................................................... 29

*National Center for Jewish Film v. Riverside Films, LLC*,
  2012 WL 4052111 (C.D. Cal. Sept. 14, 2012) ................................... 33

*Olson v. Nat'l Broad. Co.*,
  855 F.2d 1446 (9th Cir. 1988) ................................................... 18, 22

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................... 25, 32

*Rentmeester v. Nike*, Inc.,
  883 F.3d 1111, 1123 (9th Cir. 2018) ................................................. 3

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ......................................................... 11

*Schkeiban v. Cameron*,
  2012 WL 5636281 (C.D. Cal. Oct. 4, 2012) ........................................................ 4

*Sega Enterprises Ltd. v. Accolade, Inc.*,
  977 F.2d 1510 (9th Cir. 1992) ........................................................................... 29

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ....................................................... 27, 28, 29, 30

*Shame on You Prods., Inc. v. Elizabeth Banks*,
  120 F. Supp. 3d 1123 (C.D. Cal. 2015) ...................................................... 15, 24

*Silas v. Home Box Off., Inc.*,
  201 F. Supp. 3d 1158 (C.D. Cal. 2016) (Wu, J.) ....................................... *passim*

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
  709 F.3d 1273 (9th Cir. 2013) ................................................................ 31, 32, 33

*Tanikumi v. Walt Disney Co.*,
  616 F. App'x 515 (3rd Cir. 2015) ....................................................................... 8

*Thomson v. HMC Grp.*,
  2015 WL 11256775 (C.D. Cal. Oct. 29, 2015) .................................................... 8

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
  953 F.3d 638 (9th Cir. 2020) ............................................................................ *passim*

*Unicolors, Inc. v. NB Brother Corp.*,
  2017 WL 4402287 (C.D. Cal. Oct. 3, 2017) ..................................................... 25

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ............................................................................ 25

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ................................................................................. 8

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) ........................................................ 3, 19

**Statutes**

17 U.S.C. § 102(b) ................................................................................................. 5

17 U.S.C. § 107 ................................................................................................ 2, 25

- viii -

## I.   INTRODUCTION

This action is based on the meritless premise that a feature-length, fictional Chinese film, *Biubiubiu*, about a father's quest to maintain custody of his son through improbably winning a video game tournament somehow infringes the copyright in Plaintiffs' popular video game *Battlegrounds*, merely because the movie contains re-enactments of generic video gameplay, interspersed with the film's real-life drama. To be clear, these video gameplay sequences are not animated clips ***from Battlegrounds***; rather, they are sequences shot specifically for *Biubiubiu* with real actors, as opposed to the stylized animation of *Battlegrounds*. As is obvious from the Complaint, Plaintiffs' copyright infringement claims concerning *Biubiubiu* hinge on a few random, scattershot similarities between certain concepts or ideas in the two works—as opposed to any original expression—that are plainly inconsequential and certainly not protectable. The fatal flaws of Plaintiffs' claims become only more obvious from a review of the underlying works themselves. If Plaintiffs could claim copyright protection over the mere ideas of common settings like a field with bales of hay; common pre-existing real-world items like a frying pan or a backpack; and common video game tropes like "last man standing" or a player's "foraging for supplies and efforts to survive," then Plaintiffs would effectively claim a monopoly over broad swaths of ideas. This is plainly not what copyright law protects.

As to any *protectable* expression embodied in the two works, the two works are not even remotely similar. This lack of substantial similarity starts with the key fact that one is a non-linear video game and the other is a narrative movie. Accordingly, there is no possible similarity in the plot, themes, mood, characters, and pace of the two works because *Battlegrounds* does not have a plot, in any traditional sense; does not express any themes, beyond survival and winning; does not introduce any "characters," beyond customized avatars for players of the game; and does not have any set narrative progression, beyond each player's individual game trajectory. In *Biubiubiu*, on the other hand, these elements are all capable of rich description

because *Biubiubiu* is telling a specific story filled with clear themes, complex characters, and distinctive settings. In their protectable expression, the works are simply not alike in any way.

Moreover, even to the extent *Biubiubiu* does incorporate any minimally-protectable elements of *Battlegrounds*, any such incorporation is fair use as a matter of law. *Biubiubiu* incorporates video game elements in a completely transformative way, using these elements to tell a fictional story that has at its core a commentary on gaming culture generally and the "battle royale" genre of video games in particular. In doing so, *Biubiubiu* adds specific meaning and commentary beyond what a video game conveys and uses any slight references to elements of those types of games to the extent necessary to accomplish its transformative purpose. Indeed, all of the other Section 107 factors similarly favor fair use under these circumstances, because *Battlegrounds* is published and widely disseminated; *Biubiubiu*'s use of any video game elements that overlap with elements appearing in *Battlegrounds* is insubstantial given the scope of *both* works; and *Biubiubiu*, a two-hour narrative film, is simply not a market substitute for a video game that provides players with hundreds of hours of action-packed gameplay. Accordingly, Plaintiffs' claims concerning *Biubiubiu* should be dismissed with prejudice, because a review of the underlying works shows that the works are not substantially similar in their protectable expression, and in any event, *Biubiubiu*'s use of any minimally-protectable shared elements is fair use as a matter of law.

## II.   PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on January 10, 2022, alleging direct and secondary copyright infringement claims against Defendants Sea Ltd., Moco Studios Private Ltd. (f/k/a Garena International I Private Ltd.), Garena Online Private Ltd., Apple Inc., Google LLC ("Google"), and Google's wholly-owned subsidiary, YouTube (collectively, "Defendants"). Dkt. 1. Although Plaintiffs' claims were primarily premised on their allegations that a video game entitled *Free Fire* infringes

Plaintiffs' copyrights in its *Battlegrounds* video game, Plaintiffs separately asserted direct and secondary infringement claims against YouTube on the basis that the feature-length Chinese film *Biubiubiu*, created and uploaded by a third-party not named in this action, also infringes Plaintiffs' copyrights in *Battlegrounds*. On March 28, 2022, Defendants moved to compel arbitration and to stay the litigation in its entirety, pending the outcome of an arbitration in Singapore. Dkt. 47. On November 11, 2022, the Court granted Defendants a stay as to all of Plaintiffs' claims on the basis of the Singapore arbitration, except Plaintiffs' claims against YouTube concerning *Biubiubiu*. Dkt. 120.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). For a copyright claim, "[d]ismissal is appropriate [w]here [] the two [works] . . . are properly before [the court] and thus capable of examination and comparison," and the Court finds no infringement as a matter of law. *Rentmeester v. Nike*, Inc., 883 F.3d 1111, 1123 (9th Cir. 2018) (internal quotation marks, citation omitted); *Zella v. E.W. Scripps Co*., 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.") (internal quotations and citation omitted).[1]

---

[1] On a motion to dismiss, a court may consider the underlying works "as documentary facts" alleged in the Complaint. *Silas v. Home Box Off., Inc.*, 201 F. Supp. 3d 1158, 1168-69, 1184 (C.D. Cal. 2016) (Wu, J.) (comparing works and dismissing case with prejudice at pleading stage for non-infringement). Accordingly, YouTube respectfully submits that *Battlegrounds* and *Biubiubiu* are incorporated by reference into the Complaint, even though they are not attached to the Complaint. *See Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281 (C.D. Cal. 2016). For the Court's convenience, YouTube has provided the Court with courtesy copies of the underlying works. *See* Slavin Decl. Exhs. 1, 2. YouTube has limited its arguments regarding non-infringement to those that can be decided without consideration of

Accordingly, if the court's findings are based on the works themselves rather than the pleadings, a court should dismiss *with prejudice* a plaintiff's copyright infringement claim, as leave to amend would be futile. *Silas,* 201 F. Supp. 3d at 1184 (lack of substantial similarity "cannot be cured by amendment"); *Schkeiban v. Cameron*, 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012) (same); *see Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010) (same).

A court may also consider a fair use defense as a matter of law at the pleading stage "by applying the doctrine to the facts as they appear in the Complaint and those materials incorporated by reference therein, such that 'the ultimate "fair use" question primarily involves legal work.'" *DraftExpress, Inc. v. Whistle Sports, Inc.*, 2022 WL 16962285, at *2 (C.D. Cal. Aug. 2, 2022) (quoting *Google LLC v. Oracle America, Inc.*, 141 S.Ct. 1183, 1199 (2021)). Accordingly, a court should dismiss *with prejudice* a plaintiff's copyright infringement claim if the alleged copying is fair use as a matter of law. *Google*, 141 S.Ct. at 1199-1200 (fair use may be decided as a as a matter of law); *Burnett v. Twentieth Century Fox Film Corp*., 491 F. Supp. 2d 962, 971 (C.D. Cal. 2007) (dismissing Complaint with prejudice based on fair use defense); *DraftExpress*, 2022 WL 16962285, at *2 (same).

## IV. ARGUMENT

### A. Plaintiffs' Copyright Infringement Claims Fail Because the Parties' Works Are Not Substantially Similar.

#### 1. "Substantial Similarity" Test.

"Not all copying . . . is copyright infringement." *Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991). Although copyright protects authors' original expression in their work, it does not protect ideas and facts. *Corbello v. Valli*,

---

evidence outside the pleadings, while expressly reserving its right to later rely on such arguments should this case proceed past the pleading phase, including any arguments as to ownership or originality. *See, e.g.*, *Silas*, 201 F. Supp. 3d at 1168-1171 (denying defendants' requests for judicial notice of various materials, except for the underlying works themselves).

974 F.3d 965, 973 (9th Cir. 2020); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery."). Because of this well-established distinction between ideas and expression, simply establishing that "works of art share an idea" does not establish copyright infringement. *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916-17 (9th Cir. 2010). Accordingly, to state a claim for copyright infringement, a plaintiff must advance plausible, non-conclusory allegations of copying of the protectable elements of its copyrighted work—that is, the author's particularized, protected original expression rather than the underlying ideas that gave rise to the author's expression. *See Feist*, 499 U.S. at 349.

More specifically, a copyright plaintiff must allege "that the works at issue are substantially similar in their protected elements." *Marcus v. ABC Signature Studios, Inc*., 279 F. Supp. 3d 1056, 1064 (C.D. Cal. 2017) (quoting *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). In the Ninth Circuit, substantial similarity is evaluated by means of a two-part test—an "extrinsic test" and an "intrinsic test." *Masterson v. Walt Disney Company*, 821 F. App'x 779, 781 (9th Cir. 2020) (quoting *Rentmeester*, 883 F.3d at 1118). At the motion to dismiss stage, courts will consider only whether the extrinsic test has been satisfied. *Id*.

"In the extrinsic test, the court first filters out unprotectable elements, which are 'primarily ideas and concepts, material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject).'" *Id*.; *see also Mattel*, 616 F.3d at 913 ("At the initial 'extrinsic' stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable."). "[T]he party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements." *Apple Computer, Inc. v. Microsoft Corp*., 35 F.3d 1435, 1446 (9th Cir. 1994) (internal quotation omitted).

Once unprotectable elements have been filtered out, "[t]he remaining

5

protectable elements are then compared 'to assess similarities in the objective details of the works.'" *Masterson*, 821 F. App'x at 781-82 (quoting *Rentmeester*, 883 F.3d at 1118). Accordingly, a court must determine whether the "works [are] substantially similar beyond the fact that they depict the same idea[.]" *Mattel*, 616 F.3d at 917.

> ### 2.   Plaintiffs' Claim of Substantial Similarity Between *Battlegrounds* and *Biubiubiu* Relies on Elements of *Battlegrounds* That Are Unprotectable As a Matter of Law.

Plaintiffs' copyright infringement claim fails the Ninth Circuit's extrinsic test from the outset because any claimed similarities between *Battlegrounds* and *Biubiubiu* are attributable solely to unprotectable elements in *Battlegrounds*.

Among the "unprotectable elements" that a court must "filter" out of its comparison of a copyrighted work and an allegedly infringing work are: (i) "ideas," as distinguished from the "expression" of those ideas; (ii) facts, historical events, or other information over which no individual is entitled to claim a monopoly (though original compilations or arrangements of facts may be protectable); (iii) elements borrowed from another author or from the "public domain"; (iv) instances in which a particular "expression" at issue "merges" with the "idea" being expressed; and/or (v) a similar instance in which the form of the "expression" is so "standard" in the treatment of a given "idea" that it constitutes a scènes à faire, or a "scene which must be done." *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001); *see Capcom U.S.A., Inc. v. Data E. Corp.* ("*Capcom I*"), 1994 WL 1751482, at *6 (N.D. Cal. Mar. 16, 1994).

Presumably, Plaintiffs have highlighted those aspects of *Biubiubiu* that they believe most substantially resemble *Battlegrounds*. *See Apple Computer*, 35 F.3d at 1443 ("plaintiff must identify the *source(s)* of the alleged similarity" (emphasis in original)); *Bethea v. Burnett*, 2005 WL 1720631, at *10 (C.D. Cal. June 28, 2005) (same). Plaintiffs must also allege sufficient facts demonstrating that their asserted expression is protectable. *See Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149

F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (plausible claim requires that plaintiffs "submit a representative sampling of infringed content, pleading infringement with the level of detail required by the Ninth Circuit and establishing that the content and characters at issue are copyrightable").

Here, Plaintiffs have identified the following similarities between *Battlegrounds* and *Biubiubiu*:

- Structures and locations, "such as specific building designs and color schemes, interior environments, and distinctive locations such as the port featuring shipping crates and an adjacent power plant cooling tower," Complaint ¶ 132;
- Items, weapons, and equipment, including health packs and syringes, grenades and flash bangs, and backpacks, *id*. ¶ 133;
- User interface elements, including mini-maps, player data, grenade arc indicators, *id*. ¶ 134, and an initial pre-game lobby, *id*. ¶ 129;
- Three characters, *id*. ¶ 135; and
- Other miscellaneous elements, such as a protagonist parachuting into a location, *id*. ¶ 131; a player's arrival on an island, *id*. ¶ 129; and a player's foraging for supplies and efforts to survive, *id*.

To differentiate between unprotectable ideas and protectable expression, courts describe the underlying game "in [] appropriately simple terms." *Capcom I*, 1994 WL 1751482, at *10. In "simple terms," *Battlegrounds* is a "battle royale" video game, in which a large group of players are dropped together into a given location, forced to scrounge for equipment and supplies, and encouraged, by external forces, to kill each other until only one survives. Based on this simple description, all of Plaintiffs' claimed similarities constitute unprotectable elements as a matter of law.

a) <strong>Structures and locations</strong>

Plaintiffs attempt to claim copyright protection over a handful of unprotectable settings, including a basic two-story structure and a field with bales of hay. Complaint

7

¶ 132. These claims are untenable. As an initial matter, standard building features are unprotectable. *See Thomson v. HMC Grp*., 2015 WL 11256775, at *10 (C.D. Cal. Oct. 29, 2015) ("[u]nprotectable elements . . . [include] individual standard [building] features, such as common windows, doors, and other staple building components"). Plaintiffs' Complaint shows side-by-side images of two buildings which are alike only in common elements such as a two-story height, white windows, and a dilapidated perimeter wall. Otherwise, the buildings are notably different in their protectable elements, including color (pinkish red vs. maroon), roof style (trapezoid



*Battlegrounds*



*Biubiubiu*

vs. flat), style and spacing of windows (grills vs. empty), condition (decent vs. dilapidated), and perimeter walls (both partially destroyed, but with very different shaping of the damaged portions).

Nor are commonplace locations, such as a field with bales of hay, copyrightable. *See, e.g.*, *Tanikumi v. Walt Disney Co*., 616 F. App'x 515, 521 (3rd Cir. 2015) ("mountain setting" too indistinct to be protectable); *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers" unprotectable). Here, too, Plaintiffs' side-by-side images reveal two fields with bales of hay that otherwise look nothing alike and feature different colors, layout, and overall terrain.



*Battlegrounds*                                      *Biubiubiu*

Finally, Plaintiffs fail to explain why a port with shipping crates and an "adjacent" power plant cooling tower is "distinctive" enough to be copyrightable. *See Capcom Co. v. MKR Grp., Inc.* ("*Capcom II*"), 2008 WL 4661479, at *10 (N.D. Cal. 2008) (setting of "a rural two-story mall with a helipad on top and a gun shop and music playing inside" was unprotectable; the presence of an escalator and a fountain in both malls was immaterial, as "these are features found in most malls, and cannot support a finding of substantial similarity"). Moreover, the two "port" areas featured in the Complaint plainly look more different than alike, yet again. The shapes, sizes, and precise colors of the shipping crates differ, and, unlike in the *Biubiubiu* image, the *Battlegrounds* plant cooling tower is not even "adjacent" to the port—it appears to be in a different location entirely.





*Biubiubiu*

*Battlegrounds*

9

1    Accordingly, Plaintiffs cannot claim copyright protection over these
2    commonplace structures and locations.

3         b)   **Weapons and equipment**

4    Plaintiffs attempt to claim copyright protection over various weapons and
5    equipment. Complaint ¶ 133. These items also cannot give rise to copyright
6    infringement because pursuant to the merger doctrine "forms of expression that are
7    essential to the idea (i.e., forms of expression which cannot be varied without altering
8    the idea)" are not copyrightable. *Atari, Inc. v. Amusement World, Inc*., 547 F. Supp.
9    222, 228 (D. Md. 1981). Accordingly, "when similar features in a videogame are 'as
10   a practical matter indispensable, or at least standard, in the treatment of a given [idea],'
11   they are treated like ideas and are therefore not protected by copyright." *Apple*
12   *Computer*, 35 F.3d at 1444 (alterations in original) (quoting *Frybarger v. Int'l Bus.*
13   *Machines Corp*., 812 F.2d 525, 530 (9th Cir. 1987)). In *Atari*, the Court considered
14   two competing video games in which a player steers a spaceship through space rocks
15   and enemy spaceships, 547 F. Supp. at 224, and concluded that "[t]here are certain
16   forms of expression that one must necessarily use" in designing this type of video
17   game, including moveable spaceships which fire weapons, realistic-looking space
18   rocks of varying sizes, and a gradual increase in difficulty, *id*. at 229. Similarly, in
19   *Data E. USA, Inc. v. Epyx, Inc*., 862 F.2d 204 (9th Cir. 1988), the Court explained
20   that "the visual depiction of karate matches is subject to the constraints inherent in
21   the sport of karate itself," and concluded that "[t]he number of combatants, the stance
22   employed by the combatants, established and recognized moves and motions
23   regularly employed in the sport of karate, the regulation of the match by at least one
24   referee or judge, and the manner of scoring by points and half points" were therefore
25   not protectable elements, given the idea of a karate video game. *Id*. at 209.

26   Here, given the basic, unprotectable premise of *Battlegrounds*—a large group
27   of players battle each other to death—it naturally follows that such a game would
28   include real-world weapons such as grenades and flash bangs; equipment such as

helmets, visors, and backpacks; and items that increase a player's health such as health packs and syringes, all of which flow from the basic idea of forcing players to kill each other. *See, e.g.*, *Capcom I*, 1994 WL 1751482, at *7-8 (explaining that "a vitality bar that . . . changes color to indicate the percentage of strength the fighter has left" is unprotectable).

Plaintiffs' claims are additionally untenable because real-world objects are protected only against virtually identical copying. *Apple Computer*, 35 F.3d at 1442 (when a "basic idea[]" can be expressed only in a "limited number of ways," "only 'thin' protection, against virtually identical copying, is appropriate"); *Data E. USA*, 862 F.2d at 209 ("When idea and expression coincide, there will be protection against nothing other than identical copying."); *Frybarger*, 812 F.3d at 530 ("the mere *indispensable* expression of these ideas, based on the technical requirements of the videogame medium, may be protected only against virtually identical copying" (emphasis in original)). *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), is particularly instructive on this point. There, the Court considered the extent to which an artist's life-like, "glass-in-glass" jellyfish sculpture was protectable by copyright. *Id*. at 807. The Court concluded that any copyright protection for this sculpture was "thin," at best, because the artist could not claim protection over any elements of the sculpture "governed by jellyfish physiology or the glass-in-glass medium" because such elements "are so commonplace . . . and so typical . . . that to recognize copyright protection in their combination effectively would give [Plaintiffs] a monopoly." *Id*. at 812. Here, too, Plaintiffs cannot simply claim copyright protection over commonplace items such as a black frying pan with handles or a camouflage backpack, especially having failed to identify any protectable aspects of these items. *See id*.; *see also Blizzard Ent*., 149 F. Supp. 3d at 1175 (plaintiff must establish why their content is copyrightable).[2]

---

[2] Instead, Plaintiffs allege that certain items in *Battlegrounds* have taken on "secondary meaning," such as a helmet, Complaint ¶ 57, and a frying pan, *id*. ¶ 63.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Finally, Plaintiffs' own side-by-side comparison images show that many of the items that Plaintiffs claims are "substantially similar" to items in *Biubiubiu* are, instead, dissimilar in notable ways. As one example, the *Battlegrounds* grenade is army-green with clear yellow lettering and an intact safety pin ring, whereas the *Biubiubiu* grenade is a yellowish-brown color with faded writing, is heavily rusted, and appears to be missing some key components.





*Battlegrounds*



*Biubiubiu*

---

But secondary meaning is relevant only to trademark, not copyright, claims. *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1095 (9th Cir. 2004) ("Secondary meaning refers to a mark's actual ability to trigger in consumers' minds a link between a product or service and the source of that product or service.").

As another example, the two flash bangs highlighted in the Complaint are different colors and feature different details, such as an iron ring visible in the *Battlegrounds* image.





*Battlegrounds*                                    *Biubiubiu*

Finally, the two "kits" are not even outwardly similar—the *Battlegrounds* kit has distinctive red "H" emblem; moreover, the *Battlegrounds* kit contains medical supplies, and, as is apparent from the film itself, the *Biubiubiu* kit contains ammunition used by the protagonist.





*Battlegrounds*                                    *Biubiubiu*

Accordingly, there is no actionable substantial similarity between these items.

    c)    **User interface**

Plaintiffs also attempt to claim copyright protection over various game user interface elements, ignoring clearly established principles of copyright law applicable to games. As an initial matter, features that exist to teach players the rules of the game, such as an "initial pre-game lobby" (Complaint ¶ 129), are not

protectable. *See, e.g.*, *Allen v. Acad. Games League of Am., Inc*., 89 F.3d 614, 617 (9th Cir. 1996) (manual of game rules not protectable because it was indistinguishable from "the idea of the rules themselves."); *see also Atari*, 547 F. Supp. at 229 (idea that a "game must be easy at first and gradually get harder, so that bad players are not frustrated and good ones are challenged" is unprotectable). Nor have Plaintiffs even identified what aspects of *Battlegrounds*'s pre-game lobby are allegedly infringed by *Biubiubiu*. Similarly, gameplay mechanics or procedural elements—such as "mini-maps, player data, and, grenade arc indicators" (Complaint ¶ 134)—are commonplace in video games and therefore unprotectable. *See, e.g.*, *Data E. USA*, 862 F.2d at 209 (gameplay elements such as a time element, a referee, computer graphics, and bonus points not protectable); *Capcom I*, 1994 WL 1751482, at *8 (designating winners and tracking a fighter's vitality during a fight are "commonplace" in video games and therefore unprotectable); *see also DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820, 830 (S.D. Tex. 2016) (game mechanics not copyrightable).

Moreover, Plaintiffs' side-by-side comparisons of the "user interface" in *Battlegrounds* vs. *Biubiubiu* show that these interfaces look markedly different in the two works. Indeed, these differences stem from the more fundamental dissimilarity between the two works: *Battlegrounds* is a video game whereas *Biubiubiu* is a feature-length film that incorporates video game sequences made for the film and shot with the film's actors. Accordingly, the *Battlegrounds* interface includes all of the options and information that a player would need to actively play the game, including maps, game settings, various trackers (such as ammunition level), a virtual joystick to control player movement, and a virtual compass. Although some of these elements appear in *Biubiubiu*, their overall appearance and organization is more streamlined and muted, because these elements are not functional but instead subtly enhance the realism of the video game scenes.







*Battlegrounds*                    *Biubiubiu*

Accordingly, the "user interfaces" of *Battlegrounds* and *Biubiubiu* are not substantially similar.

### d)   **Characters**

Plaintiffs claim substantial similarity between various "characters"[3] in *Battlegrounds* and *Biubiubiu* (Complaint ¶ 135), ignoring the "very high degree of similarity" required for demonstrating substantial similarity between characters. *Silas*, 201 F. Supp. 3d at 1177; *see DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015) (only characters that are "sufficiently delineated" and "especially distinctive" can be protected by copyright); *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1164 (C.D. Cal. 2015) (no protection for character "traits that are too abstract").

Here, Plaintiffs do not even approach the required showing. Plaintiffs present images of three allegedly infringed "characters" from *Battlegrounds* but do not

---

[3] The three allegedly infringing *Biubiubiu* "characters" featured in the Complaint are actually video game avatars of distinctive real-life characters who have no analogue whatsoever in *Battlegrounds*, as further explained *infra*, at 22-23.

explain which features or traits of these characters are supposedly infringed by *Biubiubiu*. Plaintiffs' comparison images show: (i) two dark-haired men wearing yellow tracksuits and carrying guns—but who otherwise share no apparent similarity; (ii) two characters wearing helmets—where even the helmets do not appear substantially similar; and (iii) two dark-haired female characters with ponytails, wearing skirts and carrying guns—but whose outfits are otherwise different colors and styles.

 

 

 



*Battlegrounds*                                *Biubiubiu*

These superficial traits are not protectable as a matter of law. *See Marcus*, 279 F. Supp. 3d at 1069 ("[O]nly distinctive characters are protectible, not characters that merely embody unprotected ideas." (quoting *Benay v. Warner Bros Entertainment*,

607 F.3d 620, 626 (9th Cir. 2010))).[4]

e)   **Other elements**

Any other purported similarities between miscellaneous elements of *Battlegrounds* and *Biubiubiu* are attributable to generic elements of the video game genre. Plaintiffs claim that "in *Biubiubiu*, depictions of the protagonist parachuting to a location are nearly identical to those featured in *Battlegrounds*" (Complaint ¶ 131), but a player's parachuting into a location, or a player's arrival to a location more generally, are elements inherent in the idea of dropping players into one location together to kill one another. Game mechanics of this sort are not protectable. *Frybarger*, 812 F.2d at 530 n.2 (videogame mechanics encouraging protagonist to move in a manner so as to "trap" antagonists unprotectable as a matter of law). Moreover, the parachuting images selected by Plaintiffs reveal almost no similarities, except that they depict a person in some phase of parachuting or landing.






---

[4] *See also Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. 1999) (no infringement where two characters had same name and were both half-vampire and half-human, of similar age, and shared other characteristics such as "thin-to-medium builds, pale skin, dark messy hair and a slovenly appearance"); *see generally Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) (noting rhetorically that, "[i]f a drunken old bum were a copyrightable character, so would be a drunken suburban housewife, a gesticulating Frenchman, a fire-breathing dragon, a talking cat, a Prussian officer who wears a monocle and clicks his heels [and] a masked magician").






*Battlegrounds*                                    *Biubiubiu*

Similarly, Plaintiffs suggest that there is a substantial similarity between *Battlegrounds* and *Biubiubiu* because both include "[a] player's foraging for supplies and efforts to survive on the island." Complaint ¶ 129. But this is an application of a common, basic rule that players start with nothing. *E.g.*, *Capcom II*, 2008 WL 4661479, at *2 (idea of characters visiting "numerous abandoned shops in search of clothes, food, and weapons" in zombie movie and game is not protectable). Accordingly, this element cannot be protectable and does not support a finding of substantial similarity as a matter of law.

3. ***Biubiubiu* and *Battlegrounds* Are Entirely *Dissimilar* in Their Protectable Expression.**

As the above analysis demonstrates, Plaintiffs have attempted to manufacture substantial similarity by pointing to a handful of scattershot similarities between certain common ideas depicted differently in *Battlegrounds* and *Biubiubiu*. Even if these "similarities" encompassed protectable elements—which they do not— "random similarities scattered throughout the works" cannot establish substantial similarity as a matter of law. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 825 (9th Cir. 2002); *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988) (same);

*Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (same); *Capcom II*, 2008 WL 4661479, at \*11 (same). Actionable similarity between protectable elements must be more than de minimis; there must be "a core of protectable and unlicensed similarities substantial enough to warrant a finding of illicit copying under a standard of substantial similarity." *Apple Computer*, 35 F.3d at 1439 & n.6; *Data E. USA*, 862 F.2d at 209 (one remaining similar feature, after filtration of unprotectable features, was "inconsequential"); *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983) (five remaining similarities, after filtration of unprotectable features, insufficient for substantial similarity).

Here, once unprotectable elements are filtered out, no actionable similarities remain between *Battlegrounds* and *Biubiubiu*. *See Masterson*, 821 F. App'x at 781-82 (after filtration, "[t]he remaining protectable elements are then compared 'to assess similarities in the objective details of the works'" (quoting *Rentmeester*, 883 F.3d at 1118)). In assessing actionable similarity, courts examine "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the works. *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985). Here, a comparison of the *protectable* expression of *Battlegrounds* and *Biubiubiu* underscores that *Biubiubiu*—a fictional, feature-length movie—and Battlegrounds—a battle royale video game—are overwhelmingly dissimilar in every fundamental way. The complete *dissimilarity* in the protectable expression of these works mandates dismissal with prejudice of Plaintiffs' copyright infringement claims concerning *Biubiubiu*. *See Silas*, 201 F. Supp. 3d at 1184 (dismissing copyright infringement claim with prejudice at pleading stage where no substantial similarity as a matter of law); *Zella*, 529 F. Supp. 2d at 1130-31, 1139 (same); *Capcom II*, 2008 WL 4661479, at \*11 (same).

a) **Plot and sequence of events**

The "plots" and sequences of events in *Battlegrounds* and *Biubiubiu* are not remotely similar, much less substantially similar. *Battlegrounds* is a popular battle

19

royale style video game available to play on personal computers and game consoles. Complaint ¶ 2. It takes place entirely within various playing areas where random collections of players engage in battle royale style skirmishes. There is no "plot" in any traditional sense and the sequence of events is determined entirely by a player's individual game trajectory.

Conversely, *Biubiubiu*,[5] a fictional, feature-length film, tells the story of Xiao Han, a Chinese father who played videos games professionally as a younger man but is now professionally aimless and struggling financially. With few resources, Xiao and his young son, Xiao Tai Yang, are in danger of being evicted from their home. The catalyst for the plot is the sudden reappearance of Xiao's wealthy, estranged wife, who seeks custody of their son. Tai Yang suggests that his father buy an apartment in a desirable school district to strengthen his position in the looming custody battle. The wrinkle, of course, is that Xiao has no money. Knowing of his father's gaming past, Tai Yang proposes that Xiao enter a video game tournament to win prize money.

Xiao assembles a team of three friends from his gaming past, and they enter a tournament for the fictional video game *Fiery War Zone*. As underdogs, Xiao and "Team School District" must contend with the famous, wealthy, and pompous gamer "Black Shark." *Biubiubiu* therefore chronicles Team School District's unlikely and impressive road to victory. After winning the tournament, Xiao makes his way through the cheering crowd to his son, who is with his mother. She hands Tai Yang to Xiao, and the film ends with father and son embracing, indicating that Xiao has not only won the tournament but also secured custody of his child.

Accordingly, the *only* superficial similarity between the "plots" of *Battlegrounds* and *Biubiubiu* is that both have gameplay sequences. But the similarities end there. In *Battlegrounds*, the gameplay is the entire purpose of the work and the reason it exists. In *Biubiubiu*, the gameplay is a mere backdrop to the father-son relationship drama at the heart of the film. The film intersperses live-action

---

[5] The title is an onomatopoeia of the sound a gun makes when fired repeatedly.

scenes of Xiao and his friends playing *Fiery War Zone* for entertainment value, but its primary focus is Xiao's real-life story. The shared idea of gameplay sequences is therefore insufficient to establish actionable similarity between the two works. *See Silas*, 201 F. Supp. 3d at 1173 (no substantial similarity between plot of screenplay and allegedly infringing television series where "no similarities between the actual objective details of the works"); *Marcus*, 279 F. Supp. 3d at 1066 (no substantial similarity between two plots involving similar high level concepts because the works differed in their "concrete elements").[6]

### b)  **Themes and mood**

There is no similarity whatsoever in the "themes" of the two works. *Battlegrounds*' only "theme" (to the extent this can be considered a theme at all) is to be the last survivor in a free-for-all battle. *See, e.g.*, *Capcom II*, 2008 WL 4661479, at *9 ("To the extent that [the video game] Dead Rising may be deemed to posses[s] a theme, it is confined to the killing of zombies in the process of attempting to unlock the cause of the zombie infestation."). *Biubiubiu*, on the other hand, explores the complexities of a father-son relationship and comments on gaming culture, class, wealth, and capitalism, among other themes.

Similarly, because the two works exist in different media, their moods are difficult to compare. *See id.* (citing *Idema,* 162 F. Supp. 2d at 1185) (noting the difficulty of comparing works presented by means of different media). But to the extent the mood of *Battlegrounds* and *Biubiubiu* can be compared, they are not substantially similar. *Battlegrounds* is focused solely on action and competition. Although *Biubiubiu* contains *elements* of action, it is, at its heart, a hopeful film about

---

[6] *See also, e.g.*, *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076, 1081 (9th Cir. 2006) (general plot idea of "[a] family-run funeral home, the father's death, and the return of the 'prodigal son,' who assists his brother in maintaining the family business" is not protected); *Bethea*, 2005 WL 1720631, at *11 ("depict[ing] a group of dynamic contestants from varied backgrounds competing in business challenges in a dynamic corporate environment for promotions and benefits and, ultimately, a real job as a top-level executive" is not protected).

1  a father-son bond. The themes and mood of the two works therefore markedly differ.

2          c)      **Characters**

3          An analysis of the characters in *Battlegrounds* and *Biubiubiu* further

4   underscores the dissimilarity between the two works. In *Battlegrounds*, the

5   "characters" are mere avatars for players of the game. These avatars can be

6   customized in hundreds of ways, based on appearance, wardrobe, weapons,

7   equipment, and vehicle, among other categories. But beyond these superficial

8   physical attributes, *Battlegrounds*'s avatars exist only to allow players to engage in

9   battle royale style gameplay. These avatars have no developed personalities and their

10  only purpose is to be the last surviving character at the end of the game. *See Olson v.*

11  *Nat'l Broad. Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988) ("[T]he less developed the

12  characters, the less they can be copyrighted; that is the penalty an author must bear

13  for marking them too indistinctly." (citation omitted)).

14         *Biubiubiu*, on the other hand, tells its story through myriad distinctive and

15  complex characters. *Biubiubiu*'s protagonist, Xiao, is a former professional gamer

16  raising his son as a struggling single parent. He plays video games as an escape from

17  the crush of his daily life. At first, Xiao appears to be a drifter lacking in professional

18  ambition, but he is motivated by the potential loss of his son to re-enter the high

19  stakes world of professional gaming.

20         Xiao's allies in this effort include his old friend, Xian, a pugnacious cook who

21  adds comic relief through various hijinks, and the pseudonymous character, "Your

22  Daddy is Picking His Foot." "Daddy" is a woman who pretends to be a man while

23  playing video games competitively in order to avoid the entrenched sexism and

24  misogyny of the gaming community.

25         These characters, along with numerous other distinctive characters (including

26  Xiao's young, precocious son; Xiao's estranged, manipulative wife; and Xiao's

27  primary antagonist Black Shark, a wealthy, famous gamer) have no counterpart in

28

*Battlegrounds*. Indeed, two of the three allegedly infringing *Biubiubiu* "characters"[7] highlighted in the Complaint are actually video game avatars of Xian and "Daddy." These particular avatars appear in a few of the video game sequences interspersed with real life scenes, for a total of approximately one minute of the film's two-hour run time. Accordingly, there is simply no substantial similarity between *Battlegrounds*'s video game avatars and *Biubiubiu*'s richly-developed characters. *See Silas*, 201 F. Supp. 3d at 1177 ("very high degree of similarity between characters" required for substantial similarity).

d)     **Settings**

The settings of the two works are also highly dissimilar. In *Battlegrounds*, players can choose from among nine maps that each contain a variety of different terrains and features. These terrains include forests, mountains, deserts, plains, jungles, rivers, lakes, and lava fields, in addition to two urban settings. Within each map, player also encounter a variety of different structures and locations, including military bases, abandoned villages, ports, power stations, and resorts. These settings exist to enhance the gameplay and provide players with a varied game experience each time they play.

Conversely, *Biubiubiu*'s settings are not meant to be sensational but rather to serve the plot and characters. *Biubiubiu* takes place in an unnamed Chinese city. One of *Biubiubiu*'s primary settings within that city is the rundown and dilapidated home of Xiao's team member Xian, where Xiao's gaming team gathers. Details such as filthy water dripping from a broken upstairs toilet serve as a vivid reminder of Team School District's underdog status. Another frequent setting is Xiao's own rundown, crowded apartment, where he and his son share a kitchen and bathroom facilities with others in the building, highlighting their own modest living situation and quest for social mobility.

The arena where the finals take place for the gaming tournament is another

---

[7] A mere helmet, of course, is not identifiable as a character or even avatar.

featured location. It reflects the glamour and opportunity associated with gaming: the arena is high-tech with a glowing set, large television screens, and a cheering crowd—a striking juxtaposition to the humble living quarters of Xiao and Xian. The arena therefore underscores not only the improbability of Team School District's quest to win the tournament, but also the inequality present throughout the film.

Other distinctive settings in *Biubiubiu* that have no analogue in *Battlegrounds* include the crowded streets of the city where Xiao lives; Tai Yang's elementary school; and the outdoor restaurant where Xian works (and brawls) prior to rejoining Xiao's gaming team. Accordingly, there is no substantial similarity between the settings of *Battlegrounds* and *Biubiubiu*. *See Shame on You Prods.,* 120 F. Supp. 3d at 1161 (that some major settings appear in one work and not the other makes them "strikingly dissimilar" and "cuts against a finding of substantial similarity").

e)    **Pace**

The pace of the two works is also highly dissimilar. The pace of *Battlegrounds* is measured by the time it takes to play the game, which will vary depending on the individual player, but generally amounts to approximately 150-200 hours of gameplay. *Biubiubiu*, on the other hand, is a two-hour movie that follows Xiao and his gaming team over the course of several months, including flashbacks to time Xiao spends with his son. The passage of time serves the narrative purpose of the movie. The pace of the two works is therefore dissimilar. *See, e.g.*, *Capcom II*, 2008 WL 4661479, at *9 (no substantial similarity in pace between movie that took place over many months and video game that took place over three days); *see also, e.g.*, *Marcus*, 279 F. Supp. 3d at 1071 (no substantial similarity in pace between two scripts where one script took place over the course of one day and another took place over a number of days, causing the former to move slowly and the other to be "fast-paced").

Accordingly, a comparison of the plot, sequence of events, themes, mood, characters, setting, and pace of the two works demonstrates that *Battlegrounds* and

24

*Biubiubiu* are not substantially similar as a matter of law.[8]

**B.** **Even If *Biubiubiu* Incorporates Any Minimally-Protected Elements of *Battlegrounds*—Which It Does Not—*Biubiubiu*'s Incorporation of Any Such Elements Is Fair Use.**

1. **Fair Use Doctrine**.

Fair use promotes freedom of expression and the very objectives of copyright law by permitting the unlicensed use of copyright-protected works in certain circumstances. To determine whether a particular use of copyrighted material is fair, courts consider four nonexclusive factors: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes," (2) "the nature of the copyrighted work," (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. Because the protection of copyrighted works is not absolute, "[t]he fair use defense permits the use of copyrighted works without the copyright owner's consent under certain situations." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 739 (9th Cir. 2019) (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1154 (9th Cir. 2007)).

The four statutory fair use factors "are not to be treated in isolation, one from another." Instead, "[a]ll are to be explored," and the results of all factors should be "weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 571 (1994). Accordingly, the four factor test "is not to be simplified with bright-line rules . . . like the doctrine it recognizes [and] calls for case-by-case analysis." *Perfect 10*, 508 F.3d 1146 at 1163.

---

[8] Given that Plaintiffs' direct infringement claims fail, Plaintiffs' vicarious and contributory infringement claims against YouTube necessarily fail as well, as secondary liability claims require an underlying act of direct infringement. *See Unicolors, Inc. v. NB Brother Corp.*, 2017 WL 4402287, at *5 (C.D. Cal. Oct. 3, 2017) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)).

2. ***Biubiubiu*'s Use of Any Protectable Elements of *Battlegrounds* Is Fair Use.**

Even assuming *Biubiubiu* does incorporate any minimally-protected elements of *Battlegrounds*, such incorporation is plainly fair use. First, *Biubiubiu* is transformative—conceptually, thematically, and aesthetically—in how it uses video game elements in a fictional narrative that comments on gaming culture. Second, the allegedly infringed elements of *Battlegrounds* are entitled to only weak protection, if any, as a creative work, and the game has been published (and, indeed, widely-disseminated). Third, *Biubiubiu*'s use of any elements from *Battlegrounds* is qualitatively and quantitatively insignificant. Finally, *Biubiubiu* does not harm the market for *Battlegrounds* because the two works are not substitutes for each other. If anything, *Biubiubiu* is likely to stimulate market demand for *Battlegrounds* and other battle royale games. Accordingly, all fair use factors favor a finding of fair use as a matter of law.

a) **To the extent *Biubiubiu* uses any elements from *Battlegrounds*, its use is completely transformative.**

One of the most important considerations regarding the "purpose and character of the use" is whether the use of a given copyrighted work is transformative. A transformative use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. Accordingly, a finding of transformative use favors fair use. Indeed, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*

*Biubiubiu* is transformative because, to the extent it incorporates any minimally-protected elements from *Battlegrounds*, it adds "new expression, meaning, or message" to such elements, and in so doing uses those elements in a fundamentally different manner as compared to *Battlegrounds*. *Id.*; *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 649 (9th Cir. 2020)

(rearrangement of chorus of copyrighted song into eighteen-minute long competitive choir show was transformative because it was used "to tell a story with new expressive content and meaning"); *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1176-77 (9th Cir. 2013) (use of street art image transformative when used to comment on religion in four-minute video). Here, *Biubiubiu* does not "merely replace[] the object of the original creation" but instead "adds a further purpose or different character." *A&M Records v. Napster*, Inc., 239 F.3d 1004, 1015 (9th Cir. 2001).

Conceptually and thematically, *Biubiubiu* adds meaning and commentary beyond what a mere video game conveys. Most pertinently, *Biubiubiu* comments on the significance of video games in both Chinese and contemporary culture. *Biubiubiu* reflects conflicting societal attitudes toward video games, which are simultaneously stigmatized and revered, as embodied by the film's protagonist, Xiao. On the one hand, Xiao tells his son that if he focuses too much on gaming when he is young, he will be a "nobody" when he is older. The film also implies that Xiao's estranged wife left him because Xiao prioritized gaming over everything else. On the other hand, the film elevates video games as an escape from reality where players can instantly seek to change their fate. Xiao explains that when he was younger, games were his "faith" because unlike daily life, games are "fair," and a player's background or financial status do not matter. Pointing to both the escapist and addictive nature of games, he says that daily troubles momentarily vanish when gaming, leading to a desire to play repeatedly. Therefore, *Biubiubiu* explicitly comments on video game culture in China and more broadly.

*Biubiubiu* also comments on class and capitalism by depicting gaming as a path to upward mobility. *Biubiubiu* underscores the affluence and glamour of the gaming lifestyle, through settings like the gaming arena, through scenes of wild, lavish gaming parties, and through the character of Black Shark, Xiao's wealthy, famous antagonist. At one point, Xiao is offered a lucrative contract to become a professional gamer. He is told that Black Shark was once "just a thug who lived in

27

internet cafes" and that "fame is just a product of capital." But the "price" of this contract is that Xiao must compromise his integrity and intentionally throw the tournament to Black Shark. The film therefore simultaneously reveals the dark side to wealth and fame.

The film also uses the zero-sum nature of battle royale games as a vehicle to address socioeconomic disparity. Although Xiao and his team ultimately win the tournament, at various points in the movie he and his teammates despair that they cannot possibly triumph because the tournament is "rigged" against them. Indeed, Black Shark himself is revealed to be a cheat and a fraud. Through skill, determination, and luck, Xiao improbably prevails, but the film continually teases an outcome where Xiao cannot overcome his circumstances.

Visually, the film also conveys "new aesthetics" by transforming the video game sequences from the type of stylized animation of *Battlegrounds* into a battle that feels real. *Seltzer*, 725 F.3d at 1177; *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013) (use of photographs in a series of paintings was transformative because the changes resulted in a "fundamentally different aesthetic"). Rather than relying on animation, the film creates video game sequences shot with the film's real actors. During the tournament, the film's characters enter the video game as themselves (instead of as avatars) and experience the fight firsthand. This technique vividly illustrates that these characters have a personal stake in the game-playing: indeed, in one scene, Xiao reacts as though he can feel the pain inflicted upon his character outside of the game.

Accordingly, *Biubiubiu*'s use of any minimally-protected video game elements from *Battlegrounds* is transformative because it uses those elements to explore concepts, themes, and aesthetics that *Battlegrounds* plainly does not.

b)   ***Battlegrounds*' weak protection as a creative work and wide dissemination weigh in favor of fair use.**

The "nature of the copyrighted work" acknowledges that certain works are

28

more protectable than others. *Campbell*, 510 U.S. at 584. Accordingly, the second fair use factor addresses the extent to which the copied work is creative and whether it is unpublished. *Monge v. Maya Mags., Inc*., 688 F.3d 1164, 1177 (9th Cir. 2012). Although creative works are "closer to the core of intended copyright protection," *Campbell*, 510 U.S. at 586, weighing against fair use, this factor may be given little weight, even for highly creative works, if the allegedly infringing work is deemed transformative, *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006) ("[T]he second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose.") (quoting *Bill Graham Archives, LLC v. Dorling Kindersley Ltd*., 448 F.3d 605, 612 (2d Cir. 2006)). As for the other prong of the second fair use factor—whether the work is unpublished—the use of a published (as opposed to unpublished) work is more likely to be deemed fair. *Seltzer*, 725 F.3d at 1178 (9th Cir. 2013) ("wide[] disseminat[ion]" of underlying work weighed in favor of fair use); *Kelly v. Arriba Soft Corp*., 336 F.3d 811, 818–22 (9th Cir. 2003) (use of creative but published images weighed only minimally against fair use).

Here, *Battlegrounds* is entitled to only limited protection as a creative work because video games are partially computer programs, which "contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands." *Sega Enterprises Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1524 (9th Cir. 1992). Because video games inherently contain unprotectable aspects, they are necessarily afforded "a lower degree of protection than more traditional literary works." *Id*. at 1526; *see Frybarger*, 812 F.2d at 530 (technical requirements of video games give rise to certain features that are indispensable to the creation of a video game "and may be protected only against virtually identical copying"). Indeed, games in general are entitled to only limited protection because so many of their constituent elements, including game rules and mechanics, are not copyrightable. *See, e.g.*, *Allen*, 89 F.3d at 61 (manual of game

rules not protectable); *DaVinci Editrice*, 183 F. Supp. 3d at 830 (game mechanics not copyrightable). But even if *Battlegrounds* were highly protectable as a creative work, this would carry little weight for purposes of this fair use factor, as *Biubiubiu* is highly transformative. *See supra*, at 26; *Koons*, 467 F.3d at 257.

As to the other prong of the second fair use factor, *Battlegrounds* is published, which additionally weighs in favor of fair use. Indeed, *Battlegrounds* was "widely disseminated" prior to the creation of *Biubiubiu*. *Seltzer*, 725 F.3d at 1178 ("wide disseminat[ion]" weighs in favor of the fair use of that work); *see* Complaint ¶ 36 (as of 2021, "more than 75 million copies of Battlegrounds had been sold"). Accordingly, the second fair use factor weighs in favor of fair use.

c)    ***Biubiubiu*'s use of any elements of *Battlegrounds* is quantitatively and qualitatively insubstantial.**

Under the third fair use factor, courts consider both "the quantitative amount and qualitative value of the original work used in relation to the justification for that use." *Seltzer*, 725 F.3d at 1178. The analysis of the "amount and substantiality of the portion used" largely turns on the first fair use factor; in other words, the more transformative the secondary use, the greater the use of the original that can be justified. *Google*, 141 S.Ct. at 1205 ("The 'substantiality' factor will generally weigh in favor of fair use where, as here, the amount of copying was tethered to a valid, and transformative, purpose."); *Campbell*, 510 U.S. at 586-87 ("the extent of permissible copying varies with the purpose and character of the use"); *Tresóna*, 953 F.3d at 651 (third factor did not weigh against fair use, even where allegedly infringing work used a "qualitatively significant" portion of copyrighted song, because the use was transformative). Accordingly, "this factor necessarily overlaps somewhat with the first factor." *Tresóna*, 953 F.3d at 650 (quoting *Seltzer*, 725 F.3d at 1178). Indeed, even "entire verbatim reproductions are justifiable where the purpose of the work differs [enough] from the original." *Id*. (quoting *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 n.8 (9th Cir. 2003)). Moreover, "[i]f the secondary user

30

1  copies only as much as is necessary for his or her intended use, then this factor will
2  not weigh against" fair use." *Id.* at 642 (quoting *Kelly*, 363 F.3d at 820-21).

3  Based on these principles, *Biubiubiu*'s use of any protectable elements from
4  *Battlegrounds* is insubstantial. As an initial matter, the elements of *Battlegrounds*
5  allegedly infringed by *Biubiubiu* are, even taken as a whole, plainly insubstantial, *see*
6  *Apple Computer*, 35 F.32d at 1439:

7        • Plaintiffs allege that *Biubiubiu* infringes three structures and locations,
8           Complaint ¶ 132, out of hundreds of structures and locations available
9           for players to explore. *See, e.g.*, Complaint ¶ 83-85 (listing numerous
10          structures and locations, almost none of which are alleged to have any
11          analogue in *Biubiubiu*).

12       • Plaintiffs allege that *Biubiubiu* infringes approximately three weapons,
13          *id.* at ¶ 133, out of at least 80 weapons available to players, *id.* ¶ 54.

14       • Plaintiffs allege that *Biubiubiu* infringes a camouflage backpack, out of
15          at least 8 backpack choices available to players, *id.* ¶ 60;

16       • Plaintiffs allege that *Biubiubiu* infringes three avatars, out of hundreds
17          of potential avatars that a player can create, based on appearance,
18          wardrobe, weapons, equipment, and vehicle, among other options.

19  Accordingly, the Complaint itself makes clear that the allegedly infringed
20  elements of *Battlegrounds* are insignificant given the scope of the video game. *See,*
21  *e.g.*, *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013)
22  (seven-second clip used in a play was both quantitatively and qualitatively
23  insignificant); *Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*, 2018 WL 5310831, at *5
24  (N.D. Cal. June 29, 2018) (allegedly infringing GIF images consisting of a seconds-
25  long video clip paired with short captions did not constitute significant use, even
26  where such images displayed "important characters from the Star Wars universe who
27  are part of the highly expressive core" of the works). And a review of the underlying
28  works themselves further reveals that these elements are quantitatively and

qualitatively insignificant to both works.

Moreover, *Biubiubiu* incorporates video game elements "only as much as is necessary for [its] intended use." *Tresóna*, 953 F.3d at 650. These elements further the film's narrative purpose and are used to comment on themes like video game culture, wealth and capitalism, and socioeconomic inequality, as explained *supra*. Indeed, it would be difficult—if not impossible—to achieve *Biubiubiu*'s transformative purpose of commentary on gaming culture without referencing the very kinds of common elements of battle royale videogames that Plaintiffs allege as the basis for their infringement claims. Accordingly, *Biubiubiu*'s use of these video game elements is "justifiable" because these elements serve a transformative purpose, as compared to the use of these elements in an actual video game like *Battlegrounds*. *See Google*, 141 S.Ct. at 1205; *Campbell*, 510 U.S. at 586-87; *Tresóna*, 953 F.3d at 650, 651.

d)   ***Biubiubiu* does not affect the market for *Battlegrounds* or any derivative uses of *Battlegrounds*.**

The fourth factor considers whether, and to what extent, the defendant's use harms the existing or potential market for the copyright owner's original work. *Campbell*, 510 U.S. at 590. In assessing this factor, courts consider whether the use is hurting the current market for the original work (for example, by displacing sales of the original) or whether the use could cause substantial harm if it were to become widespread. *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 567 (1985).

In general, a transformative use, even if commercial, does not warrant a presumption of market harm. *See Campbell*, 501 U.S. at 591 (explaining that where a use is transformative, "market harm may not be so readily inferred"); *Perfect 10*, 508 F.3d at 1168 (where use of search engine thumbnails is "highly transformative," market harm cannot be presumed). Accordingly, "[w]here the secondary use is not a substitute for the original and does not deprive the copyright holder of a derivative use, the fourth factor weighs in favor of fair use." *SOFA*, 709 F.3d at 1280; *see Kelly*,

32

336 F.3d at 818-22 (defendant's "smaller lower-resolution images" of plaintiff's images served "an entirely different function" and did not harm the market for or value of the images).

A video game and a film occupy distinct markets and "serve different market functions." *See Campbell*, 510 U.S. at 579. *Biubiubiu* is therefore "not a substitute for" *Battlegrounds*. *SOFA*, 709 F.3d at 1280 (because musical not a substitute for a television show, no market harm); *DraftExpress*, 2022 WL 16962285, at *5 (no market harm from use of interview snippet in highlight reel video featuring basketball star because the original interview and the highlight reel offered "very different experience[s]"). If anything, *Biubiubiu* likely *stimulates* the market for battle royale games—of which *Battlegrounds* is a popular example—and gaming in general, through the scenes in *Biubiubiu* that show the excitement and competitive drama of actual gameplay. *See National Center for Jewish Film v. Riverside Films, LLC,* 2012 WL 4052111, at *5 (C.D. Cal. Sept. 14, 2012) (where defendants' use of excerpts of plaintiff's films likely caused "a newfound interest in [p]laintiff's copyrighted films," fourth fair use factor favored defendants).

Nor does *Biubiubiu* deprive Plaintiffs of any derivative uses of *Battlegrounds* because *Biubiubiu* is not "a live-action dramatization" of *Battlegrounds*, as Plaintiffs suggest, but rather makes highly transformative use of any protectable game elements. *See Tresóna*, 953 F.3d at 652 ("[A] copyright holder cannot prevent others from entering fair use markets merely 'by developing or licensing a market for parody, news reporting, educational, or other transformative uses of its own creative work.'" (quoting *Bill Graham Archives*, 448 F.3d at 614-15)). Indeed, as amply demonstrated above, *Biubiubiu* is transformative because it "adds new expression, meaning, [and] message" to the video game elements that it incorporates. *Campbell*, 510 U.S. at 579; *see supra*, at 26.

1   **V.    CONCLUSION**

2          The Court need look no further than the works themselves to determine that

3   there is no substantial similarity between *Battlegrounds* and *Biubiubiu* as a matter of

4   law. Alternatively, even assuming *Biubiubiu* does incorporate any minimally-

5   protected elements from *Battlegrounds*—which it does not—*Biubiubiu*'s use of any

6   such elements is fair use as a matter of law.

7          Accordingly, YouTube respectfully requests that the Court dismiss Plaintiffs'

8   claims against YouTube concerning *Biubiubiu*, with prejudice.

9

10   Dated:  December 20, 2022                    MAYER BROWN LLP

11

12                                 BY: _____
                                          */s/ A. John P. Mancini*
13                                          A. JOHN P. MANCINI
                                          PAUL FAKLER
                                          SARA SLAVIN
14
                                          Attorneys for Defendant
15                                          YOUTUBE, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF COMPLIANCE**

2          The undersigned, counsel of record for Defendant YouTube, LLC, certifies

3   that this brief contains 9,757 words, which complies with the 10,000 word limit set

4   by court order on December 19, 2022. Dkt. 133.

5   Dated:  December 20, 2022

6                                                          */s/ A. John P. Mancini*
                                                        A. John P. Mancini

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT YOUTUBE, LLC'S MOTION TO DISMISS; CASE NO. 2:22-CV-00209-GW-MRW

1

## **CERTIFICATE OF SERVICE**

2

3          I hereby certify that on December 20, 2022 the within document was filed with

4    the Clerk of the Court using CM/ECF which will send notification of such filing to

5    the attorneys of record in this case.

6

7                                                    */s/ A. John P. Mancini*
                                              A. John P. Mancini

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28